FILED
2025 Jun-27 PM 02:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED

2025 JUN 27  A 10: 07

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| K.B. FORBES and CONSEJO DE LATINOS UNIDOS, INC., a Not-for-Profit Public Charity, | |
| Plaintiffs, | |
| vs. | Case No.: 2:24-CV-1618-AMM |
| THE SOUTHERN COMPANY, a corporation, ALABAMA POWER COMPANY, a corporation, MATRIX, LLC, an Alabama Limited Liability Company, PERKINS COMMUNICATION, LLC, an Alabama Limited Liability Company, JOE PERKINS, MARK A. CROSSWHITE, JEFF PEOPLES, ZEKE SMITH, JOSHUA WHITMAN, THOMAS A. FANNING, AND JAMES Y. KERR, | |
| Defendants. | |

---

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

---

## TABLE OF CONTENTS

INTRODUCTION...........................................................................1

LEGAL STANDARD.....................................................................3

ARGUMENT...............................................................................4

I. Plaintiffs' Complaint Is Not A Shotgun Complaint..................................4

II. Counts One and Three: Plaintiffs Should be Permitted to Amend the FAC to
    Plead a Civil Claim Under 42 U.S.C. § 1985(3) in Place of 18 U.S.C. § 241.....6

    A. Latinos are a Protected Class Under § 1985(3)...................................7

    B. Defendants Southern Company and Alabama Power are Quasi-
       Governmental Agencies Participating in the Conspiracy........................8

    C. Plausible Conspiracy.............................................................8

III. Count Two: Plaintiffs Claim Under 42 U.S.C. § 1986 is Properly Plead.........9

IV. Plaintiffs' Claims Are Not Time-Barred............................................10

V. Plaintiffs Plausibly Allege Agency Liability.......................................14

VI. Plaintiffs State Viable Alabama State Law Claims.................................14

    A. Defamation and Invasion of Privacy.............................................15

    B. Intentional Infliction of Emotional Distress.....................................17

VII. CDLU'S Pro Se Status Does Not Warrant Dismissal.............................18

VIII. The Court Has Personal Jurisdiction Over Southern Company, Fanning
      and Kerr....................................................................18

CONCLUSION...........................................................................19

## TABLE OF AUTHORITIES

Cases:

*American Rd. Serv. Co. v. Inmon*
     394 So.2d 361 (Ala. 1980)............................................................17

*Ashcroft v. Iqbal*
     556 U.S. 662 (2009)..............................................................3,4

*Bell Atl. Corp. v. Twombly*
     550 U.S. 544 (2007) .............................................................3,4

*Boyd v. Warden, Holman Correctional Facility*
     856 F. 3d 853 (11th Cir. 2017)...........................................................10

*Bristol-Myers Squibb v. Superior Ct. of CA*
     582 US 255 (2017)............................................................18

*Brown v. Ga. Bd. of Pardons & Paroles*
     335 F.3d 1259 (11th Cir. 2003)...........................................................13

*Butler v. Town of Argo*
     871 So.2d 1, 12 (Ala. 2003)...........................................................16

*Franza v. Royal Caribbean Cruises, Ltd.*
     772 F.3d 1225 (11th Cir. 2014)...........................................................14

*Green Tree Acceptance, Inc. v. Standridge*
     565 So. 2d 38 (Ala 1990)............................................................17

*Grossman v. Nationsbank, NA*
     225 F. 3d 1228, 1231 (11th Cir. 2000). ............................................3

*Haines v. Kerner*
     404 U.S. 519 (1972) ............................................................3

*Hiller Invs., Inc. v. Insultech Group, Inc.*
     957 So. 2d 1111 (Ala. 2006)...........................................................19

*Keith v. DeKalb County, Ga.*
     749 F.3d 1034 (11th Cir. 2014)...........................................................8

*Matthews v. Brookstone Stores, Inc.*
　　469 F. Supp. 2d 1056 (S.D. Ala. 2007). ……………………….....3

*Moore v. Lowe*
　　591 F. Supp. 3d 1087 (N.D. Ala. 2022) …………..……………......…....3,15

*Park v. City of Atlanta*
　　120 F.3d 1157 (11th Cir. 1997)……………………………………………9

*Saint Francis College v. Al-Khazraji*
　　481 U.S. 604 (1987)…………………………………………………………7

*Trawinski v. United Techs.*
　　313 F.3d 1295 (11th Cir. 2002)………..……………………………......…3,18

*Valle v. Secretary for the Department of Corrections, Florida Department of Corrections*
　　478 F.3d 1326 (11th Cir. 2007)……………………………………………7

*Weiland v. Palm Beach County Sheriff's Office*
　　792 F.3d 1313(11th Cir. 2015)……………………….……...…………….5


Statutes:

18 U.S.C. § 241 …………………………………………………………...passim
42 U.S.C. § 1985 ………………………………………………………….passim
42 U.S.C. § 1986 ………………………………………………………….passim


Other Authorities:

Federal Rules of Civil Procedure 8(a)(2)…………………………………….....4
Federal Rules of Civil Procedure10(b) ……………………………………….....4
Federal Rule of Civil Procedure 12(b)(2) ……………………………………….3
Federal Rule of Civil Procedure 12(b)(6) ……………………………………….3

COME NOW  Plaintiffs K.B. FORBES ("Forbes") and THE CONSEJO DE LATINOS UNIDOS, INC. ("CDLU") (collectively "Plaintiffs"), and for their Opposition to the Motion to Dismiss the First Amended Complaint filed by Defendants: THE SOUTHERN COMPANY ("Southern Company"); ALABAMA POWER COMPANY ("Alabama Power"); MATRIX, LLC ("Matrix"); PERKINS COMMUNICATION, LLC ("Perkins Communication"); JOE PERKINS ("Perkins"); JOSHUA WHITMAN ("Whitman"); JEFF PEOPLES ("Peoples"); MARK A. CROSSWHITE ("Crosswhite"); ZEKE SMITH ("Smith"); THOMAS A. FANNING ("Fanning"); and JAMES Y. KERR ("Kerr") (collectively "Defendants"); allege as follows:

## INTRODUCTION

Defendants' Motion to Dismiss begins with a shockingly condescending statement in the introduction that "[i]t is not surprising that Plaintiffs K.B. Forbes and Consejo De Latinos, Inc. ('CDLU') were unable to find an attorney to represent them in this action," Motion to Dismiss, ECF 31, P9 ("Motion ECF 31"). Respectfully, Defendants do not know whether Plaintiffs were able to interest counsel or not, or whether other factors such as the estimated amount of fees, played a role in no counsel being retained at this juncture. This kind of patronizing statement from Defendants' counsel towards *pro se* parties is indicative of the attitude and contempt Defendants themselves have had for Plaintiffs, and is also an admission of their participation in the ongoing conspiracies to destroy Plaintiffs as alleged in the

First Amended Complaint ("FAC ECF 28") and that they are, in the minds of Defendants, working as intended.

The FAC ECF 28 alleges a coordinated conspiracy by Defendants to violate Plaintiffs' civil rights and inflict severe emotional and reputational harm. This ongoing conspiracy was orchestrated against Plaintiffs' due to their Latino heritage and the causes they hold dear, including public advocacy against Defendants' and those associated with Defendants' unethical business practices (FAC ECF 28, ¶¶ 19–112). The FAC ECF 28 describes a campaign of intimidation, defamation and physical threats perpetrated by Defendants, including a fake protest near Forbes' home, the creation of a defamatory website (*cdluexposed.com*[1]), media smear campaigns and a .22 caliber projectile shot at Forbes' bedroom window (FAC ECF 28, ¶¶ 19–112), all of which must be considered as true for purposes of the Court's consideration of this Motion as discussed below.

The FAC ECF 28 more-than sufficiently pleads plausible claims to survive dismissal, and this Motion should be denied in its entirety. In the alternative, since Defendants have correctly pointed out that Plaintiffs are unrepresented in this case, should the Court be inclined to dismiss any or all of Plaintiffs' Counts, Plaintiffs respectfully request this be done *without prejudice* so Plaintiffs can have at least one opportunity to cure the Court's concerns by filing a Second Amended Complaint the

---

[1] The website is still active to this day, and continues to defame Plaintiffs.

First Amended Complaint not having been the result of a Court order on the merits but rather an extension graciously granted by this Court).

## LEGAL STANDARD

The Court must deny a Rule 12(b)(6) motion if a complaint provides "a short and plain statement of the claim showing that the pleader is entitled to relief," with factual allegations raising a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts accept well-pleaded facts as true, draw reasonable inferences in the plaintiff's favor and assess facial plausibility. *Moore v. Lowe*, 591 F. Supp. 3d 1087, 1097 (N.D. Ala. 2022) and all exhibits attached to the complaint may also be considered. *Grossman v. Nationsbank, NA*, 225 F. 3d 1228, 1231 (11th Cir. 2000). For Rule 12(b)(2) motions, plaintiffs must simply establish jurisdiction, with allegations taken as true unless contradicted by evidence, and reasonable inferences resolved in their favor. *Matthews v. Brookstone Stores, Inc.*, 469 F. Supp. 2d 1056, 1060 (S.D. Ala. 2007).

In reviewing Plaintiffs' FAC ECF 28, the Court must also take an extra step towards Plaintiffs by considering that *pro se* complaints are held "to less stringent standards than formal pleadings drafted by lawyers," even if they are inartfully pleaded. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Federal district courts must ensure that pro se litigants are given "fair and meaningful consideration." *Trawinski v. United Techs.*, 313 F.3d 1295, 1297 (11th Cir. 2002). Although Plaintiffs were

graciously permitted by the Court to file a First Amended Complaint, this is the only opportunity Plaintiffs have had thus far to be heard in opposition to the Motion to Dismiss, so in the event the Court is moved by any of Defendants' arguments, Plaintiffs should have leave of court to submit a Second Amended Complaint in order to have their day in court.

## ARGUMENT

### I. Plaintiffs' Complaint Is Not A Shotgun Complaint.

Plaintiffs' Complaint easily satisfies the pleading requirements of Federal Rules of Civil Procedure 8(a)(2) and 10(b). Consistent with Rule 8(a)(2), Plaintiffs' Complaint supplies "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp.*, 550 U.S. at 570. Consistent with Rule 10(b), Plaintiffs' Complaint "state[s] its claims in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).

Here, Plaintiffs' Complaint clearly delineates six widely understood federal and state statutory and constitutional causes of action into six separate counts. FAC ECF 28 ¶¶ 113-171. Each claim stems from the same ongoing coordinated conspiracy by Defendants to violate Plaintiffs' civil rights and inflict severe emotional and reputational harm, which the FAC ECF 28 describes in a common set of factual allegations in a unified facts section, subdivided by clear topical subheadings. Each count incorporates the factual allegations of the FAC ECF 28

4

and makes additional specific allegations tailored to address the specific count and delineates which Plaintiffs bring that count against which Defendants. The FAC ECF 28 also explains each Plaintiff's standing to sue and the reasoning for naming each Defendant along with their particular jurisdictional allegations. Id. ¶¶ 2-18.

It is clear from the FAC ECF 28 that Defendants' conduct gives rise to each of the claims in Plaintiffs' Complaint. As the Eleventh Circuit has explained of similar complaints: "[T]his is not a situation where a failure to more precisely parcel out and identify the facts relevant to each claim materially increased the burden of understanding the factual allegations underlying each count." *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1324 (11th Cir. 2015).

As in *Weiland*, Defendants "did not move for a more definite statement under [Rule] 12(e)," nor do they plausibly assert that they do not understand the theory of liability underlying the Complaint. See Motion ECF 31. The FAC ECF 28 is far from a shotgun pleading as it provides a detailed narrative, identifying each Defendant's role (FAC ECF 28, ¶¶ 4–18), describing specific acts (e.g., the July 4, 2020 fake protest, *cdluexposed.com* creation, media attacks, and the September 2023 projectile incident) (FAC ECF 28, ¶¶ 19–112), and tying these acts to a conspiracy to violate Plaintiffs' civil rights. *Weiland*, 792 F.3d at 1324-5. The Court should reject this argument and deny dismissal or otherwise permit Plaintiff to file a Second Amended Complaint to cure any errors, just as the *Weiland* court had allowed prior to the Motion at issue in the opinion.

## II. Counts One and Three: Plaintiffs Should be Permitted to Amend the FAC to Plead a Civil Claim Under 42 U.S.C. § 1985(3) in Place of 18 U.S.C. § 241

While it is true that 18 U.S.C. § 241 does not contain a private right of action, its prohibitions of conspiracies to deprive individuals of protection under the First Amendment's rights to freedom of speech and association and Fourteenth Amendment's rights to privacy and childrearing directly parallel the elements of a civil claim under 42 U.S.C. § 1985(3), which provides a private right of action for conspiracies to deprive persons of equal protection or privileges and immunities under the law. The FAC ECF 28 details specific conspiratorial acts, including a fake protest staged near Plaintiff Forbes' home on July 4, 2020, the creation of the defamatory website *cdluexposed.com*, media smear campaigns and a physical threat involving a .22 caliber projectile shot at Plaintiff Forbes' bedroom window in September 2023 (FAC ECF 28, ¶¶ 51–65, 113–123). These acts are attributed to all Defendants through their ongoing conspiracy against Plaintiffs' due to their Latino heritage and the causes they hold dear, including public advocacy against Defendants' and those associated with Defendants' unethical business practices, including the Balch & Bingham law firm.

This court can and should construe or permit Plaintiffs to amend the FAC ECF 28 to properly plead a § 1985(3) claim since the necessary facts and allegations are already contained in Count One. The FAC ECF 28's detailed allegations of a coordinated campaign provide a sufficient factual basis for this recharacterization into a cause of action for damages arising out of conspiracies to deprive Plaintiffs of

their constitutional and statutory rights. The aforementioned liberal standards for pleadings afforded *pro* se plaintiffs entitles Plaintiffs to at least one such amendment opportunity.

### A. Latinos are a Protected Class Under § 1985(3)

Defendants argue that Plaintiffs are excluded from § 1985(3) protections because Plaintiffs' are not a protected class as mere "enemies of the utility industry" (FAC ECF 28, ¶ 73) (Motion ECF 31, P 9). However, Defendants intentionally overlook that Plaintiffs have specifically alleged themselves to be members of a protected class: "Forbes, the son of a Latino immigrant, is the co-founder and Chief Executive Officer of the Consejo de Latinos Unidos ('CDLU');" "CDLU educates and assists Latinos and others in the areas of health care, immigration, education, police protection and any other issues of importance;" and that Plaintiffs specifically represent minorities (FAC ECF 28, ¶ 2,3 & 19).

It is settled that "the law has evolved to the point that Latin Americans are now a cognizable class for due process and equal protection purposes." *Valle v. Secretary for the Department of Corrections, Florida Department of Corrections*, 478 F.3d 1326, 1328 (11th Cir. 2007); *See also: Saint Francis College v. Al-Khazraji*, 481 U.S. 604 (1987) (Hispanic is a race for purposes of Section 1981).

Accordingly, since Plaintiffs are Latino and a Latino charity that were targeted for their advocacy on behalf of Latino communities, Plaintiffs are afforded the protections of § 1985(3).

### B. Defendants Southern Company and Alabama Power are Quasi-Governmental Agencies Participating in the Conspiracy

Plaintiffs are protected under § 1985(3) against the conspiracies alleged in the FAC ECF 28 because two of the Defendants at the heart of the conspiracies, Alabama Power and Southern Company, are utilities functioning in the State of Alabama as quasi-governmental agencies according to their websites. The inclusion of private actors in the conspiracies cannot insulate them all from exposure to a § 1985(3) claim when the entire nefarious conduct was conducted at the behest of quasi-governmental energy utilities; the CEO of Southern Company called Plaintiff Forbes personally to discuss Plaintiffs' allegations against its law firm (FAC ECF 28, ¶ 28)!

### C. Plausible Conspiracy

The entire fact pattern of the (FAC ECF 28, ¶¶ 19–112) establishes the connections and "meeting of the minds" between the individual Defendants who worked for the quasi-governmental Defendants and their other co-conspirators, easily satisfy the conspiracy element of § 1985(3). Although the FAC ECF 28 is very specific and sufficient to plead a conspiracy at this stage, the coordinated acts can also be established through drawing a causal connection based on the parties' history. *Keith v. DeKalb County, Ga.*, 749 F.3d 1034, 1047–48 (11th Cir. 2014) particularly early in civil rights cases where direct evidence is often unavailable.

The ECF FAC 28 details a pattern of coordinated acts: a fake protest near Forbes' home on July 4, 2020, orchestrated by Brenda Paige Ward; defamatory

Facebook videos by Carlos Chaverst; paid media attacks by Bill Britt and Josh Moon; the creation and promotion of *cdluexposed.com* in 2020; and a physical threat involving a .22 caliber projectile in September 2023 (FAC ECF 28, ¶¶ 51–65, 110–116). These acts, temporally and thematically linked to Plaintiffs' advocacy against Balch & Bingham, plausibly suggest an agreement among all Defendants to retaliate.

**III. Count Two: Plaintiffs Claim Under 42 U.S.C. § 1986 is Properly Plead**

"Section 1986 provides a cause of action against anyone who has 'knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having the power to prevent or aid in preventing the commission of the same, neglects or refuses so to do.'" *Park v. City of Atlanta* 120 F.3d 1157, 1160 (11th Cir. 1997) citing 42 U.S.C. § 1986. This means that as long as the complaint adequately pleads the existence of a § 1985 conspiracy (which the FAC ECF 28 does) the § 1986, which is derivative of § 1985, cannot be dismissed. The Park court even went as far as to write that "it does not follow that individuals liable under § 1986 must be involved in the § 1985 conspiracy." In fact, Section 1986 requires only that Defendants knew of a § 1985 conspiracy and, having the power to prevent or aid in preventing the implementation of the conspiracy, neglected to do so. *Id.*

Since Plaintiffs have demonstrated above that the § 1985 claim is viable, the § 1986 claim, which is derivative of the § 1985 claim, is properly plead and likewise survives Defendants' Motion.

**IV. Plaintiffs' Claims Are Not Time-Barred**

The statute of limitations is an affirmative defense, so a Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred. *Boyd v. Warden, Holman Correctional Facility*, 856 F. 3d 853, 872 (11th Cir. 2017) (quotation omitted). Here, the FAC ECF 28 alleges a continuing conspiracy, with the most recent act occurring within two years of the initial complaint filed on November 11, 2024 (ECF 1) on October 3, 2023, when Defendant Southern Company's outside counsel sent Plaintiff Forbes an email asserting that while they found the claims he raised to be meritless, Southern Company nevertheless did not dispute the validity or authenticity of the documents or refute the campaign of fear and intimidation waged against the CDLU and Forbes. FAC ECF 28 ¶ 112.

In fact, the FAC ECF 28 ¶¶ 105–112 contains numerous allegations that prove the conspiracy between all Defendants only became apparent to Plaintiffs within two years of the filing of ECF 1 when emissaries began reaching out to Plaintiff Forbes directly; the existence of all of the Defendants' nefarious acts towards Plaintiffs does mean that Plaintiffs automatically would put together that everything was related and constituted an actual conspiracy:

105. On December 13, 2022, Forbes sent an email to Thomas A. Fanning, the then Chairman and CEO of Southern Company, writing, "In the rough and tumble of advocacy work seeking inherent goodness,

there sometimes are harsh criticisms and angry responses to our work. However, in 2020 the lines were crossed. We recently received documents anonymously showing that Alabama Power paid Matrix to terrorize my family. When my then-eight-year-old daughter cried out of fear, I vowed to get to the bottom of it. The FBI, usually stoic and tight-lipped, was compassionate. Alabama Power had no right to terrorize my wife, traumatize my child, and cause us to flee from our home for our own safety . ; .. Regardless of the ongoing internal investigation or the 'retirement' of Mark A. Crosswhite, this is wrong. Very wrong." Forbes sent Fanning a photo of his family.

106. The next morning, December 14, 2022, Carmen Hadgraft, Fanning's Executive Assistant called Forbes from her cell phone and stated that Mr. Fanning had read Forbes' email, but could not see the attachments. He was traveling on an airplane and would have James Y. Kerr, the Chief Compliance Officer and General Counsel of Southern Company, call Forbes in the next 24 hours. Hadgraft spoke with Forbes for a few minutes and reiterated that Fanning was an honorable and inherently good person who would resolve the situation. Forbes then sent Hadgraft a PDF version of the family photograph.

107. On the evening of December 15, 2022, Kerr called Forbes and had a 15-minute conversation outlining the internal probe at Southern

Company being handled by an independent law firm. Kerr asked Forbes to have CDLU's legal counsel send a formal letter to him and that with the holidays approaching, he would review the matter in January. On December 27, 2022, CDLU legal counsel sent Kerr a detailed letter about the Smoking Gun documents and defendants' misconduct. The following month, January of 2023, CDLU legal counsel sent Southern Company lawyers the actual Smoking Gun documents. At no point did Southern Company dispute the validity or authenticity of those documents.

108.   On June 28, 2023, The Wall Street Journal published a report about Southern Company's clandestine surveillance operations. Southern Company claimed in the article "it has no idea who ordered the operation or why." No one believed them.

109.   In September of 2023, CDLU and Forbes' legal counsel met with Southern Company's outside counsel in Atlanta. At no point whatsoever did Southern Company or its attorneys dispute the validity of the documents nor did it make any efforts to cease Alabama Power Company from funding Matrix's activities and/or bring closure to this type of behavior.

110. On September 19, 2023, CDLU published a post on its blog about how Southern Company paid for the surveillance of U.S. Attorney Jay

E. Town, and that the jaw-dropping photos the CDLU published in 2020 of Town and Alabama Power CEO Mark A. Crosswhite inappropriately having cocktails were paid for by Southern Company.

111. On September 21, 2023, a .22 caliber projectile was shot at Forbes' bedroom window in retaliation for that published report.

112. On October 3, 2023, Southern Company's outside counsel sent Forbes an email stating, "Southern Company has investigated the claims you have raised, finds them to be meritless, and does not believe a meeting would be productive." At no point did Southern Company dispute the validity or authenticity of the documents or refute the campaign of fear and intimidation waged against the CDLU and Forbes.

*Brown v. Ga. Bd. of Pardons & Paroles*, 335 F.3d 1259, 1261 (11th Cir. 2003), holds that the limitations period begins when facts supporting the cause of action are apparent or should be apparent to a reasonably prudent person.

For the § 1986 claim, the one-year limit is met because the FAC ECF 28 alleges ongoing neglect to prevent the conspiracy, culminating in the September 2023 projectile incident and Southern Company's attempts to deny their involvement (FAC ECF 28, ¶¶ 111–112). The FAC's allegations of Defendants' failure to intervene, despite knowledge of the conspiracy (ECF 28, ¶¶ 83, 114–116), render the claim timely. The initial complaint's filing within two years of the 2023 incident satisfies the limitations period for § 1985 and state law claims, and the FAC

ECF 28, filed on May 23, 2025, relates back to the original filing. The Court should deny dismissal on timeliness grounds.

## V. Plaintiffs Plausibly Allege Agency Liability

The FAC ECF 28 alleges all Defendants acted as agents of one another and sets forth a hierarchical agency structure: individual Defendants (Fanning, Kerr, Crosswhite, Peoples, Smith) acted as agents of quasi-governmental Defendants (Southern Company, Alabama Power), directing acts such as the creation of *cdluexposed.com*, media coordination and harassment, while Matrix, LLC, and Perkins Communication, LLC, executed these acts under corporate authority (ECF 28, ¶¶ 6–15, 61, 83, 114–116).

Defendants curiously cite *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225 (11th Cir. 2014) for the proposition that the FAC ECF 28 inadequately pleads Defendants agency liability with sufficient particularity to defeat a Motion to Dismiss. However, *Franza* is a case decided under Maritime law involving injuries to seamen arising under the Jones Act. *Id.* at 1236, and yet even this case makes it clear that the existence of an agency relationship is a question of fact. *Id.* The Court should deny dismissal, as the agency allegations are sufficiently pleaded.

## VI. Plaintiffs State Viable Alabama State Law Claims

Defendants challenge the FAC's Alabama state law claims for defamation, invasion of privacy (false light) and intentional infliction of emotional distress,

arguing that they lack factual support or are based on true statements (ECF 31, P. 26–31).

## A. Defamation and Invasion of Privacy

Defendants argue that the *cdluexposed.com* statements—that Forbes "defends accused rapist, Burt Newsome" and is "involved in an extortion attempt against another law firm" (FAC ECF 28, ¶¶ 92 - 99)—are true or non-defamatory, and they further contend that search engine optimization (SEO) tactics are not actionable (Motion ECF 31, P. 31). The FAC ECF 28 alleges that the statements falsely portray Plaintiff Forbes as defending a rapist and engaging in criminal extortion, damaging his reputation and CDLU's credibility (ECF 28, ¶¶ 90–103).

To state an ordinary claim for defamation under Alabama law, the plaintiff must plausibly allege: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication of that statement to a third party; (3) fault amounting at least to negligence on the part of the defendant; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication of the statement. *Moore,* 591 F. Supp. 3d at 1103-4. In *Moore*, the Northern District of Alabama held that falsity is a question of fact if statements are misleading in context, as the FAC ECF 28 alleges by asserting that the statements exaggerate and misrepresent Forbes' actions (ECF 28, ¶¶ 94, 99).

For invasion of privacy based on false light, Alabama law requires publicity placing the plaintiff in a false light that is highly offensive to a reasonable person,

with knowledge or reckless disregard of falsity. *Butler v. Town of Argo*, 871 So.2d 1, 12 (Ala. 2003). "Alabama has long recognized that a wrongful intrusion into one's private activities constitutes the tort of invasion of privacy. This Court defines the tort of invasion of privacy as the intentional wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." *Id.* (*citations omitted*).

"It is generally accepted that invasion of privacy consists of four limited and distinct wrongs: (1) intruding into the plaintiff's physical solitude or seclusion; (2) giving publicity to private information about the plaintiff that violates ordinary decency; (3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; or (4) appropriating some element of the plaintiff's personality for a commercial use." *Id.* (*citations omitted*).

The FAC ECF 28 alleges that Defendants' website and SEO tactics created a false narrative portraying Forbes as a criminal associate, causing reputational harm (ECF 28, ¶¶ 90–103). The FAC ECF 28's allegations of deliberate dissemination through SEO tactics to amplify the false narrative (FAC ECF 28, ¶¶ 101–103) further bolsters the claim. While Defendants argue that SEO is not actionable, the modern methods of amplifying defamatory content can enhance tort liability if they increase harm, as alleged here. The Court should deny dismissal, as the FAC ECF 28's allegations create factual issues warranting discovery.

## B. *Intentional Infliction of Emotional Distress*

Under Alabama law, to recover for IIED, the plaintiff must establish that the conduct (1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it. *Green Tree Acceptance, Inc. v. Standridge*, 565 So. 2d 38, 44 (Ala. 1990). Whether conduct is outrageous is generally for the trier of fact to determine. *American Rd. Serv. Co. v. Inmon*, 394 So. 2d 361, 365 (Ala. 1980).

The FAC ECF 28 alleges a relentless campaign of harassment, including a fake protest near Plaintiff Forbes' home, defamatory media attacks, attempts to access Plaintiff Forbes' banking information and a .22 caliber projectile shot at his bedroom window in September 2023 (ECF 28, ¶¶ 51–65, 110–116). The projectile incident, linked to a blog post criticizing Southern Company, constitutes particularly egregious conduct threatening personal safety.

Since Plaintiffs have alleged severe, ongoing harassment causing significant emotional distress over a multi-year campaign culminating in a physical threat, the threshold is easily met, especially at the pleading stage. Defendants' argument that only one incident occurred within the last two years ignores the continuing nature of the conspiracy and all of the incidents and the linkage between all Defendants, which must be accepted as true for purposes of determining the outcome of this Motion. The Court must therefore deny dismissal, as the FAC ECF 28's allegations establish a plausible IIED claim.

## VII. CDLU'S Pro Se Status Does Not Warrant Dismissal

Defendants argue that CDLU, as a corporation, cannot proceed *pro se*, but while corporations generally require representation by counsel, *pro se* plaintiffs are afforded opportunities to cure procedural deficiencies, particularly at early stages. *Trawinski*, 313 F.3d at 1297. The Court should deny dismissal and allow CDLU an opportunity to achieve a properly amended complaint and retain representation.

## VIII. The Court Has Personal Jurisdiction Over Southern Company, Fanning and Kerr.

The Court can easily dispense with this argument in the Motion to Dismiss. For a court to exercise specific jurisdiction over a claim there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State. *Bristol-Myers Squibb v. Superior Ct. of CA*, 582 US 255 (2017). Here, the FAC ECF 28 ¶17 alleges that "this Court has specific personal jurisdiction over Defendants because the acts giving rise to Plaintiffs' claims took place in the State of Alabama, and because several of the Defendants are domiciled in the State of Alabama and/or regularly transact business in the State of Alabama."

Moreover, The FAC ECF 28 describes a vast ongoing conspiracy and campaign of intimidation, defamation and physical threats perpetrated by *all* Defendants, including a fake protest near Forbes' home, funding and orchestrating the creation of a defamatory website (*cdluexposed.com*), media smear campaigns

and a .22 caliber projectile shot at Forbes' bedroom window (FAC ECF 28, ¶¶ 19–112), all of which must be considered as true for purposes of the Court's consideration of this Motion as discussed below. All of these actions were directed at the forum, causing harm to Forbes, a resident Plaintiff.

Defendants' reliance on *Hiller Invs., Inc. v. Insultech Group, Inc.*, 957 So. 2d 1111, 1115 (Ala. 2006) is misplaced, as it only addresses general jurisdiction, whereas the FAC ECF 28 relies on specific jurisdiction based on targeted acts. The Court should deny dismissal since this Court cannot decline to exercise personal jurisdiction over the Defendants. It is not a close call.

## CONCLUSION

Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss in its entirety. In the alternative, since Plaintiffs are unrepresented in this case, should the Court be inclined to dismiss any or all of Plaintiffs' Counts, Plaintiffs respectfully request this be done *without prejudice* so Plaintiffs can have at least one opportunity to cure the Court's concerns by filing a Second Amended Complaint (the First Amended Complaint not having been the result of a Court order on the merits but rather an extension graciously granted by this Court).

Dated: June 27, 2025

K.B. Forbes
P.O. Box 381984
Birmingham, Alabama 35238-1984
(323) 264-5889
kb@cdlu.org
Plaintiff, appearing Pro Se

CERTIFICATE OF SERVICE

I KB Forbes hereby certify that, on June 27, 2025, I hand-filed the foregoing with

the Clerk of the Court and that I served all counsel of record listed below via EMAIL

and U.S. MAIL:

Lee M. Hollis, Esq.
Mary Parrish McCracken, Esq.
LIGHTFOOT, FRANKLIN &
WHITE LLC
400 20th Street North
Birmingham, Alabama 35203
205-581-0700
lhollis@lightfootlaw.com
mmccracken@lightfootlaw.com
Counsel for Alabama Power Company

Robert Baugh, Esq.
DENTONS SIROTE
2311 Highland Avenue South
Birmingham, Alabama 35205
205-930-5100
robert.baugh@dentons.com
Counsel for The Southern Company,
Tom Fanning, and Jim Kerr

Cason M. Kirby, Esq.
Brant J. Biddle, Esq.
HOLLAND & KNIGHT LLP
1901 Sixth Avenue North
Suite 1400
Birmingham, Alabama 35203
205-226-5706
cason.kirby@hklaw.com
brant.biddle@hklaw.com
Counsel for Matrix, LLC, Perkins
Communication, LLC, Joe Perkins
and Joshua Whitman

John W. Scott, Esq.
Kimberly W. Geisler, Esq.
SCOTT, DUKES & GEISLER, P.C.
211 Twenty Second Street North
Birmingham, Alabama 35203
205-251-2300
jscott@scottdukeslaw.com
kgeisler@scottdukeslaw
Counsel for Mark Crosswhite, Jeff
Peoples and Zeke Smith

David L. Balser, Esq.
Brandon R. Keel, Esq.
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309
404-572-4600
dbalser@kslaw.com
bkeel@kslaw.com
Counsel for The Southern Company,
Tom Fanning, and Jim Kerr

K.B. Forbes
Plaintiff, appearing Pro Se