FILED
2025 Sep-24  PM 02:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION



FILED
2025 SEP 24 P 12: 19
U.S. DISTRICT COURT
N.D. OF ALABAMA

K.B. FORBES and CONSEJO DE LATINOS UNIDOS, INC., a Not-for-Profit Public Charity,

     Plaintiffs,

vs.

Case No.: 2:24-CV-1618-AMM

THE SOUTHERN COMPANY, a corporation, ALABAMA POWER COMPANY, a corporation, MATRIX, LLC, an Alabama Limited Liability Company, PERKINS COMMUNICATION, LLC, an Alabama Limited Liability Company, JOE PERKINS, MARK A. CROSSWHITE, JEFF PEOPLES, ZEKE SMITH, JOSHUA WHITMAN, THOMAS A. FANNING, AND JAMES Y. KERR,

     Defendants.

---

## PLAINTIFF'S SECOND AMENDED COMPLAINT

## JURY TRIAL DEMANDED

---

COMES NOW, Plaintiff, K.B. FORBES ("Forbes" or "Plaintiff") and for his Second Amended Complaint naming the following persons and entities as Defendants: MATRIX, LLC ("Matrix"); PERKINS COMMUNICATION, LLC ("Perkins Communication"); JOE PERKINS ("Perkins"); MARK A. CROSSWHITE ("Crosswhite"); ZEKE SMITH ("Smith"); JEFF PEOPLES

("Peoples"); JOSHUA WHITMAN ("Whitman"); ALABAMA POWER COMPANY ("Alabama Power"); THE SOUTHERN COMPANY ("Southern Company"); THOMAS A. FANNING ("Fanning"); and JAMES Y. KERR ("Kerr") (collectively "Defendants"); alleges as follows:

## NATURE OF THE ACTION

1.    By laundering and obscuring payments through secret million-dollar contracts to Matrix and Perkins Communication without any actual invoices, Southern Company and its subsidiary Alabama Power, in defense of their *sister-wife* and embattled law firm Balch & Bingham, is egregiously and intentionally invading Plaintiff's privacy and targeting, harassing, defaming, intimidating, injuring and trampling Plaintiff's Civil Rights. This orchestrated campaign utilized illegal surveillance that had no corporate purpose whatsoever, all of which continues to this day through an active smear website that Southern Company paid for. The defamatory content and the surveillance shenanigans are the result of Southern Company's and Alabama Power's rage that Plaintiff had reported regularly about the misconduct at Balch & Bingham on their blog, had provoked scrutiny and investigations by law enforcement and journalists, had exposed alleged racism and incompetence at the highest levels at Balch, had caused numerous clients to terminate Balch & Bingham costing the firm tens of millions in fees and had served as whistleblowers against the firm's closest political allies.

## THE PARTIES

2.     Plaintiff K.B. Forbes ("Forbes"), a United States citizen, is an individual residing in the County of Shelby, State of Alabama. Forbes, the son of a Latino immigrant, is the co-founder and Chief Executive Officer of the Consejo de Latinos Unidos ("CDLU"), a public charity and consumer advocacy group based in the County of Shelby, State of Alabama. Forbes has spent over 24 years helping those who are too sick, too poor or too old, and has provided a voice for the voiceless. In 2001, Forbes led the successful fight against hospitals that price gouged uninsured patients by charging them five to ten times more than what they would accept as payment-in-full from an insurance company. In 2007, Forbes was named by *HealthLeaders Magazine* as one of the top 20 people making healthcare better in the United States. Forbes has written and published nine investigative reports on hospital price gouging, pharmaceutical company abuses, religious intolerance and police abuse; the investigative reports on hospital price gouging provoked three U.S. Congressional hearings on healthcare abuses, and over a dozen federal, state and local probes across the country. For over two decades, Forbes has worked with law enforcement including the U.S. Department of Justice and the Office of Foreign Assets Control ("OFAC") of the U.S. Department of Treasury to reign in unscrupulous businesses, challenge inept government agencies and bring unsavory criminal acts to light that often lead to criminal indictments. Through his compassionate and altruistic work, Forbes has saved numerous lives by obtaining

access to life-saving healthcare for those in need. Prior to his advocacy work, Forbes was a seasoned public relations expert who worked as a national spokesman, press secretary and communications director on three U.S. presidential campaigns and numerous federal, state and local campaigns.

3.    CDLU is a foreign not-for-profit public charity doing business in the County of Shelby, State of Alabama. CDLU educates and assists Latinos and supports underprivileged and marginalized Latinos and others in the areas of health care, immigration, education, police protection and any other issues of importance. CDLU receives no funding from insurance companies, political parties or labor unions. In 2003, CDLU was credited by *The Wall Street Journal* with "a big win" after forcing the nation's second largest hospital chain to change its aggressive billing practices against the uninsured by charging the uninsured the same prices insurance companies pay for the exact same care. In March of 2005, CBS' 60 Minutes profiled the CDLU's work on behalf of uninsured patients.

4.    Defendant The Southern Company ("Southern Company") is a foreign corporation with its principal offices and nerve center within Jefferson County, Alabama which was doing business within Jefferson County, Alabama at all times pertinent to this Second Amended Complaint.

5.    Defendant Alabama Power Company ("Alabama Power") is a domestic corporation with its principal offices and nerve center within Jefferson County,

4

Alabama which was doing business within Jefferson County, Alabama at all times pertinent to this Second Amended Complaint.

6.     Defendant Matrix, LLC ("Matrix") is an Alabama Limited Liability Company with its principal offices and nerve center within Montgomery County, Alabama which was doing business within Montgomery County, Alabama at all times pertinent to this Second Amended Complaint. At all times relevant to this case, Matrix acted as the agent, servant or employee of Alabama Power and Southern Company, and its acts and omissions described herein were committed pursuant to and in the course of that agency relationship. Alabama Power and Southern Company have ratified, approved and adopted Matrix's acts and torts. Alabama Power and Southern Company are liable for the acts and torts committed by its agent, Matrix, under various theories including but not limited to respondeat superior, ratification and/or adoption.

7.     Defendant Perkins Communication, LLC ("Perkins Communication") is an Alabama Limited Liability Company with its principal offices and nerve center within Jefferson County, Alabama which was doing business within Jefferson County, Alabama at all times pertinent to this Second Amended Complaint. At all times relevant to this case, Perkins Communication acted as the agent, servant or employee of Alabama Power and Southern Company, and its acts and omissions described herein were committed pursuant to and in the course of that agency relationship. Alabama Power and Southern Company have ratified, approved and

adopted Perkins Communication's acts and torts. Alabama Power and Southern Company are liable for the acts and torts committed by its agent, Perkins Communication, under various theories including but not limited to respondeat superior, ratification and/or adoption.

8.      Defendant Thomas A. Fanning ("Fanning") is an individual residing and domiciled in Fulton County, State of Georgia and an employee of Southern Company and a member of Southern Company Management Council at all times pertinent to this Second Amended Complaint, and all of his actions and omissions described herein were taken within the course and scope of his employment in such positions.

9.      Defendant James Y. Kerr ("Kerr") is an individual residing and domiciled in Fulton County, State of Georgia and an employee of Southern Company and a member of Southern Company Management Council at all times pertinent to this Second Amended Complaint, and all of his actions and omissions described herein were taken within the course and scope of his employment in such positions.

10.     Defendant Mark A. Crosswhite ("Crosswhite") is an individual residing and domiciled in Jefferson County, State of Alabama and the CEO of Alabama Power, a wholly owned subsidiary of Southern Company, and a member of The Southern Company Management Council at all times pertinent to this Second Amended Complaint, and all of his actions and omissions described herein were taken within the course and scope of his employment in such positions.

6

11.    Defendant Jeff Peoples ("Peoples") is an individual residing and domiciled in Jefferson County, State of Alabama and held positions at both Alabama Power and Southern Company at all times pertinent to this Second Amended Complaint, and all of his actions and omissions described herein were taken within the course and scope of his employment in such positions. Peoples personally approved all payments made to fund the attacks on Forbes and the CDLU within the course and scope of his authority.

12.    Defendant Zeke Smith ("Smith") is an individual residing and domiciled in Jefferson County, State of Alabama and was an employee of Alabama Power at all times pertinent to this Second Amended Complaint, and all of his actions and omissions described herein were taken within the course and  scope of his employment in such positions. Smith personally approved all payments made to fund the attacks on Forbes and CDLU, within the line and scope of his authority.

13.    Defendant Joshua Whitman, PhD ("Whitman"), is an individual residing and domiciled in Montgomery County, State of Alabama and is directly involved in the design, operation and maintenance of the Website www.cdluexposed.com. He was an employee of Matrix, and all of his actions and omissions described herein were taken within the course and  scope of his employment in such positions.

14.    Joe Perkins ("Perkins") is an individual residing and domiciled in Tuscaloosa County, State of Alabama and is the owner, managing member and an employee of

Matrix and Perkins Communication, and all of his actions and omissions described herein were taken within the course and scope of his employment in such positions.

15.    At all times herein mentioned, all Defendants and each of them were the agents, servants, employees, assistants and consultants of their co-Defendants and were as such acting within the course and scope of their agency and authority of such agency and employment. Each of the Defendants was the agent, servant, employee, subsidiary, affiliate, partner, assignee, successor-in-interest, alter ego or other representative of each of the remaining Defendants and was acting in such capacity in doing the things herein complained of and alleged.

## JURISDICTION AND VENUE

16.    This Court has federal subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 because the Counts contained in this Second Amended Complaint sound in the Constitution and Statutes of the United States. In addition, this Court has diversity subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because this case is between citizens of different states, and the amount in controversy exceeds $75,000.

17.    This Court has specific personal jurisdiction over Defendants because the acts giving rise to Plaintiff's claims took place in the State of Alabama, and because Defendants are domiciled in the State of Alabama and/or regularly transact business in the State of Alabama.

18.    Venue is proper in the United States District Court in the Northern District of
Alabama pursuant to 28 U.S.C. § 1391 as most if not all of the acts in furtherance of
Plaintiff's injuries occurred in Jefferson County in the Northern District of Alabama.

## STATEMENT OF FACTS

19.    Since 2001, Forbes and CDLU have earned and always enjoyed a stellar
reputation for their selfless and unselfish advocacy against unsavory businesses and
inept government agencies that mistreat minorities or consumers.

20.    In March of 2017, Forbes and CDLU launched a website called
BanBalch.com that exposed rampant, unscrupulous and unsavory misconduct
committed by the once-prestigious Birmingham law firm Balch & Bingham, which
eventually led to the investigation and groundbreaking story on May 11, 2017 by
AL.com that former Alabama State Representative Oliver Robinson allegedly took
bribes while fighting the effort to put a Super Fund Clean Up Site in North
Birmingham; Balch & Bingham was accused in the story of allegedly having
funneled $134,000 to a foundation tied to Robinson.

21.    On the heels of these explosive allegations, on May 17, 2017, Forbes and
CDLU dispatched a letter to the U. S. Senate Judiciary Committee calling on them
to block the nomination of Jeffrey H. Wood for Assistant U.S. Attorney General for
the Environment and Natural Resources Division because Wood was a former
partner and top lobbyist at Balch & Bingham and was lobbying on behalf of Alabama

Power on Capitol Hill about the Super Fund Clean Up Site in North Birmingham in 2016, according to congressional records.

22.    On June 6, 2017, the Trump administration quietly withdrew the Wood nomination. On June 22, 2017, former Representative Robinson pled guilty to federal bribery, conspiracy, fraud and tax evasion charges in the North Birmingham bribery scandal. According to a news report on AL.com, Balch & Bingham was involved in the bribery scheme, reporting, "An unnamed partner (identified as Attorney #1) at Balch & Bingham ...[was] involved in the conspiracy, according to the charges."

23.    On June 23, 2017, the day after former Representative Robinson's plea agreement, Forbes and CDLU wrote to Southern Company Chairman and CEO Thomas A. Fanning asking him to please tell Balch's Managing Partner that Southern Company does not want to be associated with this type of behavior at any level.

24.    In late June of 2017, Forbes and CDLU launched a TV and digital advertising campaign against Balch and Bingham. *Politico.com* reported on June 27, 2017:

> The Consejo de Latinos Unidos, a nonprofit that's been waging a quixotic campaign against the lobbying firm Balch & Bingham for months, is going on up on the air with TV ads going after the firm. The ad's narrator says that Balch "ought to be ashamed" after federal prosecutors charged a former Alabama state representative with accepting bribes from an unidentified former partner at the firm. The former state representative, Oliver Robinson, took a plea deal last month, according to AL.com. The nonprofit has been fighting for months to convince Congress and the White House to ban Balch from lobbying the Trump administration as part of a wide-ranging campaign against the firm. It has also accused the firm of engaging "in a cover-

up of the firm's lobbying efforts to change Russia sanctions," as PI reported last month. The nonprofit is spending just $10,000 to air the low-budget ad on cable in Washington, Atlanta and Birmingham, Ala. But it's supplementing its efforts by emailing nearly a dozen of the firm's lobbying clients, including Blue Origin and Southern Company, and urging them to cut ties with the firm. K.B. Forbes, the nonprofit's executive director, said he'd already gotten a concerned phone call from the chief executive of one of the firms.

25.    On September 28, 2017, right on que, a partner at Balch & Bingham, Joel I. Gilbert, was indicted in the North Birmingham Bribery Scandal in which former Representative Robinson took over $360,000 in bribes in a scheme to discourage African Americans in North Birmingham from having their toxic property tested by the Environmental Protection Agency. The night before his indictment, Gilbert's attorney tried to spin the media, calling Gilbert's actions "routine legal services."

26.    Shortly after the indictments were handed down, Forbes and CDLU wrote to all of Balch & Bingham's Washington, D.C. lobbying clients, including Southern Company, telling them about the indictments, the racist targeting of African Americans and encouraging them to terminate Balch & Bingham. Forbes had even spoken on the phone with some of their CEOs.

27.    On October 19, 2017, *Politico.com* reported that four Balch clients had terminated the firm. Then, William F. Stiers, Balch's top lobbyist, left the firm after 20 years and jumped ship to a rival on November 2, 2017.

28.    On November 30, 2017, Thomas A. Fanning, then-Chairman and Chief Executive Officer of Southern Company called Forbes directly and told him that he

had assigned James Y. Kerr, Chief Compliance Officer and General Counsel of Southern Company, to meet with Forbes and CDLU. Fanning told Forbes that Southern Company was part of the community and wanted to meet with CDLU to discuss CDLU's concerns about Balch & Bingham.

29.    In December of 2017, Forbes met with Kerr in Birmingham at the offices of Lightfoot, Franklin & White where Forbes went over in detail about the involvement of Balch & Bingham and Alabama Power in the North Birmingham Bribery Scandal, including providing congressional records of Jeffrey H. Wood's lobbying activities.

30.    The following month, in January of 2018, Kerr called Forbes and refused to terminate Balch & Bingham. Kerr also refused to acknowledge or accept that the North Birmingham Bribery Scheme discriminated against African Americans, calling the racist scheme a "hypothesis," even though North Birmingham is 92.5 percent African American. Kerr declared that no entity associated with Southern Company was involved at all in the North Birmingham Bribery Scheme, which was untrue. When Forbes asked about the involvement of Jeffrey H. Wood, a Balch lobbyist working on behalf of Alabama Power, Kerr did not respond. Thereafter, *The Root* published the following account of the phone call:

> Kerr responded, "We do not see a place to step into [the Robinson scandal]." That rings hollow considering that Wood, Balch's point lobbyist for Southern, was lobbying on Superfund policy at the time on behalf of Southern. In fact, Wood has specifically recused himself from any matters at the ENRD pertaining to the 35th Avenue site, suggesting that he was specifically lobbying about the site. After [the CDLU] pointed this out, Kerr took a long pause before going full Sarah

Huckabee Sanders: "We reviewed the information. I have no concerns about anything inappropriate."

31.    Balch & Bingham is the *sister-wife* of Alabama Power. Founded in 1922 by William Logan Martin, Jr., the brother of the president of Alabama Power, Thomas Logan, the revolving door between Balch and Alabama Power has always been spinning. In 2018, Mark A. Crosswhite, the then-CEO and Chairman of Alabama Power, was a former partner at Balch & Bingham, as were his General Counsel, and also his Vice President of Government Affairs. Kerr had no interest in terminating that revolving-door relationship. As *The Root* published in 2018: "Both entities [Southern Company and its subsidiary Alabama Power] share more relations with Balch than sister-wives. Executives at Southern and Balch swap out like Pokémon cards. Their little black book of political donees is Old Testament-thick."

32.    That same month that Kerr defended Balch & Bingham (January of 2018), ten money-making partners at Balch left the embattled firm.

33.    On February 27, 2018, Forbes and CDLU broke the story on its blog BanBalch.com that indicted Balch partner Joel I. Gilbert was still on the payroll at Balch & Bingham. Forbes and CDLU continued reaching out to Balch's Washington, D.C. lobbying clients; HealthSouth Corporation (now called Encompass) terminated Balch on May 2, 2018.

34.    Near the end of May of 2018, before the Southern Company annual shareholders meeting, Forbes and CDLU dispatched information to all major

Southern Company institutional investors and Wall Street analysts calling on Southern Company to "suspend its relationship" with Balch & Bingham, which they declined to do.

35.     Beginning on June 27, 2018, Forbes' and CDLU's blog BanBalch.com covered the North Birmingham criminal bribery trial with daily posts. CDLU reported daily on proceedings occurring in the federal courtroom and also appeared inside the courthouse as observers to report on what transpired. Forbes' and CDLU's daily viewership at BanBalch.com increased into the tens of thousands, according to analytics at the time.

36.     Balch & Bingham partner Joel I. Gilbert was convicted on all six federal criminal counts including bribery and money laundering on July 20, 2018, and was eventually sentenced to five years in federal prison. The evening the verdicts were handed down, Balch & Bingham finally fired Gilbert, and stated, "Our firm was not a party to the case." Forbes and CDLU responded: "But one of Balch's most loyal, dedicated equity partners was, Gilbert, who was a Balch & Bingham-made millionaire. The bribery scheme, the invoicing, the bribery checks, the ghost-written letters were born at the offices of Balch & Bingham."

37.     Minutes after the guilty verdicts were handed down, Forbes and CDLU wrote an email to Fanning, the Chairman and CEO of Southern Company and Kerr, his General Counsel and Chief Compliance Officer, writing, "Time for us to talk

again…and straighten out this mess for the good of Southern Company, for the good of OUR community." Neither ever responded.

38.     During the criminal trial of the Balch & Bingham partner, Alabama Power representatives never took the stand. The money laundering entity Alliance for Jobs and the Economy (AJE) was the brainchild of Crosswhite and was created and incorporated by Balch & Bingham on behalf of Alabama Power. Alabama Power had donated $30,000 as seed money to the effort. Representatives from other entities that donated to AJE testified at the trial. Alabama Power did not.

39.     In August of 2018, Balch & Bingham reached out to Forbes and CDLU through an interlocutor, a former Assistant U.S. Attorney and seasoned RICO attorney, declaring that they would settle another separate legal matter involving Balch[1] if and only if Forbes and CDLU stops publishing critical, investigative posts about Balch & Bingham and signs a non-disparagement agreement. Besides briefing the RICO attorney about the numerous scandals and alleged unsavory conduct related to Balch, Forbes and CDLU informed him that Forbes and CDLU were not a party to any lawsuit which it could settle.

40.     In November of 2018, Forbes and CDLU reported that two consultants tied to Balch & Bingham were indicted by Jefferson County prosecutors. As Pulitzer-winning columnist John Archibald wrote at the time:

---

[1] *Burt W. Newsome et. al. v. Clark Andrew Cooper et. al.,*
Circuit Court of Jefferson County Case No. 01-CV-2015-900190.00

> Trey Glenn, the head of the EPA for the Southeast region and a shill for polluters from way back, was just charged with crimes for his role in the toxic north Birmingham bribery scandal. And Scott Phillips, a former member of the Alabama Environmental Management Commission who took a contract from Balch & Bingham to help discourage cleanup of north Birmingham and prevent EPA expansion into Tarrant, was charged on the same day for related crimes. Phillips and Glenn were charged last week — the charges were made public today — with a range of ethics charges. Phillips was charged with multiple violations of the Ethics Act, and Glenn was charged with multiple counts of conspiracy and/or complicity with Phillips to violate the Ethics Act. Prosecutors claim Phillips used his public position for personal gain, and Glenn helped him do it.

41.    By February 5, 2019, CDLU's two years of efforts to educate Balch & Bingham's D.C. lobbying clients about the firm resulted in 17 of 18 major clients terminating Balch.

42.    On April 5, 2019, Forbes and CDLU reported that newly confirmed U.S. Attorney General William P. Barr had fired former Balch lobbyist Jeffrey H. Wood. after being confirmed in February. A long-time crony of the Balch & Bingham/Alabama Power revolving door, Wood was appointed on November 1, 2018 as the Principal Deputy Assistant Attorney General for Environmental and Natural Resources Division. The appointment did not require Senate approval and was apparently one of former U.S. Attorney General Jeff Sessions' last appointments before he was fired by President Trump, but Wood did not even last six months into his new appointment.

43.    Everything came to a head when *The Washington Post* published an explosive feature story on the North Birmingham bribery scandal on April 24, 2019, when a

lengthy story was published which included new revelations about Balch & Bingham and that 21 of its attorneys were involved in the bribery scheme. *The Washington Post* story reported:

> The Balch billing department balked at instructions from [convicted felon and now ex-Balch partner Joel I. Gilbert to scrub the Oliver Robinson Foundation's name from certain invoices and list work as "community outreach" instead of consulting. "I'm not sure why we cloak the reference in our invoice," chief operating officer David Miceli wrote in a Sept. 22, 2015, email. "You ever hear anything from Joel on this?" he asked in a later email flagging a $25,500 payment. The internal back and forth, documented later in the criminal case, dragged on for months. Balch & Bingham, which would not make anyone available for an interview for this article, has insisted that Gilbert, as a partner, acted alone and would not have raised any flags as he deposited $360,000 into the Robinson foundation account because the money went out at a moderate pace over many months. [Drummond executive David] Roberson later said that 21 Balch & Bingham attorneys "played at least some part" in the anti-EPA campaign built on Robinson's efforts.

44.    In the wake of the *Post's* story, on May 2, 2019, Southern Company revealed it was under federal investigation in Mississippi for the infamous Kemper Plant and CDLU re-posted a story from the *Atlanta Journal Constitution* that stated:

> Southern Company disclosed it is under investigation by the U.S. Department of Justice over a power plant that already has caused the company years of heartburn and billions of dollars. Southern said it learned of the probe by the DOJ's Civil Division on Monday and that it involved the Kemper County plant owned by the utility's Mississippi Power subsidiary. Southern, which is also the parent of Georgia Power, reported in a quarterly filing that it could not determine the outcome of the investigation but that it ultimately might prove significant enough to materially affect the parent company's financial disclosures to investors.

45.     In October of 2019, Balch & Bingham blamed Forbes and CDLU and its blog, BanBalch.com for their troubles in a pleading before the Alabama Supreme Court.

**THE PHOTOGRAPHS**

46.     In December of 2019, CDLU filed a formal complaint with the Office of the Inspector General and the Office of Professional Responsibility at the U.S.





Department of Justice containing secret surveillance photos of Crosswhite inappropriately having cocktails with then-U.S. Attorney Jay E. Town, at the height of the North Birmingham Bribery Scandal Trial. In the photos, Mr. Town is enjoying cocktails with the Chairman and CEO of Alabama Power at the Moon Shine rooftop lounge at the Elyton Hotel in downtown Birmingham, Alabama. CDLU accused Town and Crosswhite of inappropriate and unethical conduct and alleged that Town

and Crosswhite had a secret deal that prevented federal prosecutors from calling anyone from Alabama Power in the North Birmingham Bribery Trial in 2018. Forbes also sent additional materials in January of 2020 to the U.S. Department of Justice laying out the improper relationship between Town and Alabama Power, specifically that in one of the photos, Crosswhite appears to be paying for the refreshments. U.S. Department of Justice guidelines specifically say that an employee may not solicit or accept a gift given because of his official position or from a prohibited source.

47.    In April of 2020, during the early months of the COVID-19 pandemic, the U.S. Department of Justice sent Forbes an email acknowledging receipt and advising Forbes and CDLU that the matter had been sent to yet a third internal office. Forbes and CDLU then correctly wrote on the BanBalch.com blog in early June of 2020 that Town was under intense scrutiny for his ties to Balch & Bingham and Alabama Power.

48.    In June, as a result of the probe at the U.S. Department of Justice instigated by CDLU, Jay E. Town decided to resign as U.S. Attorney, and in early July of 2020, Town announced his resignation publicly and fled in in middle of the night, his resignation effective at midnight on July 15, 2020.

49.    On June 16, 2020, Forbes and CDLU dispatched a letter to the new CEO of Marathon Petroleum, calling on the company to fire Balch & Bingham and the very next day, Marathon terminated Balch & Bingham, marking the 18th of 18 Balch's Washington, D.C. lobbying clients to terminate the embattled firm.

50.    On June 30, 2020,  CDLU published audio files from 2018 of Southern

Company's Chief Compliance Officer James Y. Kerr calling the racist scheme to

suppress African Americans in North Birmingham a "hypothesis."  In a blog post,

Forbes and CDLU reported:

> Kerr had the audacity to dismiss the racist scheme, telling K.B. Forbes,
> the Chief Executive Officer of the CDLU, "I don't accept your
> proposition or your hypothesis." Forbes responded, "Should [Balch &
> Bingham] have the right to suppress African Americans? You think
> that's okay? I'm asking you point blank, do you think it's okay? Do you
> find it morally repugnant or not Jim? Come on take a stand! [Kerr]
> would not accept the "proposition" or "hypothesis" that North
> Birmingham scheme to suppress African Americans was racist. Kerr
> would not react until the CDLU brought up an analogy of Southern
> Company's refusal to hold Balch accountable would be like refusing to
> hold Woolworth accountable when they "wanted to keep Blacks out of
> the soda fountain." Kerr called CDLU's analogy "preposterous" but the
> CDLU rebutted Kerr, saying, that it was accurate because the bribery
> scheme "discriminated against poor African Americans in North
> Birmingham CERLA." Kerr then again refused to acknowledge or
> accept that the North Birmingham scheme discriminated against poor
> African Americans, declaring, "I have no evidence that that is the case
> that any entity involving my organization or any entity based on the
> information that I've been given that that is the case. Your analogy is
> unfounded." But then Kerr was blindsided by the CDLU. Jeffrey H.
> Wood was a lobbyist for Balch & Bingham and was lobbying on
> Capitol Hill in 2016 [on behalf of Alabama Power] about the North
> Birmingham EPA matter at the same time as the bribery scheme in
> North Birmingham against the EPA was happening. At first, on the
> phone call, Kerr said he wasn't sure what we were asking, but after
> repeating the question with reminders, he took 5 seconds to respond
> with a canned legal answer: "It's, um… I told you that I looked into the
> information provided me. We reviewed the information and I have no
> concerns about anything inappropriate."

THE CAMPAIGN OF FEAR AND INTIMIDATION

51.    On the morning of July 4, 2020, Brenda Paige Ward rented a large passenger van from Budget Car and Truck Rental of Birmingham at the Birmingham-Shuttlesworth International Airport and loaded it with fake protestors and actors. Ward then drove to Forbes' home and staged a two-minute "shoot and scoot" fake protest in front of and adjacent to Forbes' home. Ward terrorized Forbes' neighbor across the street, who believed she and her family had been targeted, and she immediately called local law enforcement. The fake two-minute protest was just weeks after George Floyd's brutal murder and at the height of violent and deadly protests across the country. Forbes' then-eight-year-old daughter cried thinking they were killing an African American in front of the house after she looked out the window. By the time deputy sheriffs arrived, the protestors were gone. Forbes' neighbors were so shaken, they placed a deposit on a new home six-days later, and eventually moved after 14 years in the neighborhood.

52.    On July 8, 2020, Alabama Political Reporter (APR) ran the first of three consecutive weekly hit pieces attacking Forbes, CDLU and the BanBalch.com website, calling the CDLU a "dark money organization" while defending Balch & Bingham. The hit piece stated that Forbes' actions against Balch "rose to extortion and tortious interference with business relationships," according to one of APR's anonymous sources. These hit pieces remain online and in circulation to this very day.

53.    On or about July 9, 2020, Forbes found a Facebook Live video by Ward and indeed he and his family were the targets. In addition Forbes found another Facebook Live video dated July 2, 2020, featuring Carlos M. Chaverst, Jr. a cop-hating rabble rouser, attacking Forbes. Creating a possible race war between African- Americans and Latinos, Chaverst called Forbes a "racist ass white man" and WYPIPO, while using other, more graphic slurs and vulgarities on the video in a now deleted Facebook profile. Forbes immediately had his wife and two young daughters flee Alabama to Mexico the next morning for their own safety.



54.    On July 13, 2020, Facebook responses to APR's hit piece from July 8 were almost unanimously against Balch & Bingham.

55.     On July 16, 2020, Josh Moon, a columnist for APR, wrote a second hit piece personally attacking Forbes and accusing him of being personally paid when he obtained a settlement from a hospital chain that engaged in price gouging of the uninsured. These hit pieces remain online and in circulation to this very day.

56.     But the document linked to Moon's article clearly states, "Tenet has not entered into any 'settlement' with K.B. Forbes. Since the settlement agreement [with CDLU], Tenet has not arranged for K.B. Forbes to engage in any such speaking activities, nor has Tenet made any contributions to Consejo for K.B. Forbes' services."

57.     On July 20, 2020, Forbes had a three-way call with FBI Special Agent Julie K. Laabs, and the Shelby County Sheriff's office about the threats by Carlos M. Chaverst, Jr. and the shoot-and-scoot fake protest that terrorized Forbes' family and his neighbors. They understood that Forbes' family was forced to flee and were very supportive. They also said that Chaverst would be dealt with that same day, and not to worry about him. That evening, Chaverst was arrested by three different law enforcement agencies.

58.     On July 23, 2020, APR ran its third hit piece talking about Forbes' alliance with Civil Rights Champion J. Patrick Rooney, who had been dead for 12 years, and stated falsely: "After Tenet entered an agreement that, among other things, …agreed to pay for Forbes' travel and pay him for speaking engagements, CDLU dropped all 10 lawsuits." These hit pieces remain online and in circulation to this very day.

59. On or about August 5, 2020, Forbes joined his family in Mexico, losing the benefits of his home in Birmingham.

60. In a brazen attempt to instill fear and intimidate, Josh Moon of APR foolishly visited the CDLU's headquarters on or about August 11, 2020.



Video surveillance shows him waiting in his black pick up for about 15 minutes before entering the building. Once in the building, Moon approached the receptionist of the business next to the CDLU's office aggressively demanding a copy of CDLU's tax filing, known as a 990. When the receptionist mentions they are not the CDLU, but will gladly get a message to CDLU, Moon offers a phone number one digit off his real cellular phone number and states his name is "Bill." He later appears to have driven in front of Forbes' home from images caught of home security cameras. CDLU's offices were closed indefinitely due to COVID-19.

61. On or about August 27, 2020, signs were placed around Downtown Birmingham promoting a smear site called CDLUExposed.com and attacking and defaming Forbes and CDLU. The site falsely and slanderously says Forbes is "now involved in an extortion attempt" and a "defender of an accused rapist."

62.     Near the end of September of 2020, Defendants attempted to obtain Forbes'

and CDLU's private banking information on two separate occasions, September 23

and 24, 2020. An individual, knowing the account numbers, attempted to

impersonate Forbes, and the bank initiated a security block. Forbes and CDLU were

forced to open new bank accounts since their accounts had been compromised.

63.     On November 17, 2020, the ex-CEO of a Balch & Bingham client, Black Hall

Aerospace, was indicted for contract fraud involving the Afghanistan War. On May

18, 2017, the day after Robert S. Mueller III was named Special Counsel of the U.S.

Department of Justice, Forbes and CDLU advised Mueller that the revenue growth

at the Russian-linked aerospace company had been enormous and raised serious

concerns and questions. The ex-CEO of Black Hall Aerospace, Paul Daigle, was

then indicted for exactly what Forbes and CDLU had outlined to Mueller as stated

on the U.S. Department of Justice news release:

> According to the indictment, between 2013 and 2017, Daigle allegedly
> engaged in two fraudulent schemes that resulted in the submission of
> false claims to the U.S. Government. The first scheme involved the use
> of unqualified employees for government contracts. The second
> scheme involved alleged false billing, in which the government was
> charged for work unrelated to a government contract.

64.     On December 23, 2020, in an Alabama State Civil Case not involving CDLU

or Forbes, Alabama Power lawyers filed a protective order for Mark A. Crosswhite

and Alabama Power [**Exhibit "A"**]. The document shows the intense anger that

Alabama Power had about BanBalch.com and CDLU's blog posts, especially those

concerning former Balch lobbyist Jeffrey H. Wood and former U.S. Attorney Jay E. Town[2].

65.    On February 4, 2021, harassing emails were sent from unknown individuals and obscure email addresses to Forbes and CDLU's accountants urgently demanding copies of CDLU's tax filings. On February 9, 2021, CDLU received media calls that erroneously stated that Forbes and CDLU had abused federal PPP and SBA EIDL Loans and possibly committed fraud.

66.    On April 6, 2022, Judge Abdul K. Kallon, who presided over the North Birmingham Criminal Bribery Trial, abruptly resigned in a surprising and unexpected announcement. Appointed in 2010, Kallon was only three years away from senior status, which means he could have retired with full benefits. Observers stated at the time that the abrupt resignation did not make any sense.

67.    In another stunning development, Balch & Bingham partner William Dice Lineberry who helped create and incorporate the entity Alliance for Jobs and the Economy (AJE), which was used to funnel bribes and launder money in North Birmingham, committed suicide on April 12, 2022. He brutally hanged himself.

68.    Nine months after Plaintiff provided evidence to the U.S. Department of Homeland Security and the Homeland Security Investigations on child exploitation, former Balch & Bingham attorney Chase T. Espy was indicted by a federal grand

---

[2] *Roberson, et. al., v. Drummond Co., Inc.,*
Circuit Court of Jefferson County Case No. 01-CV-2019-901210

jury on June 3, 2022 and was later sentenced to eight years in federal prison for possession of child pornography.

69.    On June 29, 2022, *The Guardian* wrote about a document dump that landed in journalists' laps, and the fighting between Matrix's founder Joe Perkins and his once-protégé Jeff Pitts. The report revealed how Matrix engaged in surveillance of a leading journalist in Florida. Photos were published of the journalist and his girlfriend who were spied upon.

70.    On June 30, 2022, Joe Perkins, the founder of Matrix published a rambling statement on Yellowhammernews.com, falsely accusing the CDLU of conspiring with donaldwatkins.com and Lisa Swaboda, a cavalier dog rescuer, of defaming him. In his rambling statement, Perkins talked about how, without his authorization, Matrix had funneled and laundered over $50 million through 18 different 501(c)4 entities during a ten-year period.

71.    On July 8, 2022, Yellowhammernews.com deleted the rambling, incoherent statement. CDLU wrote at the time:

> Perkins appeared to falsely allege that we, the CDLU, were involved in a conspiracy with news site DonaldWatkins.com and a cavalier dog rescuer to defame him in his ongoing, two-state divorce with his once-protégé "Jittery Jeff" Pitts. Perkins appeared to have threatened to file a SLAPP lawsuit (Strategic Lawsuit Against Public Participation) against the CDLU. We, the CDLU, are letting federal authorities know about the allegations and are providing them copies of the statement.

72.    In early August of 2022, news reports claimed that Alabama Power engaged in surveillance of a top executive of their parent company, Southern Company

Chairman and CEO Thomas A. Fanning and his then-girlfriend. Evidently, Alabama Power CEO Mark A. Crosswhite allegedly had agents spy on his boss Fanning, to obtain photographic evidence that Fanning was bisexual, according to sources familiar with the surveillance that occurred in 2017. The move completely backfired because Fanning is not bisexual and surveillance obtained were only of Fanning's then-girlfriend. Although Alabama Power has stated (through a Southern Company spokesperson) that they did not pay for the surveillance, media reports allege that Matrix, the obscure political consulting firm working on behalf of Alabama Power, hired the eye-spies.

73.    On a date unknown to Plaintiff, but within the last six years from the date of the filing of this Complaint, Defendants determined that Forbes and CDLU were enemies of Southern Company and the utility industry, and they organized and implemented a conspiracy to destroy Forbes and the CDLU. Defendants sought to trample Forbes' Civil Rights and injure, oppress, threaten and intimidate Forbes and CDLU from exercising or enjoying their constitutional rights in a campaign of fear and intimidation that was a conspiracy to discourage Forbes from talking with law enforcement, and retaliated against Forbes and CDLU for testifying to and briefing the U.S. Department of Justice, including providing the jaw-dropping photos of Crosswhite and Town.

74.    As part of that conspiracy, and within the last six years, Defendants have engaged in a continuous campaign of tortious and criminal conduct designed and

intended to harm, injure, oppress, intimidate, harass, and defame Forbes and the CDLU, violate Forbes' Civil Rights, and invade Forbes' privacy.

75. Crosswhite, Smith and Peoples, acting within the course and scope of their authority with Southern Company and/or Alabama Power, regularly met with Joe Perkins and other employees of Matrix and Perkins Communication to plan and plot attacks against Forbes, his family, and the CDLU.

76. During the course of the conspiracy, Alabama Power and Southern Company have paid Matrix, LLC and/or Perkins Communication, LLC in excess of $3.5 million dollars of shareholder money to carry out the attacks on Forbes, his family, and CDLU. On December 26, 2021, news reports exposed how Alabama Power issued secret multi-million-dollar contracts to Joe Perkins and his entities without the need of invoicing. The published agreements cover an 18-month period from January 1, 2018 through July 31, 2019. Perkins made $2,568,000 from these secret contracts.

77. All expenditures of Southern Company and/or Alabama Power to attack Forbes, his family, and CDLU were sanctioned by Zeke Smith of Alabama Power Company or Jeff Peoples, who held positions with both Alabama Power and the Southern Company, and who made such payments and expenditures within the line and scope of their employment with Southern Company and/or Alabama Power [**Exhibit "B"**][3].

---

[3] *Burt W. Newsome. v. Matrix LLC,*

## THE SMOKING GUN

78.    On November 21, 2022, Mark A. Crosswhite was ousted as Chairman and CEO of Alabama Power after earlier news reports outlined a campaign of surveillance and intimidation by Alabama Power against other corporate executives, journalists and political enemies. Southern Company was in the midst of a deep internal investigation of inappropriate surveillance efforts and rogue campaigns of fear and intimidation.

79.    On November 23, 2022, Forbes and CDLU learned that Defendants were behind the campaign of fear and intimidation against Forbes and CDLU. The smoking gun is a copy of a Matrix, LLC expenditure report created August 25, 2020 for Zeke Smith, the Executive Vice President of External Affairs at Alabama Power [**Exhibit "C"**]. The Excel Spreadsheet was named APC CDLU Special.xlsx, identifying it as a special project of Alabama Power and is attached to a Shelby County police report. The document was last saved by Kim Hines, CFO of Matrix, LLC and a convicted felon who served 30 days in jail for using $18,000 from a cheerleader fund for personal use in 2001 [**Exhibit "D"**].[4]

80.    The documents showed over $318,000 was spent in a seven-week period against Forbes and CDLU.

---

Circuit Court of Jefferson County Case No. 01-CV-2024-901173.00
[4] *State of Alabama v. Kimberly G. Hines,*
Autauga County Case No.: CC-2000-000283

81.    The breach of privacy by the Defendants was so invasive that the Defendants paid $399 on June 11, 2020 for software to track international exports including the Bill of Lading. On that same day, June 11, 2020, Forbes had received a Bill of Lading after he had exported a Princess Bed for his then three-year-old daughter to the family home in Mexico.

82.    In August of 2020, according to the spreadsheet, Southern Company approved the monthly payment of $10,000 to APR (Alabama Political Reporter) for a full year, expending $120,000 on obtaining paid-for coverage against the CDLU and Forbes. In an NPR News report published on December 19, 2022, Bill "Britt, Alabama Political Reporter's editor in chief, says he could not verify the specific Matrix payments. Britt affirmed he took money from the firm for advertising and acknowledges that Matrix also paid for reporters to do research for the firm, an atypical practice for newsrooms. 'We have to make money,' Britt says."

83.    The spreadsheet showed that Southern Company authorized the expenditures of three payments totaling $16,400 to True Targeted Digital Solutions, on July 9, 2020, July 17, 2020, and July 25, 2020, the day after each of the APR hit pieces about Forbes and CDLU were published. True Targeted Digital Solutions was paid to place media buys that promoted the inaccurate APR hit pieces on digital platforms. The company, owned by political consultant Angi Horn, boasts on their website, "By delivering your digital message via web, app, podcast, streaming video

and social ads to users who are truly targeted, you can be confident that your digital budget is being utilized efficiently and effectively."

84.     In addition to True Targeted Digital Solutions, Southern Company authorized the total expenditure of $3,000 in Facebook advertisements, again boosting APR posts of the three hit pieces they were paid to write. In the notes in the spreadsheet, "apr cdlu" is listed next to one of the expenditures. Unfortunately, the public reaction on Facebook unanimously condemned Balch & Bingham and mocked APR's defense of the embattled law firm.

85.     On July 17, 2020, Southern Company authorized the expenditure of $85.81 at Go Daddy to reserve the website domain cdluexposed.com. ICANN registration information confirms the purchase in that the website was registered on July 17, 2020 at 2:10 p.m. UTC and the address listed is for Go Daddy in Tempe, Arizona. A response to a subpoena provided in a state court case unequivocally shows that Matrix, LLC has paid, and continues to pay on behalf of Southern Company for the domain name of the defamatory website CDLUExposed.com [**Exhibit "E"**].

86.     A month later, on August 17, 2020, Southern Company again authorized the purchase of another website from GoDaddy, spending $52.63 to reserve AlabamiansforJustice.com. ICANN registration confirms the purchase in that the website was registered on August 14, 2020 at 8:01 p.m. UTC and the address listed is for Go Daddy in Tempe, Arizona.

87.    Southern Company approved the use of and payments to Frank Matthews, an antisemite booster. The spreadsheet shows two payments totaling $8,115.00. One of the payments, $2,115.00, was for the campaign-style signs promoting CDLUExposed.com that were posted on or about August 27, 2020 throughout Downtown Birmingham. Matthews, who self-proclaimed himself as "God's Gangster," defended and praised Louis Farrakhan, the antisemite and anti-white racist who came to Birmingham in June of 2013. In the summer of 2020, on the seven-year anniversary of the visit, Matthews declared that it was a "Privilege and honor to meet the most regarded! honorable Louis Farrakhan" in a Facebook Post. Matthews then spouts his own hate, writing, "We don't care what Jewish Foundation or Federation or no house negroes that didn't want the minister here." And who did Matthews tag in that Facebook post dated June 14, 2020? Carlos M. Chaverst Jr., the rabble-rouser who attacked Forbes just weeks later. Matthews even called the CDLU's 1-800 number, leaving a vulgar 25 second message, calling the CDLU "assholes" and saying the advocacy group was "full of shit."

88.    Southern Company approved the expenditure of $500 to Tspeaker, LLC which created the animated GIFs of K.B. Forbes on the CDLUExposed.com website. The company is owned by Ted Speaker, a musician and producer currently based in Los Angeles.

89.    On August 17, 2020, Southern Company authorized the payment of $6,000 to create the CDLUExposed.com website and $126.84 to A2 Solutions to host the

domain. ICANN registration confirms that the CDLUExposed.com website is hosted by A2 Solutions. A response to a subpoena provided in a state court case unequivocally shows that Matrix, LLC has paid, and continues to pay on behalf of Southern Company for the hosting of the defamatory website CDLUExposed.com [**Exhibit "F"**].

**THE WEBSITE**

90.    As part of their conspiracy, Matrix as paid by Southern Company and Alabama Power have published and maintained on the Internet a Website named "cdluexposed.com" (hereinafter the "Website"). CDLU is a public charity. Matrix as paid by Southern Company and Alabama Power have published and continue to publish material on "cdluexposed.com" that defames Plaintiff, which portrays him in a false light, and that invades his privacy.

91.    More specifically, the Website, and the pages that appear as "search results" on the different search engines, falsely assert or imply that (1) Burt Newsome, an attorney, has been arrested for and been criminally charged with credible allegations of criminal guilt for rape and sexual assault, (2) that Forbes and CDLU are defending Newsome, a rapist, and (3) that Forbes and CDLU are committing the crime of "extortion" by extorting "another law firm." These statements are false.

92.    The front page of these Defendants' Website displays a mugshot (the "Mugshot") of Burt Newsome next to the headline, **"SHOCKING REVELATION: FORBES DEFENDS ACCUSED RAPIST BURT**

NEWSOME" (emphasis in the original; underlining added); a giant headline underneath states, "NEWSOME **ACCUSED** OF RAPE AND CASE SETTLES." The word "accused" is term of art; it means "the Defendant in a criminal case."[5]

93.    The allegation of "rape" was apparently taken from à 2001 civil suit against Newsome and his employer—which was dismissed with prejudice. The Mugshot was taken from Newsome's misdemeanor arrest for menacing in 2013; that prosecution was also dismissed with prejudice. The Defendants' purpose and intent, in publishing this collage or mashup of separate events was and is to create the false impression *that Newsome was arrested for rape*. Newsome has never been arrested and/or criminally charged or indicted for rape. Newsome has never been convicted and/or pled guilty to any charges in his life other than minor traffic citations.

94.    Forbes and CDLU have assisted rape victims of sexual predators. Forbes and CDLU championed the victims of sexual assault at an adult day care center in California known as Healthy Start. These developmentally disabled adult children were raped and sodomized by Juan Fernando Flores while inept government agencies did nothing. Because of CDLU's advocacy, the facility was permanently shut down and Flores was sent to prison. Forbes and CDLU have never defended a rapist.

95.    The Defendants' Website also contains the headline, "**NEWSOME PART OF EFFORT TO EXTORT ANOTHER LAW FIRM**." (emphasis in original). A

---

[5] The American Heritage Dictionary 12 (5th ed. 2016).

sub-headline reads **"Burt Newsome, through his surrogate K. B. Forbes, is now involved in an EXTORTION attempt against another law firm."** (emphasis added). The Website also contains a quotation from a CDLU Website (BanBalch.com), stating: "If Balch & Bingham had simply reached out to us, the CDLU, and tried to resolve the Newsome Conspiracy Case in early 2017, this blog would not exist. . . ."

96.     "Extortion" is a felony defined by state and federal law, and the Defendants' Website falsely states that Forbes and CDLU are "now" engaged in "an extortion attempt." Forbes has never committed extortion, and he has never been charged with extortion. Forbes is not and has never been Newsome's "surrogate," agent, or employee. Finally, although knowable only to a trained, criminal lawyer, the words attributed to CDLU are not "extortion." The gist of extortion is a "threat," and the post on BanBalch.com does not contain a threat. It merely recites *what, in the blogger's opinion, would have occurred* if Balch & Bingham had "reached out" to it years earlier.

97.     On or about August 14, 2022, the Defendants completely removed the Website (cdluexposed.com) from the Internet, including all defamatory matter, all other content, and even its email address.

98.     On or about September 2, 2022, Matrix as paid by Southern Company and Alabama Power made a conscious, independent decision to republish the Website, with the intent to reach a different and broader audience.

99.   In their resurrection of the Website, these Defendants again published the defamatory statements described earlier, including the statement that **"Burt Newsome, through his surrogate K. B. Forbes, is now involved in an EXTORTION attempt against another law firm."** (emphasis added). This allegation—which still appears on the Website—is and was plainly false.

100.   These Defendants' republication of the Website, with the intent to reach a new and wider audience, was and is a new, separate and distinct "publication" of the defamatory material.

## MANIPULATION OF CONTENT AND SEARCH RANKINGS

101.   Internet search results are increasingly impactful in modern society by providing an integral tool for accessing and influencing opinions of and about individuals, public charities, businesses, services, and products. The Google search engine is particularly impactful, accounting for roughly 90% of the close to 4 billion internet searches conducted each day.

102.   In addition to publishing the Website, the Defendants have used sophisticated techniques to design, engineer, and maintain the Website to manipulate, control, and determine the material that appears when a user enters the words "CDLU" and/or "K.B. Forbes." When such a search in made in Google, multiple images from the Website appear, with the defamatory caption, "K.B. Forbes has lied before about using his front group, CDLU, as a shill for private industry."

103.   The Defendants have also used sophisticated techniques to manipulate their Website's position in search results. This includes the use of paid "bots" to create fake or false "hits" or visits to the Website. This raises the Website's position in the search results; the Websites with the most visits or "hits" are displayed first in the search results.

**SOUTHERN COMPANY AFFIRMS VALIDITY OF DOCUMENTS**

104.   After receiving the Smoking Gun documents, CDLU researched every line item in the financial expenditure report. CDLU found that the purchase of hosting services, domain names, and advertising aligned exactly with ICANN data, Facebook advertising campaigns, and publishing dates of the three hit pieces by Alabama Political Reporter. CDLU also uncovered that the purchase of the software to track exports was on the same day that Forbes received a Bill of Lading for a Princess Bed he was exporting to Mexico for his then-three-year-old daughter.

105.   On December 13, 2022, Forbes sent an email to Thomas A. Fanning, the then-Chairman and CEO of Southern Company, writing, "In the rough and tumble of advocacy work seeking inherent goodness, there sometimes are harsh criticisms and angry responses to our work. However, in 2020 the lines were crossed. We recently received documents anonymously showing that Alabama Power paid Matrix to terrorize my family. When my then-eight-year-old daughter cried out of fear, I vowed to get to the bottom of it. The FBI, usually stoic and tight-lipped, was compassionate. Alabama Power had no right to terrorize my wife, traumatize my

child, and cause us to flee from our home for our own safety …. Regardless of the ongoing internal investigation or the 'retirement' of Mark A. Crosswhite, this is wrong. Very wrong." Forbes sent Fanning a photo of his family.

106. The next morning, December 14, 2022, Carmen Hadgraft, Fanning's Executive Assistant called Forbes from her cell phone and stated that Mr. Fanning had read Forbes' email, but could not see the attachments. He was traveling on an airplane and would have James Y. Kerr, the Chief Compliance Officer and General Counsel of Southern Company, call Forbes in the next 24 hours. Hadgraft spoke with Forbes for a few minutes and reiterated that Fanning was an honorable and inherently good person who would resolve the situation. Forbes then sent Hadgraft a PDF version of the family photograph.

107. On the evening of December 15, 2022, Kerr called Forbes and had a 15-minute conversation outlining the internal probe at Southern Company being handled by an independent law firm. Kerr asked Forbes to have CDLU's legal counsel send a formal letter to him and that with the holidays approaching, he would review the matter in January. On December 27, 2022, CDLU legal counsel sent Kerr a detailed letter about the Smoking Gun documents and defendants' misconduct. The following month, January of 2023, CDLU legal counsel sent Southern Company lawyers the actual Smoking Gun documents. At no point did Southern Company dispute the validity or authenticity of those documents.

108.    On June 28, 2023, *The Wall Street Journal* published a report about Southern Company's clandestine surveillance operations. Southern Company claimed in the article "it has no idea who ordered the operation or why." No one believed them.

109.    In September of 2023, CDLU and Forbes' legal counsel met with Southern Company's outside counsel in Atlanta. At no point whatsoever did Southern Company or its attorneys dispute the validity of the documents nor did it make any efforts to cease Alabama Power Company from funding Matrix's activities and/or bring closure to this type of behavior.

110.    On September 19, 2023, CDLU published a post on its blog about how Southern Company paid for the surveillance of U.S. Attorney Jay E. Town, and that the jaw-dropping photos the CDLU published in 2020 of Town and Alabama Power CEO Mark A. Crosswhite inappropriately having cocktails were paid for by Southern Company.

111.    On September 21, 2023, a .22 caliber projectile was shot at Forbes' bedroom window in retaliation for that published report.

112.    On October 3, 2023, Southern Company's outside counsel sent Forbes an email stating, "Southern Company has investigated the claims you have raised, finds them to be meritless, and does not believe a meeting would be productive." At no point did Southern Company dispute the validity or authenticity of the documents or refute the campaign of fear and intimidation waged against the CDLU and Forbes.

## COUNT I

## AGAINST ALL DEFENDANTS

## CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS
## (42 U.S.C. § 1985(3))

113. Plaintiff incorporates by reference all allegations contained in paragraphs 1 through 112, inclusive, of this Second Amended Complaint as though fully rewritten herein.

114. 42 U.S.C. § 1985(3) allows citizens to sue for protection of fourteenth amendment rights, and while section 1985(3) provides citizens with a cause of action against private conspiracies to violate constitutional rights, there is no requirement of state action for such lawsuits, because when the citizen seeks to use this remedy to vindicate the fourteenth amendment right to equal protection of the laws, such rights could not exist in the absence of state involvement.

115. Within the last four years, and continuing and ongoing through the filing of this Second Amended Complaint, Defendants conspired to interfere with Plaintiff's Civil Rights and discriminate against them due to their Latino heritage and support for underprivileged and marginalized Latinos, and to deprive Plaintiff's and Forbes' family the freedom of association, the right to privacy and the right to raise children. Instead of allowing Plaintiff and Forbes' family to live in peace or feel safe at home, Defendants forced Plaintiff and Forbes' family to flee the State of Alabama. Defendants conspired to trample on CDLU and Forbes' freedom of speech, to

discourage and impede CDLU and Forbes from speaking to or providing evidence to law enforcement.

116. Defendants intentionally harassed Forbes' wife and continually attempted to locate Forbes' whereabouts. In 2023, Defendants conspired to cover-up their misconduct and shot a .22 caliber projectile in Forbes's bedroom window as a threat.

117. The conspiracy was motivated by the events described in detail in this Second Complaint, including but not limited to Defendants hatred of Latinos; the ouster in 2020 of then-U.S. Attorney of the Northern District of Alabama Jay E. Town after Plaintiff filed a formal complaint with the U.S. Department of Justice; the reporting by CDLU of a recording of Southern Company General Counsel James Y. Kerr calling the racist scheme in the North Birmingham Bribery Trial a "hypothesis," and CDLU knocking out the 18th of 18 major Washington D.C. lobbying clients of Alabama Power's *sister-wife* Balch & Bingham

118. As a direct and proximate result of Defendant's actions, Forbes lost access to the comforts of his own home and his community of friends. Forbes had to install cameras and other security measures, hire private security, incur moving and lodging costs and other emotional and psychological damages in an amount to be proven at trial but in excess of $75,000.

119. Mark A. Crosswhite, Jeff Peoples and Zeke Smith, who were employees of Alabama Power and/or The Southern Company, were acting within the course and scope of their employment and plotted this conspiracy with Matrix, Perkins

Communication, Joe Perkins, Joshua Whitman and other employees of Matrix and Perkins Communication.

120. Defendants' wrongful acts described herein were and are intentional, and Defendants committed and performed those acts with the specific intent to harm, injure and damage Forbes and CDLU.

121. Alternatively, Defendants' wrongful acts and conduct described were and are part of a continuous or continuing tort, and the tortious conduct is still occurring as of the filing of this action. Defendants republished the Website on September 2, 2022. The Website continues to exist as of the filing of this action along with the entirety of its defamatory content; Defendants continue to pay A2 Hosting, LLC to host the Website on a monthly basis; Defendants continue to pay other entities, whose names are unknown to Plaintiff, to create "fake" or false "hits" on the Website to improve its visibility and ranking in search results; Defendants continue to pay other entities, whose names are unknown to the Plaintiff, to promote and advertise the defamatory contents of the website, and Matrix, LLC still pays its employees to service and maintain the website and is reimbursed by Alabama Power Company.

122. Defendants' resurrection of the Website on or about September 2, 2022, was also a new, separate and distinct "publication" and "publicization" of the defamatory material, and a new, separate, and distinction of publicization of Forbes and CDLU in a "false light." Defendants' new publication and publicization was targeted to a new, broader, and different audience than the first Website.

123. As a result of the conduct of Defendants set forth above, Plaintiff has suffered and continues to suffer harm, including severe emotional distress, anxiety, and other consequential damages for which he is entitled to an award of monetary damages and other relief.

124. The conduct of Defendants set forth above were willful, wanton and malicious. At all times pertinent to this Second Amended Complaint, Defendants acted with conscious disregard for Plaintiff's rights and feelings, acted with the knowledge of or with reckless disregard for the fact that his conduct was certain to cause injury to Plaintiff. By virtue of the foregoing, Plaintiff is entitled to recover punitive damages.

## COUNT II

## AGAINST ALL DEFENDANTS

### NEGLEGENT FAILURE TO PREVENT CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS (42 U.S.C. § 1986)

125. Plaintiff incorporates by reference all allegations contained in paragraphs 1 through 112, inclusive, of this Second Amended Complaint as though fully rewritten herein.

126. Defendants having knowledge of the conspiracy and the power to prevent or aid in preventing the commission of the wrongful acts, neglected and refused to do so.

127. On July 27, 2020. Southern Company Chairman and CEO Thomas A. Fanning received an email from Forbes detailing the attack on Forbes and his family. Forbes wrote, "We cannot believe your subordinates, vendors, and consultants would be involved in something as stupid as this." Forbes and CDLU believed at the time that Balch & Bingham, a Southern Company vendor, was responsible for the acts. Fanning did nothing.

128. On December 13, 2022, after the financial records of this conspiracy were exposed and the stunning revelation that Southern Company, not Balch & Bingham, had paid for the egregious misconduct, Forbes again sent an email to Fanning putting Defendants on notice, writing:

> In the rough and tumble of advocacy work seeking inherent goodness, there sometimes are harsh criticisms and angry responses to our work. However, in 2020 the lines were crossed. We recently received documents anonymously showing that Alabama Power paid Matrix to terrorize my family. When my then-eight-year-old daughter cried out of fear, I vowed to get to the bottom of it. The FBI, usually stoic and tight-lipped, was compassionate. Alabama Power had no right to terrorize my wife, traumatize my child, and cause us to flee from our home for our own safety."

129. The next morning, Fanning's executive assistant called Forbes, stating that Fanning was on an airplane and that James Y. Kerr would call Forbes in the next 24 hours. The Executive Assistant assured Mr. Forbes that Fanning was a man of integrity.

130. Even though Forbes spoke to Kerr and communication exchanges were conducted through September of 2023, nothing was done. Matrix, LLC and Perkins Communication was and is still getting paid millions by Southern Company, and in June of 2023, Southern Company attempted to cover-up all the scandals involving co-conspirator Matrix, LLC by telling *The Wall Street Journal* that Southern Company **did not know the purpose of or who authorized** a surveillance operation paid for by Alabama Power when in fact they did.

131. Defendants Southern Company, Alabama Power Company, Thomas A. Fanning, and James Y. Kerr allowed this conduct to continue over time with full knowledge of what was transpiring, and to still occur today. Defendants Southern Company, Alabama Power Company, James Y. Kerr and Thomas A. Fanning, knowing that their employees along with Matrix, LLC and Perkins Communication, LLC were violating the Civil Rights of Forbes, conspiring to interfere with Plaintiff's Civil Rights and discriminating against him due to his Latino heritage and support for underprivileged and marginalized Latinos, CDLU, Forbes' wife and children, and they allowed this conduct to continue over time using the shareholder funds of Southern Company.

132. Thomas A. Fanning, James Y. Kerr, Mark Crosswhite, Jeff Peoples, and Zeke Smith, who were employees of Alabama Power and/or The Southern Company, acting within the line scope of their employment, plotted this conspiracy with

Matrix, Perkins Communication, Joe Perkins, Joshua Whitman and other employees of Matrix and Perkins Communication.

133.   Mark A. Crosswhite, Jeff Peoples and Zeke Smith, who were employees of Alabama Power and/or The Southern Company, were acting within the course and scope of their employment and plotted this conspiracy with Matrix, Perkins Communication, Joe Perkins, Joshua Whitman and other employees of Matrix and Perkins Communication.

134.   Defendants' wrongful acts described herein were and are intentional, and Defendants committed and performed those acts with the specific intent to harm, injure and damage Forbes.

135.   Alternatively, Defendants' wrongful acts and conduct described were and are part of a continuous or continuing tort, and the tortious conduct is still occurring as of the filing of this action. Defendants republished the Website on September 2, 2022. The Website continues to exist as of the filing of this action along with the entirety of its defamatory content; Defendants continue to pay A2 Hosting, LLC to host the Website on a monthly basis; Defendants continue to pay other entities, whose names are unknown to Plaintiff, to create "fake" or false "hits" on the Website to improve its visibility and ranking in search results; Defendants continue to pay other entities, whose names are unknown to the Plaintiff, to promote and advertise the defamatory contents of the website, and Matrix, LLC still pays its employees to service and maintain the website and is reimbursed by Alabama Power Company.

136.   Defendants' resurrection of the Website on or about September 2, 2022, was also a new, separate and distinct "publication" and "publicization" of the defamatory material, and a new, separate, and distinction of publicization of Forbes and CDLU in a "false light." Defendants' new publication and publicization was targeted to a new, broader, and different audience than the first Website.

137.   As a result of the conduct of Defendants set forth above, Plaintiff has suffered and continues to suffer harm, including severe emotional distress, anxiety and other consequential damages for which he is entitled to an award of monetary damages and other relief.

138.   The conduct of Defendants set forth above were willful, wanton and malicious. At all times pertinent to this Second Amended Complaint, Defendants acted with conscious disregard for Plaintiff's rights and feelings, acted with the knowledge of or with reckless disregard for the fact that his conduct was certain to cause injury to Plaintiff. By virtue of the foregoing, Plaintiff is entitled to recover punitive damages.

## COUNT III

## AGAINST ALL DEFENDANTS

### CONSPIRACY AGAINST CONSTITUTIONAL RIGHTS
### (42 U.S.C. § 1985(3))

139.   Plaintiff incorporates by reference all allegations contained in paragraphs 1 through 112, inclusive, of this Second Amended Complaint as though fully rewritten

herein.

140.   Federal Law prohibits conspiracies to injure, oppress, threaten or intimidate any person in the free exercise or enjoyment of rights or privileges secured by the Constitution or laws of the United States. Defendants did in fact conspire to injure, oppress, threaten or intimidate Plaintiff in the free exercise or enjoyment of rights or privileges secured by the Constitution or laws of the United States as described in this Second Amended Complaint.

141.   Within the last four years, and continuing and ongoing through the filing of this Second Amended Complaint, Defendants conspired to interfere with Plaintiff's Civil Rights and discriminate against them due to their Latino heritage and support for underprivileged and marginalized Latinos, and to deprive Plaintiff's and Forbes' family the freedom of association, the right to privacy and the right to raise children. Instead of allowing Plaintiff's and Forbes' family to live in peace or feel safe at home, Defendants forced Plaintiff's and Forbes' family to flee the State of Alabama. Defendants conspired to trample on CDLU and Forbes' freedom of speech, to discourage and impede CDLU and Forbes from speaking to or providing evidence to law enforcement.

142.   Defendants intentionally harassed Forbes' wife and continually attempted to locate Forbes' whereabouts. In 2023, Defendants conspired to cover-up their misconduct and shot a .22 caliber projectile in Forbes' bedroom window as a threat.

143.    The conspiracy was motivated by the events described in detail in this Second Amended Complaint, including but not limited to Defendants hatred of Latinos, the ouster in 2020 of then-U.S. Attorney of the Northern District of Alabama Jay E. Town after Plaintiff filed a formal complaint with the U.S. Department of Justice; the reporting by CDLU of a recording of Southern Company General Counsel James Y. Kerr calling the racist scheme in the North Birmingham Bribery Trial a "hypothesis," and CDLU knocking out the 18th of 18 major Washington D.C. lobbying clients of Alabama Power's *sister-wife* Balch & Bingham

144.    As a direct and proximate result of Defendant's actions, Forbes lost access to the comforts of his own home and his community of friends. Forbes had to install cameras and other security measures, hire private security, incur moving and lodging costs and other emotional and psychological damages in an amount to be proven at trial but in excess of $75,000.

145.    Mark A. Crosswhite, Jeff Peoples and Zeke Smith, who were employees of Alabama Power and/or The Southern Company, were acting within the course and scope of their employment and plotted this conspiracy with Matrix, Perkins Communication, Joe Perkins, Joshua Whitman and other employees of Matrix and Perkins Communication.

146.    Defendants' wrongful acts described herein were and are intentional, and Defendants committed and performed those acts with the specific intent to harm, injure and damage Forbes.

147.   Alternatively, Defendants' wrongful acts and conduct described were and are part of a continuous or continuing tort, and the tortious conduct is still occurring as of the filing of this action. Defendants republished the Website on September 2, 2022. The Website continues to exist as of the filing of this action along with the entirety of its defamatory content; Defendants continue to pay A2 Hosting, LLC to host the Website on a monthly basis; Defendants continue to pay other entities, whose names are unknown to Plaintiff, to create "fake" or false "hits" on the Website to improve its visibility and ranking in search results; Defendants continue to pay other entities, whose names are unknown to Plaintiff, to promote and advertise the defamatory contents of the website, and Matrix, LLC still pays its employees to service and maintain the website and is reimbursed by Alabama Power Company.

148.   Defendants' resurrection of the Website on or about September 2, 2022, was also a new, separate and distinct "publication" and "publicization" of the defamatory material, and a new, separate, and distinction of publicization of Forbes and CDLU in a "false light." Defendants' new publication and publicization was targeted to a new, broader, and different audience than the first Website.

149.   As a result of the conduct of Defendants set forth above, Plaintiff has suffered and continues to suffer harm, including severe emotional distress, anxiety, and other consequential damages for which he is entitled to an award of monetary damages and other relief.

150. The conduct of Defendants set forth above were willful, wanton and malicious. At all times pertinent to this Second Amended Complaint, Defendants acted with conscious disregard for Plaintiff's rights and feelings, acted with the knowledge of or with reckless disregard for the fact that his conduct was certain to cause injury to Plaintiff. By virtue of the foregoing, Plaintiff is entitled to recover punitive damages.

## COUNT IV

## AGAINST ALL DEFENDANTS

### INVASION OF PRIVACY

151. Plaintiff incorporates by reference all allegations contained in paragraphs 1 through 112, inclusive, of this Second Amended Complaint as though fully rewritten herein.

152. As alleged above, Defendants invaded Plaintiff's privacy by, among other things, (a) republishing the Website along with the entirety of its defamatory content; (b) paying A2 Hosting, LLC to host the Website on a monthly basis; (c) paying other entities, whose names are unknown to Plaintiff, to create "fake" or false "hits" on the Website to improve its visibility and ranking in search results; (d) paying other entities, whose names are unknown to the Plaintiff, to promote and advertise the defamatory contents of the website and (e) paying its employees to service and maintain the website and is reimbursed by Alabama Power Company.

153. Defendants knew or should have known that Plaintiff had a reasonable expectation of privacy such that they would not be subject to libelous online statements contained on supposedly anonymous websites designed specifically to endanger, threaten and disabuse Plaintiff from enjoying their Constitutional rights.

154. Plaintiff did not consent to Defendants' nefarious actions.

155. The invasion of Plaintiff's privacy by Defendants was offensive and objectionable to Plaintiff and to a reasonable person of ordinary sensibilities.

156. As a direct and proximate result of said wrongful conduct by Defendants, Plaintiff has suffered damages in an amount to be proven at trial but in excess of the jurisdictional minimum of this Court.

157. As a result of the conduct of Defendants set forth above, Plaintiff has suffered and continues to suffer harm, including severe emotional distress, anxiety, and other consequential damages for which he is entitled to an award of monetary damages and other relief in an amount to be proven at trial but in excess of the jurisdictional minimum of this Court.

158. The conduct of Defendants set forth above were willful, wanton and malicious. At all times pertinent to this Second Amended Complaint, Defendants acted with conscious disregard for Plaintiff's rights and feelings, acted with the knowledge of or with reckless disregard for the fact that his conduct was certain to cause injury to Plaintiff. By virtue of the foregoing, Plaintiff is entitled to recover punitive damages.

## COUNT V

## AGAINST ALL DEFENDANTS

## DEFAMATION

159.  Plaintiff incorporates by reference all allegations contained in paragraphs 1 through 112, inclusive, of this Second Amended Complaint as though fully rewritten herein.

160.  As alleged above, Defendants defamed Plaintiff by among other things, (a) republishing the Website along with the entirety of its defamatory content; (b) paying A2 Hosting, LLC to host the Website on a monthly basis; (c) paying other entities, whose names are unknown to Plaintiff, to create "fake" or false "hits" on the Website to improve its visibility and ranking in search results; (d) paying other entities, whose names are unknown to the Plaintiff, to promote and advertise the defamatory contents of the website and (e) paying its employees to service and maintain the website and is reimbursed by Alabama Power Company.

161.  Defendants made statements to third parties about Plaintiff which were and are false.

162.  Defendants knew such false statements would likely result in material and substantial harm to Plaintiff and his business.

163.  Defendants' false statements impute to Plaintiff's conduct, characteristics, and/or conditions incompatible with the proper exercise of Plaintiff's lawful business and/or trade.

164. Plaintiff's reputation has been harmed by the aforesaid false statements, causing Plaintiff to sustain damages in an amount to be determined at trial.

165. Defendants are therefore liable for the tort of defamation against Plaintiff.

166. As a direct and proximate result of said wrongful conduct by Defendants, Plaintiff has suffered damages in an amount to be proven at trial but in excess of the jurisdictional minimum of this Court.

167. As a result of the conduct of Defendants set forth above, Plaintiff has suffered and continues to suffer harm, including severe emotional distress, anxiety and other consequential damages for which he is entitled to an award of monetary damages and other relief in an amount to be proven at trial but in excess of the jurisdictional minimum of this Court.

168. The conduct of Defendants set forth above were willful, wanton and malicious. At all times pertinent to this Second Amended Complaint, Defendants acted with conscious disregard for Plaintiff's rights and feelings, acted with the knowledge of or with reckless disregard for the fact that his conduct was certain to cause injury to Plaintiff. By virtue of the foregoing, Plaintiff is entitled to recover punitive damages.

## COUNT VI

## AGAINST ALL DEFENDANTS

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

169.  Plaintiff incorporates by reference all allegations contained in paragraphs 1 through 112, inclusive, of this Second Amended Complaint as though fully rewritten herein.

170.  As alleged above, Defendants conspired to and violated Plaintiff's civil and constitutional rights, invaded Plaintiff's privacy and defamed Plaintiff through all of its egregious and intentional targeting, harassing, defaming, intimidating, injuring and trampling upon Plaintiff as set forth in this Second Amended Complaint.

171.  As a result of the conduct of Defendants set forth above, Plaintiff has suffered and continues to suffer foreseeable severe emotional distress, anxiety, physical manifestations of emotional distress, shock, embarrassment, loss of self-esteem, disgrace, humiliation, powerlessness, sleeplessness, and loss of enjoyment of life. Plaintiff's severe emotional distress prevents them from performing daily activities and obtaining the full enjoyment of life for which they are entitled to an award of consequential damages, monetary damages and other relief.

172.  The conduct of Defendants set forth above were willful, wanton and malicious. At all times pertinent to this Second Amended Complaint, Defendants acted with conscious disregard for Plaintiff's rights and feelings, acted with the knowledge of or with reckless disregard for the fact that his conduct was certain to

cause injury to Plaintiff. By virtue of the foregoing, Plaintiff is entitled to recover punitive damages.

## JURY DEMAND

173.  Plaintiff hereby demands a trial by jury on their claims in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendants as follows:

A.    Awarding compensatory damages for all physical injuries, emotional distress, psychological harm, anxiety, humiliation, physical and emotional pain and suffering, family and social disruption, and other harm, in an amount to be determined at trial;

B.    Awarding punitive damages in an amount to be determined at trial;

C.    Awarding attorneys' fees and costs pursuant to any applicable statute or law;

D.    Awarding pre- and post-judgment interest on all such damages, fees, and/or costs;

E.    Attaching any and all of Defendants' real property and other assets located in the State of Alabama pursuant to Federal Rule of Civil Procedure 64;

F.    Issuance of an Order finding and decreeing the Defendants' Conduct to be in Violation of Civil Rights and Defendants Statements to be false and defamatory, and finding the Defendants liable for Violation of Civil Rights, Negligence to Prevent a Conspiracy of the Violation of Civil Rights, Defamation, Invasion of Privacy,

Assault, Conspiracy, the Intentional Infliction of Emotional Distress, and Negligent Supervision.

G.    Issuance of a permanent injunction prohibiting Defendants from creating, publishing, or disseminating the same or similar defamatory statements about the Plaintiff and/or contacting and/or harassing Plaintiff or his family or the employees of CDLU in any manner.

H.    Issuance of a permanent injunction requiring Defendants to take all necessary actions to remove the Statements, and any same or similar false and defamatory statements about Plaintiff which Defendants created, published or disseminated on the Internet from all websites or otherwise, including but not limited to requesting removal of any such statements from the Internet search engines Google, Yahoo and Bing.

I.    A trial by jury on the request for damages.

J.    Award Plaintiff costs and attorney fees per 42 U.S.C. § 1988 (b).

K.    Grant Plaintiff access to the court's electronic filing system for the limited purpose of prosecuting this case.

L.    Awarding such other and further relief as this Court may deem just and proper.

Respectfully submitted on the 24th day of September, 2025:



K.B. Forbes, Pro Se for Plaintiff K.B. FORBES
P.O. Box 381984
Birmingham, Alabama 35238-1984
(323) 264-5889    kb@cdlu.org

# EXHIBIT

# "A"

| STATE OF ALABAMA | Revised 3/5/08 | Case No. |
|---|---|---|
| Unified Judicial System | | 01-CV-2019-901210 |

☐District Court  ☒Circuit Court

| Style of case: | CIVIL MOTION COVER SHEET |
|---|---|
| David Roberson, et al.<br>v.<br>Drummond Company, Inc. | Name of Filing Party: Non-Party, Alabama Power Company |

| Name, Address, and Telephone No. of Attorney or Party (if Not Represented). | ☐ Oral Arguments Requested |
|---|---|
| Augusta S. Dowd<br>White Arnold & Dowd P.C.<br>2025 3rd Avenue N.<br>Suite 500<br>Birmingham, AL  35203<br>205-323-1888<br>Attorney Bar No.:        DOW003 | |

## TYPE OF MOTION

FILED IN OFFICE
CIVIL DIVISION

DEC 23 2020

JACQUELINE ANDERSON SMITH
CLERK

**Motions Requiring Fee**

☐Default Judgment ($50.00)

☐Joinder in Other Party's Dispositive Motion (i.e. Summary Judgment, Judgment on the Pleadings, or other Dispositive Motion not pursuant to Rule 12(b)) ($50.00)

☐Judgment on the Pleadings ($50.00)

☐Motion to Dismiss, or in the Alternative Summary Judgment($50.00)

☐Renewed Dispositive Motion(Summary Judgment, Judgment on the Pleadings, or other Dispositive Motion not pursuant to Rule 12(b)) ($50.00)

☐Summary Judgment pursuant to Rule 56($50.00)

☐Motion to Intervene ($297.00)

☐Other _____

pursuant to Rule _____ ($50.00)

*Motion fees are enumerated in §12-19-71(a). Fees pursuant to Local Act are not included. Please contact the Clerk of the Court regarding applicable local fees.

☐Local Court Costs $ _____

Hearing Date:

**Motions Not Requiring Fee**

☐Add Party
☐Amend
☐Change of Venue/Transfer
☐Compel
☐Consolidation
☐Continue
☐Deposition
☐Designate a Mediator
☐Judgment as a Matter of Law (during Trial)
☐Disburse Funds
☐Extension of Time
☐In Limine
☐Joinder
☐More Definite Statement
☐Motion to Dismiss pursuant to Rule 12(b)
☐New Trial
☐Objection of Exemptions Claimed
☐Pendente Lite
☐Plaintiff's Motion to Dismiss
☐Preliminary Injunction
☒Protective Order
☐Quash
☐Release from Stay of Execution
☐Sanctions
☐Sever
☐Special Practice in Alabama
☐Stay
☐Strike
☐Supplement to Pending Motion
☐Vacate or Modify
☐Withdraw
☐Other _____
pursuant to Rule _____ (Subject to Filing Fee)

| Check here if you have filed or are filing contemporaneously with this motion an Affidavit of Substantial Hardship or if you are filing on behalf of an agency or department of the State, county, or municipal government. (Pursuant to §6-5-1 Code of Alabama (1975), governmental entities are exempt from prepayment of filing fees)  ☐ | Date:<br><br>December 23, 2020 | Signature of Attorney or Party:<br><br>augusta S. Dowd |
|---|---|---|

*This Cover Sheet must be completed and submitted to the Clerk of Court upon the filing of any motion. Each motion should contain a separate Cover Sheet.
**Motions titled 'Motion to Dismiss' that are not pursuant to Rule 12(b) and are in fact Motions for Summary Judgments are subject to filing fee.

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
BIRMINGHAM DIVISION

DAVID ROBERSON and ANNA       )
ROBERSON,                     )
                              )
        Plaintiffs,           )
                              )
v.                            )        CASE NO.: 01-CV-2019-901210
                              )
DRUMMOND COMPANY, INC.        )
                              )
        Defendant.            )
                              )

FILED IN OFFICE
CIRCUIT CIVIL DIVISION
DEC 23 2020
JACQUELINE ANDERSON SMITH
CLERK

## NON-PARTY ALABAMA POWER COMPANY'S
## MOTION FOR ENTRY OF PROTECTIVE ORDER

In conformity with this Court's December 17, 2020 Order Providing Court's Reasons for Not Granting Relief Sought by Petitioner-Defendant Drummond Company, Inc. in its Emergency Motion to Stay Discovery (Doc. 277, the "Order"), non-party Alabama Power Company ("APC" or the "Company") respectfully moves this Court to enter a Protective Order pursuant to Ala. R. Civ. P. 26(c) that the discovery sought from it in this matter by Plaintiffs David Roberson and Anna Roberson not be allowed. As set out more fully below, and consistent with the Court's guidance, APC appreciates the opportunity to properly request relief preventing the discovery sought via the subpoena based on, among other defined reasons, privilege and relevance.[1]

This Court stated in the Order that it has "no intention to allow the re-litigation of the legality of 'the Plan.'" (Doc. 277 at p. 3). This Court further stated that the issues in the

---

[1] The Company acknowledges that in the Order, this Court specifically contemplated the filing of a motion to quash or modify the aforementioned subpoena. Because the subpoena has yet to issue, however, the Company is seeking a protective order pursuant to Ala. R. Civ. P. 26(c) to preclude the issuance of the subpoena entirely.

allegations against Drummond Company, Inc. ("Drummond") were whether "Drummond

and its 'representatives' knew that 'the Plan' was illegal; asked the Plaintiff to perform

within 'the Plan,' knowing that it was illegal; and withheld the knowledge of illegality from

the Plaintiff." (*Id.*). As this Court observed, the claims in this case focus on Drummond, its

representatives, and their knowledge; in contrast, the discovery directed to APC seeks

discovery regarding the purported knowledge of a non-party that has no connection to these

issues. The Robersons should not be permitted to burden a non-party by seeking discovery

as to the legality of "the Plan" or to other topics that have no relevance to the remaining

claims in this case and are not reasonably calculated to lead to the discovery of admissible

evidence, particularly when the non-party has made no effort to intervene in this litigation,

propound discovery, or engage in any way in this dispute.

APC has no information relevant to the remaining claims in this case as those claims

were succinctly described by this Court in the Order.[2] APC's name does not appear in the

operative Third Amended Complaint. APC is not affiliated with Drummond or a

representative of Drummond; as this Court recognized in the Order, the remaining claims

in this case are specific to Drummond and its representatives. Thus, the Protective Order

sought herein is necessary to protect APC from annoyance, oppression, vexatious and

abusive use of the discovery process, and undue burden and expense. *See* Ala. R. Civ. P.

26(c). In support of its Motion and for good cause shown, APC states as follows:

---

[2] *See* Section II, *infra.*

2

## Introduction

On December 3, 2020, the Robersons filed a "Notice of Intent to Serve Subpoena on Non-Party" (Doc. 253, "APC Notice"), noticing their intent to apply for issuance of a subpoena for documents to the Company ("Proposed Subpoena"). The Proposed Subpoena attached to the APC Notice would propound eighteen (18) "Requests for Production" ("Requests") to the Company, though many of the so-called Requests do not seek the production of business documents or things and would be more appropriately described as interrogatories.[3]

Although APC lacks relevant information that could be probative as to the claims pending before this Court, an examination of certain blogs, online media sources, and social media platforms reveals what appears to be the true motivation behind this Notice and Proposed Subpoena: issuing abusive, harassing, vexatious, and irrelevant discovery in a bad faith attempt to pressure the Company into supporting the Robersons' efforts to resolve this case in their favor. The personal involvement and interaction between Burt Newsome, the Robersons' counsel of record in this litigation, and these blogs, online media sources, and social media platforms is glaringly apparent given the repeated blog and online media postings of filings and orders from this case, all of which contain the AlaFile-generated Notice of Electronic Filing cover sheets reflecting that the pleadings posted on

---

[3] On December 3, 2020, the Robersons also filed a "Notice of Intent to Serve Subpoena on Non-Party" (Doc. 251, "Crosswhite Notice," together with the APC Notice, the "Notices"), noticing their intent to apply for issuance of a subpoena to Mark A Crosswhite, the Company's chairman, president, and chief executive officer, for his attendance at a videotaped deposition on January 20, 2021 (together with the Proposed Subpoena attached to the APC Notice, the "Proposed Subpoenas"). Mr. Crosswhite is filing his own Motion for Protective Order contemporaneously herewith; however, because there were separate Notices delivered to APC and Mr. Crosswhite, and there are some issues and concerns that apply to both Notices, there is necessarily overlap between the two Motions.

the blogs are Mr. Newsome's service copies of those documents.[4] At least one blog appears to have received and published advance information regarding the APC Notice, case strategy that could only have originated with Mr. Newsome or the Robersons themselves. In a **November 5, 2020** blog post regarding Plaintiffs' First Interrogatories and Request for Production to Drummond, the author stated "[w]e understand that more discovery requests and video depositions are in the works," specifically mentioning Mr. Crosswhite by name as one of the expected recipients: "**Alabama Power CEO Mark A. Crosswhite and other insiders at [the Company] will be subpoenaed for video depositions** and all their correspondence, memos and documents, including check copies and payments made to the money laundering entity, Alliance for Jobs and the Economy (AJE)."[5] Mr. Newsome filed the Notices on **December 3, 2020**, yet the author of that particular blog post knew about the specific discovery that the Robersons are now seeking through the Proposed Subpoenas nearly a month in advance of the filing of the Notices into court. Advance knowledge concerning the specific information sought in the Proposed Subpoena to the Company could only have originated with Mr. Newsome or the Robersons. Using blogs, online media sources, and social media platforms in an effort to advance positions that are more appropriately addressed in the courtroom—particularly when those positions have

---

[4] *See, e.g.,*
https://legalschnauzer.blogspot.com/2020/12/alabama-power-ceo-mark-crosswhite-is.html (last accessed December 22, 2020).

[5] https://banbalch.com/2020/11/05/rebirth/ (emphasis added) (last accessed December 22, 2020).

not been successful in court—appears to have been a common theme for Mr. Newsome[6] and the Robersons and further bolsters the need for this Court to exercise its broad discretion and issue the requested Protective Order.

In an effort to resolve the subject of this Motion with Mr. Newsome before its filing as required by Ala. R. Civ. P. 26(c), undersigned counsel provided Mr. Newsome with written objections to the APC Notice and an opportunity to withdraw it through a written communication that was emailed to Mr. Newsome on December 9, 2020. *See* Notice of Service (Doc. 268). Among other things, undersigned counsel advised Mr. Newsome that if he pursued issuance of the subpoena, the Company would seek fees and costs associated with responding to the APC Notice, the Proposed Subpoena, and any related motion practice. Mr. Newsome contacted the undersigned counsel on December 21, 2020, and after some discussion, stated he would not withdraw the Notice and Proposed Subpoena and that he intended to soon file a motion to compel. Accordingly, the filing of this Motion is timely, necessary, and appropriate.

## **Argument**

Rule 26(c) of the Alabama Rules of Civil Procedure recognizes that the right of discovery is not unlimited and gives the court broad discretion to control the use of the process and to prevent its abuse by any party. *Plitt v. Griggs*, 585 So. 2d 1317, 1321

---

[6] The Alabama Supreme Court recently affirmed a trial court's findings that claims brought by Mr. Newsome (as a pro se plaintiff individually and on behalf of his law firm) in a separate lawsuit were "without substantial justification because they were frivolous, groundless in fact, vexatious, or were interposed for an improper purpose of harassment, delay, or abusing discovery" *See Burt W. Newsome and Newsome Law, LLC v. Balch & Bingham, LLP, et al.*, Nos. 1180302 and 1180252, Slip Op. at 42, 47, 50 (Ala. Dec. 18, 2020). Mr. Newsome appears to be pursuing a similar litigation strategy with the Notices he filed in this case. A copy of the Supreme Court's order is attached as Exhibit A.

(Ala. 1991). Pursuant to Rule 26(c), "[u]pon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending . . . may make any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Ala. R. Civ. P. 26(c). As shown below, good cause exists for the entry of the Protective Order requested herein because the discovery sought through the Proposed Subpoena: (1) includes interrogatories to a non-party, which is not allowed under Rule 45 of the Alabama Rules of Civil Procedure; (2) is abusive, vexatious, issued in bad faith and without substantial justification, and is not relevant to the subject matter involved in the pending action; (3) is not proportional to the needs of the case; (4) is overly burdensome and expensive, particularly for a non-party; (5) calls for confidential and privileged information; and/or (6) seeks information either already in the Robersons' possession or that the Robersons can obtain from a party to the litigation.

## I.     *The Requests Call for Information Outside the Scope of Rule 45 of the Alabama Rules of Civil Procedure*

Rule 45 of the Alabama Rules of Civil Procedure prescribes the procedures and limitations placed on a subpoena to a non-party.[7] Under Rule 45(a)(1)(C), a subpoena can only request three types of discovery from a non-party: (1) to "attend and give testimony;" (2) to "produce and permit inspection, copying, testing, or sampling of designated books,

---

[7] By its terms, the APC Notice was purportedly provided pursuant to Rule 34(b)(2) of the Alabama Rules of Civil Procedure, but "Rule 34(b)(2)" does not exist in the Alabama Rules of Civil Procedure, and Rule 34 expressly relates to seeking discovery from *parties* only. Indeed, Rule 34(c) specifically provides that discovery from non-parties like the Company here may be compelled as provided in Rule 45: "*Persons not parties.* A person not a party to the action may be compelled to produce documents, electronically stored information, and things or to submit to an inspection as provided in Rule 45."

documents, electronically stored information, or tangible things in the possession, custody or control of that person;" or (3) to "permit inspection of premises, at a time and place therein specified . . . ." Ala. R. Civ. P. 45(a)(1)(C). Interrogatories to non-parties are not contemplated under Rule 45.

Despite the limitations on non-party discovery as set out in Rule 45, several of the Requests are, in fact, interrogatories. Specifically, Request Nos. 1, 3, 4, and 6 are interrogatories, not requests for the production of documents or any other type of discovery allowed under Rule 45. Those Requests demand that the Company "state" certain dates and information, "describe in detail" certain events, or "summarize the substance" of several communications. To the extent any of the Requests seek information outside the scope of Rule 45(a)(1)(C), the Company should not be required to respond.

**II.** **The Discovery Sought Through the Proposed Subpoena is Abusive, Vexatious, Issued in Bad Faith and Without Substantial Justification, and Not Relevant to the Subject Matter Involved in the Pending Action**

Rule 26(b) of the Alabama Rules of Civil Procedure requires that discovery sought must be "relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party." Ala. R. Civ. P. 26(b)(1)(i). The abusive and vexatious discovery sought in the Proposed Subpoena fails to meet that requirement, was issued without substantial justification, and is not reasonably calculated to lead to the discovery of admissible evidence. The Company is not a party to this action. The Company did not choose to file this lawsuit, intervene in these proceedings, or insert itself into the discovery process. As

reflected by publicly-available pleadings, the remaining claims by the Robersons are against Drummond—not the Company—and are narrowly tailored:

- misrepresentation and concealment by Drummond, regarding payment of Balch and Bingham invoices (Counts II and III);

- conversion by Drummond, relating to certain records (Count IV);

- concealment by Drummond, relating to certain payments being made on behalf of Drummond (Count XI); and,

- promissory fraud against Drummond (Count XII).

As this Court stated in the Order, the issues in the first three allegations are not whether "the Plan" underlying Mr. Roberson's federal conviction was legal, but whether Drummond and its representatives (not the Company): (1) knew "the Plan" was illegal; (2) asked Mr. Roberson to perform within "the Plan," knowing it was illegal; and (3) withheld the knowledge of illegality from Mr. Roberson. (Doc. 277). And as this Court stated, the promissory fraud claim "deals simply with whether a representation was made by Defendant Drummond to the Plaintiffs, known by the Defendant to be false when made, and relied upon by the Plaintiffs to their detriment," again, a claim that has nothing to do with the Company. (*Id.*).

In the Order, this Court outlined the scope of information relevant to the remaining claims in this case. Those claims focus on Mr. Roberson and his employment relationship and interactions with Drummond and its representatives, not the Company. The Company had no involvement in these matters. In fact, there is no mention of the Company *anywhere* in the operative Third Amended Complaint, much less in the claims that remain pending.

8

Those claims involve conduct and knowledge of Drummond and Drummond's representatives, and the Company does not fall into either of those categories.

A review of the Requests shows the Robersons are intent on re-litigating the legality of "the Plan" and exploring other aspects of "the Plan" that are irrelevant to the claims and defenses in this litigation. Indeed, several of the Requests expressly seek information related to the "legality of the scheme" referred to by this Court in the Order as "the Plan." *See, e.g.*, Request Nos. 1(a), 1(b), and 7. This Court recognized "[t]he 'legality' of 'the Plan' has been determined in federal court," yet the Requests seek to do exactly what this Court has stated it has no intention of allowing: "the re-litigation of the legality of 'the Plan.'"

Further, all of the Requests appear crafted in such a way as to provide additional fodder for bloggers who are publicly attacking and maligning the Company to achieve personal goals for the Robersons and their counsel, none more blatant than four Requests involving former U.S. Attorney for the Northern District of Alabama, Jay Town. Request Nos. 1(d), 5, 6, and 13 baselessly request information about an unsupported and false conspiracy theory espoused in a number of blog posts that the Company, with the supposed assistance of the U.S. Attorney's Office, engaged in nefarious conduct leading to Mr. Roberson's conviction; the conspiracy theory also falsely accused counsel for the Company of manipulating the Department of Justice, the Court, and Mr. Roberson.[8] Setting aside the

---

[8] *See, e.g.*, https://banbalch.com/2019/12/19/untouchable/; https://banbalch.com/2020/01/14/vogtle/; https://banbalch.com/2020/01/27/jaw-dropping/; https://banbalch.com/2020/01/29/secret-deal-alabama-power-was-unmentionable-during-corruption-trial/; https://banbalch.com/2020/02/02/fallout-crosswhite-out/; https://banbalch.com/2020/03/11/the-next-david-roberson/; https://banbalch.com/2020/06/08/town-under-scrutiny/;

defamatory and offensive falsehoods[9] embodied in these theories, they simply do not relate

to any of the claims in this lawsuit.

Four of the Requests (Nos. 12, 15, 16, and 17) reference AJE, which directly relates

to the legality of "the Plan" and/or seek information regarding "the Plan" that this Court

has already ordered is not going to be re-litigated in this case and is simply irrelevant to

the remaining claims in this case.[10] AJE is only mentioned in paragraph 51 of Plaintiffs'

Third Amended Complaint related to Plaintiffs' claim for conversion by Drummond. As

part of Mr. Roberson's claim against Drummond that Drummond took his personal

property, he included in his list of property taken by Drummond a file containing records

related to AJE. Mr. Roberson's claim for conversion against Drummond is totally unrelated

to the Company. In contrast to the Robersons' silence as to AJE in their complaint, AJE

has been mentioned frequently in blogs tied to the Robersons and their counsel, which their

---

https://banbalch.com/2020/06/09/subornation-of-perjury/;    https://banbalch.com/2020/07/10/cdlu-sparked-probe-
forces-disgraced-u-s-attorney-jay-e-town-to-resign/; https://banbalch.com/2020/07/13/towns-downfall-part-1-;
https://banbalch.com/2020/07/14/towns-downfall-part-2/;    https://banbalch.com/2020/07/15/towns-downfall-part-3-
the-newsome-conspiracy-case/; https://banbalch.com/2020/07/16/towns-downfall-part-4-shielding-alabama-power/;
https://banbalch.com/2020/08/17/balch-stooge-jay-e-town-flees-as-probe-continues/;
https://legalschnauzer.blogspot.com/2020/08/mounting-evidence-suggests-former-us.html;
https://banbalch.com/2020/11/05/rebirth/; https://banbalch.com/2020/11/17/biden/;
https://banbalch.com/2020/11/22/rocked-to-the-core/;        https://banbalch.com/2020/11/23/rebirth-may-spur-new-
indictments/ (last accessed December 22, 2020).

[9] The conspiracy theory relates to an alleged agreement that the federal government in Mr. Roberson's federal criminal
trial would not mention Mr. Crosswhite or the Company. *See, e.g.,* https://banbalch.com/2020/12/21/eve/ (last
accessed December 22, 2020). That theory has no validity given that there were repeated specific references to the
Company during the course of the trial.

[10] The federal government in Mr. Roberson's criminal case determined that, based on the evidence presented, including
the statement of Mr. Roberson to the FBI which was admitted into evidence, and testimony of other contributors to
AJE, the Company was a victim of those who ran AJE.

counsel has personally publicized and disseminated by reposting on his own social media account.[11]

As an additional example of the many ways in which the Proposed Subpoena seeks information irrelevant to the remaining claims in this lawsuit, Request No. 18 seeks records relating to lobbying activity undertaken by Jeffrey Wood on behalf of the Company. Neither Mr. Wood nor the Company is mentioned in the operative Third Amended Complaint. As is the case with AJE, however, Mr. Wood's lobbying activities are discussed in several blog posts attacking the Company and calling for Mr. Wood's termination.[12]

The problems discussed above represent only some of the more glaring ways the Requests seek irrelevant information. To be clear, each and every Request to the Company reflects an improper effort to re-litigate matters that were thoroughly investigated by federal law enforcement authorities and led to Mr. Roberson's criminal indictment and conviction and are not matters before this Court, as this Court noted in its Order. Considered individually and as a whole, the Requests do not seek information relevant to the subject matter involved in the pending action and are not reasonably calculated to lead to the discovery of admissible evidence. Rather, the Requests are vexatious, abusive, and burdensome, and are designed to harass and annoy APC. In conformity with Ala. R. Civ. P. 26, this Court should grant the requested Protective Order and rule that the Proposed Subpoena not issue.

---

[11] *See, e.g.*, blog posts cited in footnote 8, *supra*.

[12] *See* https://banbalch.com/2018/11/09/doj-mess/; https://banbalch.com/2019/04/05/ag-barr-shows-balch-crony-the-door-southern-company-to-the-rescue/; https://banbalch.com/2020/11/30/jolted/ (last accessed December 22, 2020).

11

### III.   The Discovery Sought is Not Proportional to the Needs of the Case

Even if the discovery proposed by the Robersons sought information relevant to their claims—which it does not—it would still violate the proportionality limits on discovery requests in Ala. R. Civ. P. 26(b)(1). Rule 26(b)(1)(ii) states that, in addition to being relevant, information sought through discovery must also be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Specifically, and as discussed more fully below, the information sought in the Requests is not proportional to the needs of the case, considering:

- the importance of the issues at stake: these issues relate to knowledge and actions of Drummond and its representatives, not the Company;[13]

- the amount in controversy: APC has no information that will affect this factor;

- the parties' relative access to relevant information: the Robersons have access to the discovery produced by the federal government in the criminal case as well as discovery produced by Drummond in this case;[14]

- the importance of the discovery in resolving the issues: the discovery requested of the Company has no relevance to the issues in this case;[15] and,

- whether the burden or expense of the proposed discovery outweighs its likely benefit: responding to the Requests will be extremely burdensome and

---

[13] *See* Section II, *supra.*

[14] *See* Section VI, *infra.*

[15] *See* Section II, *supra.*

expensive and will not yield information concerning the interactions between Drummond and its former employee.[16]

Additionally, the Robersons have not and cannot show a substantial need for the information sought from the Company that cannot be otherwise met without undue hardship. One of the Requests seeks information about communications "with, or in the presence of, the Plaintiff, David Roberson . . . ." *See* Request 1(a). Setting aside that this Request is an improper interrogatory to a non-party outside the scope of Rule 45 of the Alabama Rules of Civil Procedure (*see* Section I, *supra*), if Mr. Roberson communicated with someone at the Company, then there is no need for him to ask the Company to produce such information when he has access to that information himself or he could get that information from Drummond, his former employer and a party to this litigation.

Because the Proposed Subpoena violates the proportionality limits of Ala. R. Civ. P. 26(b)(1), this Court should exercise its discretion, enter the requested Protective Order, and order that the requested discovery not be allowed.

## IV.    *The Discovery Sought is Overly Burdensome, Particularly for a Non-Party*

The application of the Requests' overly broad definitions creates grossly unreasonable and unnecessary financial burdens on the Company should this Court not grant its Motion for Protective Order. For example, when the Requests use the term "you" or "your," the Requests define that term to mean the Company "and variants of the entity, including its present and former members, officers, agents, employees, and all other persons acting or purporting to act on its behalf, including all present or former members,

---

[16] *See* Section IV, *infra*.

officers, agents, employees, and all other persons exercising or purporting to exercise discretion, make policy, and/or make decisions." APC is unsure how to interpret "variants of the entity." APC is a wholly-owned subsidiary of The Southern Company, a Delaware holding company. In addition to APC, The Southern Company also owns Georgia Power Company, Mississippi Power Company, Southern Power Company, and Southern Company Gas. The Southern Company system employs approximately 28,000 employees,[17] and APC alone employs over 6,300 employees. Thus, to appropriately conduct the due diligence necessary to comply with these irrelevant and overly-broad Requests, the Company, a non-party, would be required to review emails and electronic documents of at least 6,300 custodians, and thousands more if the Robersons contend that Southern Company is a "variant" of Alabama Power. Additionally, the Requests include no limitation on the time or scope of documents and information requested. The burden and expense of conducting such a review of the Company's records would be astronomical.

Another example of an overly-broad, vexatious, and unduly burdensome definition in the Requests is Plaintiffs' definition of "scheme". The Proposed Subpoena defines "scheme" as the "scheme described in paragraphs 7 through 30 of Plaintiffs' Third Amended Complaint." *See* Definition 6. Almost all of the Requests refer to this supposed "scheme." Nowhere in those paragraphs (or elsewhere in the operative Third Amended Complaint) is there any assertion that the Company took any action or concealed anything from the Robersons in an effort to deceive the Robersons. Setting aside that the term

---

[17] *See* http://d18rn0p25nwr6d.cloudfront.net/CIK-0000092122/3c46261f-5a4f-454f-8b9f-20c1a5a8dd95.pdf (last accessed December 22, 2020).

"scheme" is in and of itself argumentative, offensive, and objectionable and falsely suggests that the Company is a participant in criminal activity, responding to Requests referencing the overly-broad "scheme" would require using very broad search terms that would have to be applied to virtually all of the custodians referenced above. Then, all documents identified as containing each such search term would have to be reviewed to determine if the document is responsive and, if responsive, whether it is privileged. The expense involved in properly responding to these Requests likely would exceed tens of millions of dollars, an amount that would be absurd even for a party to the litigation, but it is even moreso considering the Company's status as a non-party in this case and particularly considering the Company's classification as a victim by the federal government in Mr. Roberson's federal criminal case.[18]

Undersigned counsel's concern regarding the expense that APC would be forced to incur should this Protective Order not be granted is based on counsel's previous experience with similar "shotgun" discovery requests directed to large corporations. Because such overly broad discovery requests would require a similarly broad search of the Company's records that consequently would return a high volume of irrelevant results, the costs of placing those records on document review platforms and culling down to actual responsive documents, as well as identifying privileged records, can easily run into the millions. The Company should not be required to bear such costs for requests that are unrelated to the actual claims in this case, again particularly in light of the Company's status as a non-party

---

[18] *See* footnote 10, *supra.*

to this case and its classification as a victim by the federal government in Mr. Roberson's federal criminal case.

Additionally, the Requests seek all records related to the North Birmingham Superfund Site, Balch & Bingham, Oliver Robinson, the Oliver Robinson Foundation, Trey Glenn, and Scott Phillips. *See* Request Nos. 12, 17, and 18. Prior to his retirement in November 2016, Oliver Robinson had been a member of the Alabama House of Representatives since 1998. Mike Cason, *Rep. Oliver Robinson Retiring From Alabama House*, Al.com, Nov. 30, 2016.[19] From 2017, Trey Glenn was EPA's Region 4 Administrator until he resigned November 18, 2018. Prior to his appointment, he was head of the Alabama Department of Environmental Management.[20] Scott Phillips also served as a member of the Alabama Environmental Management Commission. *Id.* The Company has a significant and legitimate interest in both state and federal energy and environmental regulations, compliance, and legislation. Consequently, in the normal course of business, the Company would have communications with any number of Alabama legislators including Oliver Robinson, as well as public officials, including Trey Glenn and Scott Phillips.

Perhaps the best example of how overbroad, vexatious, burdensome, and abusive the Requests are is Request No. 5, which asks the Company to produce "all documents and electronically stored information (including emails) of ALABAMA POWER

---

[19] Located at https://www.al.com/news/birmingham/2016/11/rep_oliver_robinson_retiring_f.html (last accessed December 22, 2020).

[20] Located at https://www.al.com/news/2018/11/epa-regional-admin-trey-glenn-resigns-after-indictment.html (last accessed December 22, 2020).

COMPANY's communications with U.S. Attorney's Office." This Request includes no limitation on the time or scope of documents requested, no limitation on the individuals at the Company from whom it is seeking the referenced communications, and no indication which U.S. Attorney's Office it is referencing. In other words, in addition to requesting information that is wholly and completely irrelevant to the claims in this case, Request No. 5 asks the Company to produce all documents evidencing communications anyone at the Company has ever had with any U.S. Attorney's Office across the country at any time. To say that such a Request is overly broad, vexatious, abusive, and unduly burdensome would be a severe understatement, yet this Request is representative of the Requests that have been propounded to the Company.

As previously stated, the Company has been characterized by the federal government as a victim of those individuals who ran AJE;[21] since Mr. Roberson was president of AJE, the federal government therefore determined that the Company was a victim of Mr. Roberson's conduct, among others. The Requests reflect that Mr. Roberson seeks to further victimize the Company by subjecting it to baseless, irrelevant, burdensome, abusive, vexatious, and excessively expensive production obligations. One of the fundamental gatekeeping functions of a court under Ala. R. Civ. P. 26(c) is to guard against such abusive discovery tactics, especially when directed to a third party. The Company's Motion asks this Court to utilize its broad discretion and exercise its gatekeeping function to protect the Company from such abusive attacks.

---

[21] *See* footnote 10, *supra.*

17

### V.   The Requests Call for Confidential, Privileged, and Protected Information

At least one of the Requests expressly calls for confidential and/or privileged information. Specifically, Request No. 7 demands that the Company produce "all legal memoranda and/or electronically stored information relating to the issue of the legality of the scheme and/or Balch & Bingham's plan to defeat the EPA." To the extent that any such information even exists, this Request expressly seeks information that is protected by the attorney-client privilege or constitutes protected legal work product, and is not otherwise discoverable under the Alabama Rules of Civil Procedure. Setting aside that the Request baselessly suggests the Company is involved in illegal or inappropriate conduct, the Company does not and has not waived any privilege or protection to which it would otherwise be entitled, and without such a waiver, there is no basis for seeking this information. This Request is obviously legally inappropriate, improperly invasive, vexatious, and baseless, further reflecting that the motivation behind the Requests is irrelevant to this lawsuit but rather is designed to harass, annoy, and overly burden the Company. Accordingly, the Company objects to the production of protected materials and moves for the entry of the requested Protective Order.

### VI.   Should this Court Give any Consideration to Issuing the Proposed Subpoena, APC Requests the Robersons First Make the Proper Showing that the Information Sought through the Proposed Subpoena is Relevant and Cannot be Obtained from a Party to this Lawsuit or via Another Form of Discovery

APC lacks the type of relevant information about the claims and defenses in this litigation that would necessitate this Court ordering APC, especially as a non-party, to respond to the Proposed Subpoena over objection. APC has met its burden under Ala. R.

18

Civ. P. 26(c) to show good cause why this Court should exercise its broad discretion and issue the requested Protective Order. The APC Notice is yet another example of the abusive, vexatious, and bad faith behavior that Mr. Newsome, the Robersons, and the blogs and online media sources that support them have engaged in when they have found themselves unsuccessful in courts of law. Requiring the Company to respond to the Proposed Subpoena would subject this non-party to the very annoyance, oppression, harassment, vexation, and undue burden and expense that Rule 26(c) is expressly designed to prevent. Accordingly, APC moves this Court to enter the requested Protective Order preventing the Proposed Subpoena from issuing.

Should this Court give any consideration to allowing the Proposed Subpoena to issue, APC requests that prior to making that determination, this Court require the Robersons to make a satisfactory showing to this Court that the information sought through the Proposed Subpoena is relevant to their claims in this litigation or the defenses asserted by Drummond or is reasonably calculated to lead to the discovery of admissible evidence. APC further requests that the Robersons be required to make a satisfactory showing that the information sought through the Proposed Subpoena cannot first be obtained through discovery from a party to this lawsuit. In a recent filing in the Alabama Supreme Court, Drummond stated that through the production in the criminal case, Mr. Roberson obtained a wealth of information, testimony, and documents;[22] Mr. Roberson should first be required to examine and analyze the information already in his possession or available to him

---

[22] *See* Petitioner's Emergency Motion to Stay, *Roberson v. Drummond Co., Inc.*, Docket No. 1200169, at ¶ 12. (Ala. Dec. 16, 2020).

through discovery against Drummond and report back to this Court on his review before he is permitted to subject a non-party to the burden and expense of the discovery he seeks.

Should this Court decide to require the Robersons to make the necessary satisfactory showing to justify issuance of the Proposed Subpoena, APC respectfully requests the opportunity to be heard in response to whatever showing the Robersons attempt to make to this Court. If this Court ultimately determines the Robersons have made a satisfactory showing, then APC requests that this Court enter a Protective Order ordering that the discovery may be had only by a less invasive and less burdensome method of discovery, Ala. R. Civ. P. 26(c)(3), and that certain matters not be inquired into or that the scope of the discovery be limited to certain matters, Ala. R. Civ. P. 26(c)(4). Finally, APC requests that such discovery, if ordered by the Court, be limited to the actions of Drummond and its representatives, as those are the only claims in this case.

### VII.    *APC Seeks Recovery of Fees and Expenses Incurred To Object and Otherwise Defend Against This Improper Discovery*

APC further seeks the recovery of the fees and expenses it has been forced to incur in order to object to the APC Notice, prepare and file this Motion, and otherwise defend against this improper discovery, as the requested discovery is not relevant to the claims in the case, was issued in bad faith, without substantial justification, with an abusive purpose, is vexatious, and is designed to annoy, harass, oppress, and unduly burden APC in violation of Ala. R. Civ. P. 26(c).[23]

---

[23] APC notes the Alabama Supreme Court's recent affirmance of the trial court's award of attorney fees and costs against counsel for the Robersons in *Newsome v. Balch,* affirming the trial court's finding that Mr. Newsome and his law firm "had subjected the defendants to almost three and a half years of litigation even though the asserted claims

Mr. Newsome refused to withdraw the APC Notice as requested by undersigned counsel when he was presented with good cause and fair opportunity to do so and after being put on notice that APC would seek recovery of fees and expenses should counsel and the Robersons pursue the Proposed Subpoena. Accordingly, APC seeks to recover the fees and expenses that APC has incurred as a consequence of Mr. Newsome's issuance of the Notice.

### Conclusion

WHEREFORE, PREMISES CONSIDERED, Alabama Power Company, a non-party to these proceedings, asks this Court to enter a Protective Order preventing APC from being required to respond to the Requests, as APC has met its burden under Ala. R. Civ. P. 26(c) to show good cause why the requested Protective Order is necessary to prevent annoyance, oppression, or undue burden or expense.

Should this Court give any consideration to allowing the Proposed Subpoena to issue, APC requests that before making that determination, this Court order the Robersons first be required to make a satisfactory showing that the information sought through the Proposed Subpoena is relevant to their claims in this litigation or the defenses asserted by Drummond and reasonably calculated to lead to the discovery of admissible evidence. APC further requests that the Robersons be required to make a showing that the information sought through the Proposed Subpoena cannot first be obtained through discovery from one of the parties to this lawsuit or is not already in the possession of Mr. Roberson through

---

were without substantial justification." *See Burt W. Newsome and Newsome Law, LLC v. Balch & Bingham, LLP, et al.*, Nos. 1180302 and 1180252, Slip Op. at 51 (Ala. Dec. 18, 2020).

the documents and information obtained in the criminal case. If the Court ultimately requires such a showing, APC and its counsel request the opportunity to be heard and respond to whatever showing the Robersons attempt to make to this Court. If this Court ultimately determines the Robersons have made a satisfactory showing, then APC requests that this Court enter a Protective Order ordering that the discovery may be had only by a less invasive and less burdensome method of discovery, Ala. R. Civ. P. 26(c)(3), and that certain matters not be inquired into or that the scope of the discovery be limited to certain matters, Ala. R. Civ. P. 26(c)(4). APC requests that such discovery, if ordered by the Court, be limited to the actions of Drummond and its representatives, as those are the only claims in this case.

Above all else, the discovery sought via the Proposed Subpoena simply has nothing to do with the remaining claims in this case. The abusive, vexatious, harassing, and unduly burdensome discovery sought from the Company is directed at the Robersons' efforts to re-litigate the legality of "the Plan," which this Court has already ruled will not happen in this case, and would subject this non-party to burdensome discovery that will not yield information relevant to the Robersons' remaining claims. Because APC has met its burden under Ala. R. Civ. P. 26(c), this Court should grant the requested Protective Order.

Respectfully Submitted,

Augusta S. Dowd

Augusta S. Dowd (DOW003)
One of the Attorneys for Non-Party
Alabama Power Company

22

**OF COUNSEL:**
White Arnold & Dowd P.C.
J. Mark White
Augusta S. Dowd
Katherine Rogers Brown
2025 3rd Ave. N., Ste. 500
Birmingham, AL 35203
Ph. (205) 323-1888
Email: mwhite@whitearnolddowd.com
Email: adowd@whitearnolddowd.com
Email: kbrown@whitearnolddowd.com

# EXHIBIT

# "B"

## CERTIFICATE OF SERVICE

This is to certify that I have this day electronically filed and served the following with a copy of the foregoing, by placing same in an envelope, properly addressed, and depositing it in the United States Mail, with adequate postage prepaid thereon:

Cason M. Kirby
Brant J. Biddle
Attorneys for Matrix, LLC, Perkins Communication LLC, Joe Perkins, Joshua Whitman, Tommy Kirkland, Summer Patterson, Kim Hines
HOLLAND &KNIGHT LLP
1901 Sixth Avenue North Suite 1400
Birmingham, AL 35203

Darrin R. Marlow
Jeffrey W. Salyer
Attorney for Jennifer Lee, Randall Lee, Bristyn Lee, and Georgia Horne
Marlow and Salyer, LLC
1111 17th Ave.
Calera, AL 35040

Kelvin W. Howard
Attorney for Jeff Pitts
OFFICE OF KELVIN W. HOWARD, LLC
420 20th Street North, Suite 2200
Birmingham, AL 35203

Hycall Brooks, III
Attorney for Plaintiffs
P.O. Box 3413
Hueytown, AL 35023

Lee M. Hollis
Mary Parrish McCracken
Attorneys for Alabama Power Company
LIGHTFOOT, FRANKLIN & WHITE, L.L.C.
The Clark Building
400 North 20th Street
Birmingham, AL 35203

2

John W. Scott
Kimberly W. Geisler
Alexander P. Quick
Attorneys for Mark  Crosswhite, Jeff Peoples, Zeke Smith, and Quentin Riggins
SCOTT DUKES & GEISLER, P.C.
211 22nd Street North
Birmingham, AL 35203

Robert R. Baugh
Attorney for Defendants, The Southern Company, Tom Fanning and Jim Kerr
DENTONS SIROTE PC
2311 Highland Avenue South
Birmingham, AL  35255

David L. Balser
Brandon R. Keel
Attorney for Defendants, The Southern Company, Tom Fanning and Jim Kerr
KING & SPALDING LLP
1180 Peachtree St NE
Atlanta, GA 30309

Hon. Melanie B. Holliman, Special Master
melanie@hollimanlegal.com

This the 15th day of January, 2025.

/s/ Burt W. Newsome
Burt W. Newsome (NEW047)
Of Counsel

3

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
BIRMINGHAM DIVISION

BURT NEWSOME                              *
                                          *
        PLAINTIFF,                        *
                                          *
vs.                                       *        CASE NO. CV-2024 - 901173
                                          *
MATRIX, LLC, an Alabama Limited           *
Liability Company                         *
                                          *
        DEFENDANT,                        *

## CERTIFICATE OF AUTHENTICITY BY CUSTODIAN OR RECORDS

I certify the attached is a true and correct copy of records touching or concerning *www.edluexposed.com*, in my custody and I am the legal registrar/custodian and keeper of said records of A2 Hosting. Said website was shutdown off the internet and later published in September of 2022. I further certify that said records were made in the regular course of business, and that it was in the regular course of said office for such records to be made at the time of the events, transactions or occurrences to which they refer or within a reasonable time thereafter.

SIGNED this __20th__ day of __June__ , __2024__ .

_____
Registrar / Custodian of Records
PRINT NAME: _SAMUEL / FLORIDA_

STATE OF __Michigan__
COUNTY OF __Oakland__

SWORN TO AND SUBSCRIBED before me on this __20th__ day of __June__ , __2024__ .

_____
Notary Public
My commission expires: __06/06/30__

GORDON KNOERL
NOTARY PUBLIC, MICHIGAN
COUNTY OF OAKLAND
Acting in the County of Oakland
My Commission Expires June 08, 2030

MgnKxRFSpETMp0nKFDBYNvAha5T56K7yllqqcvFqd6AY+598HgvTQdD7J6KlZtMXyunq
hcvSPBTm0FDTKIZuRY6sUjpckuLQOw1E4DDCIf77c7iZmTEIQp6dugsHGl00QJ/1JvEk
F2/qT7qW7j0PBWn2S/MZyGwLbGvNTbDJIQH3KMgNRQtfpiZla7OSiKuZb6l1aJH0+cXI
pTbLYntiY2savoHYuxPR5fh0QfqXEKAhy5uIEu/0LHr/5aEdf7kSCvRj0iWm3SRB6Uz4
V9Lg== .`

X-Gm-Message-State: AO0yUKU6C604OCrGX1rSxU8DoaPyslQYl/5jh6j7TE3Iu2QfPtHx+Rbl
Q6rKkA3N4sN3n5iV8Rp7uHzLYSK3nwzTdZ9uZt0=

X-Google-Smtp-Source:
AK7set888ztCLHuObCGjPMhspRnyQrvbqqGILIdQ/appMNGIqPRbwolLVFLpy/ky/bNllK/OkGUPzQ==

X-Received: by 2002:a05:622a:178e:b0:3b8:118d:ad86 with SMTP id s14-
20020a05622a178e00b003b8118dad86mr12017051qtk.21.1676582167046;

    Thu, 16 Feb 2023 13:16:07 -0800 (PST)

Received: from smtpclient.apple (107-198-180-59.lightspeed.brhmal.sbcglobal.net. [107.198.180.59])
    by smtp.gmail.com with ESMTPSA id q13-
20020a05620a024d00b006f9ddaaf01esm1899612qkn.102.2023.02.16.13.16.06

    for <info@cdluexposed.com>

    (version=TLS1_2 cipher=ECDHE-ECDSA-AES128-GCM-SHA256 bits=128/128);

    Thu, 16 Feb 2023 13:16:06 -0800 (PST)

From: Joshua Whitman <jw@matrixllc.com>
Content-Type: multipart/alternative;
    boundary="Apple-Mail=_FE433A7C-B767-4E77-BB30-61F0CF1931F8"

Mime-Version: 1.0 (Mac OS X Mail 16.0 \(3731.400.51.1.1\))

Subject: Test Email

Message-Id: <D598EFCC-D4F9-4A38-ACB4-A813AB6BB0A2@matrixllc.com>

Date: Thu, 16 Feb 2023 15:15:55 -0600

To: info@cdluexposed.com

X-Mailer: Apple Mail (2.3731.400.51.1.1)

X-Spam-Status: No, score=0.0

X-Spam-Score: 0

X-Spam-Bar: /

X-Ham-Report: Spam detection software, running on the system "az1-ts2.a2hosting.com",
- has NOT identified this incoming email as spam. The original
 message has been attached to this so you can view it or label
 similar future email.  If you have any questions, see
 root\@localhost for details.

Content preview:  Joshua Whitman, PhD  +1-334-262-5478  <tel:+1-334-262-5478>
  | jw@matrixllc.com  <mailto:jw@matrixllc.com>  644 S. Perry St., Montgomery,
  Alabama 36104  <https://maps.google.com/?q=644%20S.%20Pe [...]

Content analysis details:   (0.0 points, 3.0 required)

 pts rule name          description
---- ---------------------- --------------------------------------------------
 0.0 URIBL_BLOCKED        ADMINISTRATOR NOTICE: The query to URIBL was
                blocked.  See
                http://wiki.apache.org/spamassassin/DnsBlocklists#dnsbl-block
                for more information.
                [URIs: cloudfront.net]
 0.0 HTML_MESSAGE         BODY: HTML included in message
 0.0 HTML_IMAGE_RATIO_06   BODY: HTML has a low ratio of text to image
                area
-0.1 DKIM_VALID          Message has at least one valid DKIM or DK signature
 0.1 DKIM_SIGNED          Message has a DKIM or DK signature, not necessarily
                valid

X-Spam-Flag: NO

--Apple-Mail=_FE433A7C-B767-4E77-BB30-61F0CF1931F8
Content-Transfer-Encoding: quoted-printable
Content-Type: text/plain;
    charset=utf-8


=09
Joshua Whitman, PhD=20
=C2=A0+1-334-262-5478=C2=A0 <tel:+1-334-262-5478> | =
=C2=A0jw@matrixllc.com=C2=A0 <mailto:jw@matrixllc.com>
=C2=A0644 S. Perry St., Montgomery, Alabama 36104=C2=A0 =
<https://maps.google.com/?q=3D644%20S.%20Perry%20St.,%20Montgomery,%20Alab=
ama%2036104>


--Apple-Mail=_FE433A7C-B767-4E77-BB30-61F0CF1931F8
Content-Transfer-Encoding: quoted-printable
Content-Type: text/html;
    charset=us-ascii

<html><head><meta http-equiv=3D"content-type" content=3D"text/html; =
charset=3Dus-ascii"></head><body style=3D"overflow-wrap: break-word; =
-webkit-nbsp-mode: space; line-break: after-white-space;"><br><div>
<meta charset=3D"UTF-8"><div dir=3D"ltr" style=3D"caret-color: rgb(0, 0, =
0); color: rgb(0, 0, 0); font-family: Helvetica; font-size: 14px; =
font-style: normal; font-variant-caps: normal; font-weight: 400; =
letter-spacing: normal; orphans: auto; text-align: start; text-indent: =
0px; text-transform: none; white-space: normal; widows: auto; =
word-spacing: 0px; -webkit-text-size-adjust: auto; =
-webkit-text-stroke-width: 0px; text-decoration: none;"><br =
class=3D"Apple-interchange-newline"><br></div><div dir=3D"ltr" =
style=3D"caret-color: rgb(0, 0, 0); color: rgb(0, 0, 0); font-family: =
Helvetica; font-size: 14px; font-style: normal; font-variant-caps: =
normal; font-weight: 400; letter-spacing: normal; orphans: auto; =
text-align: start; text-indent: 0px; text-transform: none; white-space: =
normal; widows: auto; word-spacing: 0px; -webkit-text-size-adjust: auto; =
-webkit-text-stroke-width: 0px; text-decoration: none;"><br><table =
style=3D"direction: ltr; border-collapse: =
collapse;"><tbody><tr><td><table cellpadding=3D"0" cellspacing=3D"0" =
style=3D"border-collapse: collapse; font-family: Arial; line-height: =
1.15; color: rgb(0, 0, 0);"><tbody><tr><td style=3D"vertical-align: =
middle; padding: 0.01px 12px 0.01px 1px; width: 76px; text-align: =
center;"><img =
src=3D"https://d36urhup7zbd7q.cloudfront.net/u/QoaJYVv4JeA/1664994586637.p=
ng" height=3D"auto" width=3D"76" style=3D"width: 76px; vertical-align: =
middle; border-radius: 0px; height: auto;"></td><td valign=3D"top" =
style=3D"padding: 0.01px 0.01px 0.01px 12px; vertical-align: top; =
border-left-width: 1px; border-left-style: solid; border-left-color: =
rgb(189, 189, 189);"><table cellpadding=3D"0" cellspacing=3D"0" =

Q Search

- A2 Hosting                                                    Wed 00:42
- Credit Card Payment Confirmation :: Invoice A2H-3110145 :: Sum...

  A2 Hosting                                                  2024-04-30 00:19
- Invoice 4293915 :: Summer Patterson (Matrix, LLC) :: A2 Hosting

  Google Search Console Team                                 2024-04-22 00:37
- Congrats on reaching 15 clicks in 28 days!

  Google                                                     2024-04-17 15:52
- Learn more about our updated Terms of Service

  A2 Hosting                                                 2024-04-05 00:49
- Credit Card Payment Confirmation :: Invoice A2H-3074342 :: Sum...

  A2 Hosting                                                 2024-03-29 00:31
- Invoice 4254350 :: Summer Patterson (Matrix, LLC) :: A2 Hosting

  Google Search Console Team                                 2024-03-27 01:58
- New reasons prevent pages from being indexed on site cdluexpos...

  Google Analytics                                           2024-03-25 07:47
- Welcome to Google Analytics!

  Google Search Console Team                                 2024-03-24 17:55
- Improve Google presence for cdluexposed.com

  A2 Hosting                                                 2024-03-24 15:19
- Renewal needed for domain name cdluexposed.com

  Google                                                     2024-03-24 15:11
- Verify your email address

  A2 Hosting                                                 2024-03-21 09:31
- Protect Your A2 Hosting Account  Urgent Alert on Rising Phishing...

  Costain Whitman                                            2024-03-18 09:55
- Testing

  A2 Hosting                                                 2024-03-16 15:59
- Urgent Renewal required for domain cdluexposed.com

  Trust Wallet                                               2024-03-14 19:24
- Wallet Recovery Required!

  A2 Hosting                                                 2024-03-09 11:19
- Renewal reminder for your domain cdluexposed.com

  A2 Hosting                                                 2024-03-01 01:59
- Credit Card Payment Confirmation :: Invoice A2H-3037180 :: Summ...

  A2 Hosting                                                 2024-02-27 01:54
- Invoice 4212790 :: Summer Patterson (Matrix, LLC) :: A2 Hosting

  A2 Hosting                                                 2024-02-01 01:55
- Credit Card Payment Confirmation :: Invoice A2H-3000807 :: Summ...





## Client Profile

Summer Patterson (Matrix, LLC) - #289856

Summary | Profile | Contacts | Products/Services | Domains | Billable Items | Invoices | Quotes | Transactions | Tickets | Emails | Notes (0) | Log | Archive

### #289856 - Summer Patterson

Exempt from Tax: No    Auto CC Processing: Yes    Send Overdue Reminders: Yes    Apply Late Fees: Yes

#### Clients Information

First Name: Summer
Last Name: Patterson
Company Name: Matrix, LLC
Email Address: info@cdiuexposed.com
Address 1: 844 S PERRY ST
Address 2:
City: Montgomery
State/Region: AL
Postcode: 36104
Country: U.S -United States
Phone Number: 3341825478
VAT Number:
Support PIN:

[Login as Client]

Reset & Send Password
New Support PIN

#### Contacts/Sub-Accounts

No additional contacts setup

Add Contact

#### Pay Methods

MasterCard-9282

Add Credit Card

#### Invoices/Billing

Paid: 4 ($465.63 USD)
Draft: 0 ($0.00 USD)
Unpaid Due: 0 ($0.00 USD)
Cancelled: 0 ($0.00 USD)
Refunded: 0 ($0.00 USD)
Collections: 0 ($0.00 USD)
Income:
Gross Revenue: $660.83 USD
Client Expenses: $203.48 USD
Net Income: $457.35 USD
Credit Balance: $0.00 USD

Create Invoice
Create Add Funds Invoice
Generate Due Invoices
Add Billable Item
Manage Credits
Create New Quote

#### Other Information

Status: Active
Client Group: None
Signup Date: 07/31/2025
Client For: 26 Months
Last Login: Date: 09/13/2022 13:59
IP Address: 24.229.64.155
Hostname-24-229-64-155.mobleg.net

#### Recent Login IP Changes

2022-09-02 13:59:19    24.229.64.155    ISA, Off

#### Products/Services

Shared Hosting: 1 (1 Total)
Reseller Hosting: 0 (0 Total)
VPS Server: 0 (0 Total)
Firednet/Service: 0 (0 Total)
Domains: 0 (0 Total)
Accepted Quotes: 0 (0 Total)
Support Tickets: 0 (0 Total)
Affiliate Signups: 0

View Orders
Add New Order

#### Files

No files uploaded

Add File

#### Recent Emails

10/01/2022 03:26 - Credit Card Payment Confirmation - Invoice ASH-3413521 :: Summer Patterson (Matrix, LLC) :: A2 Hosting
09/26/2022 03:15 - Invoice 3513282 :: Summer Patterson (Matrix, LLC) :: A2 Hosting
09/13/2022 14:11 - Invoice Refund Confirmation
06/03/2022 14:00 - Credit Card Payment Confirmation :: Invoice ASH-2373597 :: Summer Patterson (Matrix, LLC) :: A2 Hosting
06/13/2023 14:00 - Service Unsuspension Notification

#### Other Actions

View Account Statement
Open New Support Ticket
View all Support Tickets
Activate as Affiliate
Close Clients Account
Delete Clients Account
Export Client Data

#### Send Email

New Message    Go

#### Admin Notes

Submit

---

### Products/Services

| | ID | Product/Service | Amount | Billing Cycle | Signup Date | Next Due Date | Status | |
|---|---|---|---|---|---|---|---|---|
| | 405902 | Turbo Boost Web Hosting - cdiuexposed.com | $20.99 USD | Monthly | 07/31/2020 | 11/01/2022 | Active | |

DOCUMENT 466

4 Records Found. Page 1 of 1

Jump to Page: 1 Go

| ☐ | Invoice # | Invoice Date | Due Date ▼ | Date Paid | Total | Payment Method | Status | | |
|---|---|---|---|---|---|---|---|---|---|
| ☐ | A2H-2412021 | 10/01/2022 | 10/01/2022 | 10/01/2022 | $20.99 USD | Credit/Debit Card (Visa, MC, AmEx, Disc, JCB, DC, UnionPay) | Paid | | |
| ☐ | A2H-2378987 | 09/02/2022 | 07/31/2022 | 09/02/2022 | $239.88 USD | Credit/Debit Card (Visa, MC, AmEx, Disc, JCB, DC, UnionPay) | Paid | | |
| ☐ | A2H-1894996 | 08/07/2021 | 07/31/2021 | 08/07/2021 | $239.88 USD | Credit/Debit Card (Visa, MC, AmEx, Disc, JCB, DC, UnionPay) | Paid | | |
| ☐ | A2H-1423785 | 07/31/2020 | 07/31/2020 | 07/31/2020 | $179.88 USD | Credit/Debit Card (Visa, MC, AmEx, Disc, JCB, DC, UnionPay) | Paid | | |

Client Profile

Summer Patterson (Matrix, LLC) - #399856

| Summary | Profile | Contacts | Products/Services | Domains | Billable Items | Invoices | Quotes | Transactions | Tickets | Emails | Notes (0) | Log |

First Name: Summer

Last Name: Patterson

Company Name: Matrix, LLC

Email Address: info@cdluexposed.com

Password: Enter to Change    Reset & Send Password

Security Question: What is the street you grew up

Security Answer:

VAT Number:

Address 1: 644 S PERRY ST

Address 2:

City: Montgomery

State/Region: Alabama

Postcode: 36104

Country: United States

Phone Number: 3342625478

| Date ▼ | Payment Method | Description | Amount In | Fees | Amount Out | | |
|---|---|---|---|---|---|---|---|
| 10/01/2022 | Credit/Debit Card (Visa, MC, AmEx, DSC, JCB, DC, UnionPay) | Invoice Payment (#3518282) - Trans ID: txn_3L6OHijTfT8vqFoATce4J5jc | $20.99 USD | $0.00 USD | $0.00 USD | | |
| 09/02/2022 | Credit/Debit Card (Visa, MC, AmEx, DSC, JCB, DC, UnionPay) | Refund of Transaction ID txn_3LdoAOjTfT8vqFoA1cpRy7Fi (#3434328) - Trans ID: txn_3LdoAOjTfT8vqFoA1OqvudDo | $0.00 USD | $0.00 USD | $197.90 USD | | |
| 09/02/2022 | Credit/Debit Card (Visa, MC, AmEx, DSC, JCB, DC, UnionPay) | Invoice Payment (#3434328) - Trans ID: txn_3LdoAOjTfT8vqFoA1cpRy7Fi | $239.83 USD | $0.00 USD | $0.00 USD | | |
| 08/07/2021 | Credit/Debit Card (Visa, MC, AmEx, DSC, JCB, DC, UnionPay) | Invoice Payment (#2919906) - Trans ID: txn_3JJJdgTfT8vqFoAOLtzFDvrS | $239.88 USD | $0.00 USD | $0.00 USD | | |
| 07/31/2020 | Credit/Debit Card (Visa, MC, AmEx, DSC, JCB, DC, UnionPay) | Invoice Payment (#2413215) - Trans ID: txn_1H8326jTfT8vqFoAmkYQezUr | $179.88 USD | $4.98 USD | $0.00 USD | | |

# EXHIBIT

# "C"

yout   Formulas   Data   Review   View   Acrobat

| 16 | | | | | | | Wrap Text | General |

**APC CDLU Special.xlsx Properties**

General  |  Summary  |  [ Statistics ]  Content  |  Custom

Created:  Monday, August 24, 2020 at 1:34 PM

Modified:  Wednesday, December 22, 2021 at 12:07 PM

Printed:

Last saved by:  Kim Hines

Revision number:

Total editing time:

| | Monthly | Total | | Notes |
|---|---|---|---|---|
| | 10,000.00 | $ | 120,000.00 | Aug to Ju |
| | 5,000.00 | $ | 60,000.00 | Not in or |
| | | $ | 41,284.49 | See tab |
| | 3,500.00 | $ | 42,000.00 | additiona |
| | 4,500.00 | $ | 42,750.00 | Kim Ada |
| | 1,000.00 | $ | 12,000.00 | additiona |
| | | $ | 318,034.49 | |

| Date | For | Amount | | Notes |
|---|---|---|---|---|
| April-June | Pacer | $19.40 | | |
| | 1st Boost | $5,000.00 | | |
| | Facebook ads rd 1 | $1,000.00 | | |
| 7/16/20 | Facebook ads rd 2 | $1,000.00 | | |
| | creative/stock images CDLU | $250.00 | | |
| 7/9/2020 | True Targeted Digital Solutions | $5,750.00 | | Digital targeted advertising |
| 7/9/2020 | facebook | $1,000.00 | | apr cdlu |
| 7/17/2020 | Go Daddy | $85.81 | | Domain Purchases  CDLU |
| 7/17/2020 | True Targeted Digital Solutions | $4,900.00 | | 5 Day run  CDLU |
| 7/29/2020 | Tspeaker LLC | $500.00 | Ted Speaker | Animated gifs for KB Forbes |
| 7/28/2020 | Carr Riggs and Ingram | $250.00 | | cdlu |
| 7/17/20 | GoDaddy | $85.81 | | cdluExposed domains (.com; .net; .info, .org) |
| 6/11/2020 | Ebsco Research | $399.00 | | TDS*IMPORTGENIUS.COM 855-5739976 AR |
| 8/17/2020 | Go Daddy | $52.63 | Domain, privacy & AL for Justice | |
| 8/17/2020 | A2 Solutions | $126.84 | Domain Hosting  CDLU | |
| | Website creation | $6,000.00 | | |
| | Frank | $6,000.00 | | |
| 7/25/20 | True Targeted Digital Solutions | $5,750.00 | | |
| | Sign and flyers for Frank | $2,115.00 | | |
| | NP ad | $1,000.00 | | |
| | Total so far | $41,284.49 | | |



Cut
Copy
Format

Arial

B    *I*    U

General

$   ~   %   9

*fx*

A

Expense

APR

Bowden

CDLU / Forbes total as of 8/24/20

Pure
JK

Hoya

**APC CDLU Special.xlsx Properties**

General  |  Summary  |  Statistics  ( Content )  . Custom

Document contents:

Worksheets
  Zeke 82520
  CDLU  Expenses
Named Ranges
  'Zeke 82520'!Print_Area

| Expense | Monthly | | Total | | Notes |
|---|---|---|---|---|---|
| APR | $ | 10,000.00 | $ | 120,000.00 | Aug to July 2021 |
| Bowden | $ | 5,000.00 | $ | 60,000.00 | Not in orginal agreement |
| | | | | | |
| CDLU / Forbes total as of 8/24/20 | | | $ | 41,284.49 | See tab on cdlu expenses |
| | | | | | |
| Pure | $ | 3,500.00 | $ | 42,000.00 | additional 3500 over monthly thru 12/20 |
| JK | $ | 4,500.00 | $ | 42,750.00 | Kim Adams thru 12/20 |
| Hoya | $ | 1,000.00 | $ | 12,000.00 | additional 1k over monthly thru 12/20 |
| | | | | | |
| Total EWO | | | $ | 318,034.49 | |

# EXHIBIT

# "D"



## ALABAMA SJIS CASE DETAIL

PREPARED 5/22/2025 7:03:18 PM

**County:** 04    **Case Number:** CC-2000-000283.00    **Court Action:** GUILTY PLEA
**Style:** STATE OF ALABAMA V. HINES KIMBERLY G

[Real Time]

### Case

#### Case Information

| | | |
|---|---|---|
| County: | 04-AUTAUGA | Judge: JBB-JOHN B BUSH |
| Defendant Status: BOND | Trial Type: | Charge: USE POSITION-PERSONA |
| Related Cases: | | Court Action: GUILTY PLEA |
| Probation Office #: 2001-011056-00 | Probation Office Name: H13460 | |
| Jury Demand: False | Traffic Citation #: | DL Destroy Date: |
| Grand Jury Court Action: | Inpatient Treatment Ordered: | Previous DUI Convictions: 000 |

Case Number: CC-2000-000283.00

#### Case Initiation

| | | |
|---|---|---|
| Case Initiation Date: 08/01/2000 | Case Initiation Type: ARREST | Offense Date: |
| Filing Date: 08/04/2000 | Agency ORI: | Arresting Agency Type: COUNTY |
| Arrest Date: 08/01/2000 | Arresting Officer: MCCLELLAND | City Code/Name: 00 |
| Indictment Date: 07/28/2000 | Grand Jury: 169 | Domestic Violence: |

#### Defendant Information

| | | |
|---|---|---|
| Name: HINES KIMBERLY G | Alias 1: | Alias 2: |
| Address 1: 62 DENNIS CREEK CIRCLE | | |
| City: JACKSONS GAP | State: AL   Zip: 36861-0000 | Country: |
| DOB: 04/28/1966 | SSN: XXX-XX-X116 | Phone: 2568258184000 |
| Driver License N°: AL5036641 | State ID: AL000000000 | Eyes/Hair: BRO/BLK |
| Height: 5'02" | Weight: 115 | Race/Sex: W/F |
| Youthful Date: | | |
| AL Institutional Service Num: | | |

#### Attorneys

| Number | Attorney Code | Type Of Counsel | Name | Email | Phone |
|---|---|---|---|---|---|
| Attorney 1 | JAC015 | R-RETAINED | JACKSON MICHEAL STEWART | MJACKSON@WEBSTERHENRY.COM | (334) 264-9472 |
| Attorney 2 | PAT038 | R-RETAINED | PATTY WILLIAM FRANKLIN | PATTYW@DOT.STATE.AL.US | (334) 242-6350 |
| Prosecutor 1 | BIL004 | | BILLINGSLEA STEPHANIE COL | STEPHANIE.BILLINGSLEA@LIMESTONECOUNTYDA. | (256) 233-6416 |

#### Warrant Information

| | | |
|---|---|---|
| Warrant Issuance Date: | Warrant Issuance Status: | Description: |
| Warrant Action Date: | Warrant Action Status: | Description: |
| Warrant Location Date: | Warrant Location Status: | Description: |
| Number Of Warrants: 000 000 | | |

#### Bond Information

| | | |
|---|---|---|
| Bond Amount: 5000.00 | Bond Type: R | Bond Type Desc: RECOGNIZANCE |
| Bond Company: | Surety Code: 000 | Release Date: 08/01/2000 |
| Failed to Appear Date: | Bondsman Process Issuance: | Bondsman Process Return: |

## Appeal Information

| | | |
|---|---|---|
| Appeal Date: | Appeal Case Number: | Appeal Court: |
| Appeal Status: | Orgin Of Appeal: | |
| Appeal To: | Appeal To Desc: | LowerCourt Appeal Date: |
| Disposition Date Of Appeal: | Disposition Type Of Appeal: | |

## Administrative Information

| | | |
|---|---|---|
| Transfer to Admin Doc Date: | Transfer Reason: | Transfer Desc: |
| Number of Subpoenas: 053 | Last Update: 05/09/2023 | Updated By: BEP |

## Settings

### Settings

| | Date | Que | Time | Description |
|---|---|---|---|---|
| 4 | 12/01/2003 | 001 | 06:00 PM | REVW - NIGHT COURT |

## Charges/Disposition

### Court Action

| | | |
|---|---|---|
| Court Action: G-GUILTY PLEA | Court Action Date: | 10/24/2001 |
| Date Trial Began but No Verdict (TBNV1): | | |
| Date Trial Began but No Verdict (TBNV2): | | |

### Filing Charges

| # | Code | TOR | Description | Cite | Type Description | Category | Class |
|---|---|---|---|---|---|---|---|
| 001 | OFFP | | USE POSITION-PERSONAL GAIN | 036-025-005(A) | FELONY | BUSINESS | |
| 002 | TOP1 | | THEFT OF PROPERTY 1ST | 13A-008-003 | FELONY | PROPERTY | |

### Disposition Charges

| # | Code | TOR | Description | Cite | Type Description | Category | Class | Court Action | Court Action Date |
|---|---|---|---|---|---|---|---|---|---|
| 001 | OFFP | | USE POSITION-PERSONAL GAIN | 036-025-005(A) | FELONY | BUSINESS | | GUILTY PLEA | 10/24/2001 |
| 002 | TOP1 | | THEFT OF PROPERTY 1ST | 13A-008-003 | FELONY | PROPERTY | | DISMISSED | 10/24/2001 |

## Sentences

### Sentence

| | | |
|---|---|---|
| Requrements Completed: NO | Sentence Provisions: Y | Jail Credit Period: 0 Years, 0 Months, 1 Day. |
| Sentence Date: 12/14/2001 | Sentence Start Date: 12/14/2001 | Sentence End Date: |
| Probation Period: 3 Years, 0 Months, 0 Days. | Probation Begin Date: | Probation Revoke: |
| License Susp Period: 0000000 | Last Update: 12/17/2001 | Updated By: DEM |

### Monetary

| | | |
|---|---|---|
| Costs: X | Fine: Fine Imposed: 0.00 | Fine Suspended: 0.00 | Immigration Fine: |
| Crime Victims Fee: X | Crime History Fee: X | License Suspension Fee: | Drug User Fee: |
| WC Fee 85%: | Municipal Court: | Jail Fee: | Drug Docket Fees: |
| WC Fee DA: | Removal Bill: | Amt Over Minimum CVF: X-$50.00 | Atlas Warrant: |
| SX10: | Prelim Hearing: | Attorney Fees: | Demand Reduction Hearing: | Subpoena: X |

### Restitution

| Recipient | Restitution | Description | Amount |
|---|---|---|---|
| R001 | X | 1 | 14929.48 |

### Confinement

| | | | | | | |
|---|---|---|---|---|---|---|
| Imposed Confinement Period: | 0 Years, 0 Months, 30 Days. | | Suspended Confinement Period | 4 Years, 11 Months, 0 Days. | | |
| Total Confinement Period: | 4 Years, 11 Months, 30 Days. | | Penitentiary: | | | |
| Life Without Parole: | | | Boot Camp: | | | |
| Jail: | X | Life: | | Death: | | |
| Split: | X | Reverse Split: | | Electronic Monitoring: | -0 | |
| Concurrent Sentence: | | Consecutive Sentence: | | Coterminous Sentence: | | |
| Chain Gang: | 0 | | | | | |

### Programs

| | | |
|---|---|---|
| Jail Diversion: | Informal Probation: | Alcoholics Anonymous: |
| Dui School: | Defensive Driving Shcool: | Doc Drug Program: |
| PreTrial Diversion: | Bad Check School: | Mental Health: |
| Court Referral Program: | Alternative Sentencing: | Drug Court: |
| Anger Management Program: | Doc Community Corrections: | Jail Community Corrections: |
| Community Service: | Community Service Hrs: 0 | |

### Enhanced

| | | |
|---|---|---|
| Drug Near Project: | Sex Offender Community Notification: | Drugs Near School: |
| Habitual Offender: | Habitual Offender Number: 0 | Victim DOB: |
| Drug: | Drug Code: | Drug Volume: 0.00 |
| Drug Measure Unit: | | |

*Key: x = ordered by judge and should be collected. m = ordered by judge but remitted immediately. n = normally assessed but ordered to 'not collect

### Linked Cases

| Sentencing Number | Case Type | Case Type Description | Case Number |
|---|---|---|---|

## Enforcement

### Enforcement

| | | | | | | |
|---|---|---|---|---|---|---|
| Payer: | D001 | Enforcement Status: | SATISFIED; ALL MONIES PAID | | Placement Status: | CLERK'S OFFICE |
| Amount Due: | $16,540.48 | | | Amount Paid: $16,540.48 | Balance: | $0.00 |
| Due Date: | 10/01/2028 | Last Paid Date: | 05/13/2014 | Frequency: | Frequency Amt: | $50.00 |
| Over/Under Paid: | $0.00 | TurnOver Date: | | TurnOver Amt: $0.00 | D999 Amt: | $0.00 |
| PreTrial: | YES | PreTrail Date: | | PreTrial Terms: YES | Pre Terms Date: | |
| Delinquent: | YES | Delinquent Date: | | DA Maller: YES | DA Maller Date: | |
| Warrant Maller: | YES | Warrant Maller Date: | | Last Update: 05/13/2014 | Updated By: | MAB |
| Comments: | | | | | | |

## Financial

### Fee Sheet

| Fee Status | Admin Fee | Fee Code | Payor | Payee | Amount Due | Amount Paid | Balance | Amount Hold | Garnish Party |
|---|---|---|---|---|---|---|---|---|---|
| ACTIVE | N | CF00 - COSTS | D001 | 000 | $259.00 | $259.00 | $0.00 | $0.00 | |
| ACTIVE | N | SF30 - SUBPOENA | D001 | 000 | $504.00 | $504.00 | $0.00 | $0.00 | |

| ACTIVE | N | SO75 - CRIM HIS | D001 | 000 | $30.00 | $30.00 | $0.00 | $0.00 |
|--------|---|-----------------|------|-----|--------|--------|-------|-------|
| ACTIVE | N | CF71 - CVCC | D001 | 000 | $25.00 | $25.00 | $0.00 | $0.00 |
| ACTIVE | N | CF72 - OPS | D001 | 000 | $25.00 | $25.00 | $0.00 | $0.00 |
| ACTIVE | N | CF73 - CVCC | D001 | 000 | $50.00 | $50.00 | $0.00 | $0.00 |
| ACTIVE | Y | R001 - REST | D001 | R001 | $14,929.48 | $14,929.48 | $0.00 | $0.00 |
| ACTIVE | N | SHER - SHERIFF SVC | D001 | 000 | $320.00 | $320.00 | $0.00 | $0.00 |
| ACTIVE | N | F001 - REFUND | D001 | D001 | $398.00 | $398.00 | $0.00 | $0.00 |
| | | | | Total: | $16640.48 | $16,540.48 | $0.00 | $0.00 |

## Financial History

| Transaction Date | Description | Disbursement Account | Transaction Batch# | Receipt Number | Amount | From Party | To Party | Money Type | Admin Fee | Reason | Attorney | Operator |
|------------------|-------------|----------------------|--------------------|-----------------|--------|-----------|----------|------------|-----------|--------|----------|----------|
| 02/01/2002 | RECEIPT | CF00 - COSTS | 2002040 | 03955400 | $100.00 | D001 | 000 | Money Order | N | | | SAL |
| 03/01/2002 | RECEIPT | CF00 - COSTS | 2002048 | 04026000 | $100.00 | D001 | 000 | Money Order | N | | | DEM |
| 04/02/2002 | RECEIPT | CF00 - COSTS | 2002061 | 04088500 | $59.00 | D001 | 000 | Money Order | N | | | DEM |
| 04/02/2002 | RECEIPT | SF30 - SUBPOENA | 2002061 | 04088501 | $41.00 | D001 | 000 | Money Order | N | | | DEM |
| 05/03/2002 | RECEIPT | SF30 - SUBPOENA | 2002071 | 04136800 | $100.00 | D001 | 000 | Money Order | N | | | SAL |
| 06/06/2002 | RECEIPT | SF30 - SUBPOENA | 2002079 | 04190200 | $100.00 | D001 | 000 | Money Order | N | | | DEM |
| 07/16/2002 | RECEIPT | SF30 - SUBPOENA | 2002092 | 04260100 | $100.00 | D001 | 000 | Money Order | N | | | DEM |
| 08/05/2002 | RECEIPT | SF30 - SUBPOENA | 2002097 | 04306500 | $100.00 | D001 | 000 | Money Order | N | | | DEM |
| 09/06/2002 | RECEIPT | SF30 - SUBPOENA | 2002110 | 04369300 | $63.00 | D001 | 000 | Money Order | N | | | DEM |
| 09/06/2002 | RECEIPT | SO75 - CRIM HIS | 2002110 | 04369301 | $30.00 | D001 | 000 | Money Order | N | | | DEM |
| 09/06/2002 | RECEIPT | CF71 - CVCC | 2002110 | 04369302 | $7.00 | D001 | 000 | Money Order | N | | | DEM |
| 10/04/2002 | RECEIPT | CF71 - CVCC | 2003002 | 04436500 | $18.00 | D001 | 000 | Money Order | N | | | DEM |
| 10/04/2002 | RECEIPT | CF72 - OPS | 2003002 | 04436501 | $25.00 | D001 | 000 | Money Order | N | | | DEM |
| 10/04/2002 | RECEIPT | CF73 - CVCC | 2003002 | 04436502 | $50.00 | D001 | 000 | Money Order | N | | | DEM |
| 10/04/2002 | RECEIPT | R001 - REST | 2003002 | 04436503 | $6.00 | D001 | R001 | Money Order | Y | | | DEM |
| 11/12/2002 | RECEIPT | R001 - REST | 2003010 | 04510100 | $99.00 | D001 | R001 | Money Order | Y | | | DEM |
| 12/12/2002 | RECEIPT | R001 - REST | 2003019 | 04585800 | $99.00 | D001 | R001 | Money Order | Y | | | DEM |
| 01/08/2003 | RECEIPT | R001 - REST | 2003025 | 04610800 | $99.00 | D001 | R001 | Check | Y | | | SAL |
| 02/07/2003 | RECEIPT | R001 - REST | 2003035 | 04681000 | $99.00 | D001 | R001 | Money Order | Y | | | DEM |
| 02/12/2003 | CHECK | R001 - REST | 2003036 | 00071131 | $402.00 | D001 | R001 | CHECK | | | | AMG |
| 03/05/2003 | RECEIPT | R001 - REST | 2003042 | 04743100 | $99.00 | D001 | R001 | Check | Y | | | SAL |
| 03/06/2003 | CHECK | R001 - REST | 2003043 | 00071761 | $99.00 | D001 | R001 | CHECK | | | | MAN |
| 05/01/2003 | RECEIPT | R001 - REST | 2003062 | 04843800 | $99.00 | D001 | R001 | Money Order | Y | | | DEM |
| 05/02/2003 | CHECK | R001 - REST | 2003063 | 00073731 | $99.00 | D001 | R001 | CHECK | | | | AMG |
| 05/08/2003 | RECEIPT | R001 - REST | 2003065 | 04864500 | $99.00 | D001 | R001 | Money Order | Y | | | DEM |
| 06/16/2003 | CHECK | R001 - REST | 2003066 | 00074001 | $99.00 | D001 | R001 | CHECK | | | | AMG |
| 07/03/2003 | RECEIPT | R001 - REST | 2003084 | 04984300 | $99.00 | D001 | R001 | Money Order | Y | | | DEM |
| 07/08/2003 | CHECK | R001 - REST | 2003088 | 00075711 | $99.00 | D001 | R001 | CHECK | | | | AMG |
| 07/20/2003 | RECEIPT | R001 - REST | 2003098 | 05006900 | $99.00 | D001 | R001 | Money Order | Y | | | DEM |

| 07/22/2003 | CHECK | R001 - REST | 2003089 | 00075891 | $99.00 | D001 | R001 | CHECK | | AMG |
|---|---|---|---|---|---|---|---|---|---|---|
| 08/07/2003 | CHECK | R001 - REST | 2003097 | 00076521 | $99.00 | D001 | R001 | CHECK | | AMG |
| 08/07/2003 | RECEIPT | R001 - REST | 2003096 | 05052300 | $99.00 | D001 | R001 | Money Order | Y | DEM |
| 09/05/2003 | RECEIPT | R001 - REST | 2003107 | 05102700 | $99.00 | D001 | R001 | Money Order | Y | DEM |
| 09/09/2003 | CHECK | R001 - REST | 2003108 | 00077281 | $99.00 | D001 | R001 | CHECK | | AMG |
| 10/10/2003 | RECEIPT | R001 - REST | 2004004 | 05171900 | $99.00 | D001 | R001 | Money Order | Y | DEH |
| 10/14/2003 | CHECK | R001 - REST | 2004005 | 00078171 | $99.00 | D001 | R001 | CHECK | | AMG |
| 11/05/2003 | RECEIPT | R001 - REST | 2004013 | 05227000 | $99.00 | D001 | R001 | Money Order | Y | DEH |
| 11/06/2003 | CHECK | R001 - REST | 2004014 | 00078831 | $99.00 | D001 | R001 | CHECK | | AMG |
| 12/04/2003 | RECEIPT | R001 - REST | 2004023 | 05274800 | $129.00 | D001 | R001 | Money Order | Y | DEH |
| 12/07/2003 | CHECK | R001 - REST | 2004024 | 00079701 | $129.00 | D001 | R001 | CHECK | | AMG |
| 01/06/2004 | CHECK | R001 - REST | 2004033 | 00080451 | $129.00 | D001 | R001 | CHECK | | AMG |
| 01/06/2004 | RECEIPT | R001 - REST | 2004032 | 05322700 | $129.00 | D001 | R001 | Money Order | Y | DEH |
| 02/08/2004 | RECEIPT | R001 - REST | 2004043 | 05380600 | $129.00 | D001 | R001 | Money Order | Y | DEH |
| 02/10/2004 | CHECK | R001 - REST | 2004044 | 00081361 | $129.00 | D001 | R001 | CHECK | | AMG |
| 03/05/2004 | RECEIPT | R001 - REST | 2004051 | 05433000 | $129.00 | D001 | R001 | Money Order | Y | DEH |
| 03/12/2004 | CHECK | R001 - REST | 2004052 | 00082471 | $129.00 | D001 | R001 | CHECK | | AMG |
| 04/08/2004 | RECEIPT | R001 - REST | 2004061 | 05501700 | $129.00 | D001 | R001 | Money Order | Y | AMG |
| 04/14/2004 | CHECK | R001 - REST | 2004062 | 00083531 | $129.00 | D001 | R001 | CHECK | | AMG |
| 05/06/2004 | RECEIPT | R001 - REST | 2004068 | 05564000 | $129.00 | D001 | R001 | Check | Y | AMG |
| 05/10/2004 | CHECK | R001 - REST | 2004069 | 00084501 | $129.00 | D001 | R001 | CHECK | | AMG |
| 06/08/2004 | RECEIPT | R001 - REST | 2004077 | 05620700 | $129.00 | D001 | R001 | Money Order | Y | DEH |
| 06/10/2004 | CHECK | R001 - REST | 2004078 | 00085431 | $129.00 | D001 | R001 | CHECK | | MAN |
| 07/09/2004 | RECEIPT | R001 - REST | 2004086 | 05687300 | $129.00 | D001 | R001 | Money Order | Y | DEH |
| 07/13/2004 | CHECK | R001 - REST | 2004087 | 00086541 | $129.00 | D001 | R001 | CHECK | | AMG |
| 08/05/2004 | RECEIPT | R001 - REST | 2004095 | 05757900 | $129.00 | D001 | R001 | Money Order | Y | DEH |
| 08/06/2004 | CHECK | R001 - REST | 2004096 | 00087391 | $129.00 | D001 | R001 | CHECK | | AMG |
| 09/07/2004 | RECEIPT | R001 - REST | 2004104 | 05835600 | $129.00 | D001 | R001 | Check | Y | AMG |
| 09/10/2004 | CHECK | R001 - REST | 2004105 | 00088991 | $129.00 | D001 | R001 | CHECK | | AMG |
| 10/07/2004 | RECEIPT | R001 - REST | 2005005 | 05910600 | $129.00 | D001 | R001 | Money Order | Y | DEH |
| 10/14/2004 | CHECK | R001 - REST | 2005006 | 00090111 | $129.00 | D001 | R001 | CHECK | | AMG |
| 11/04/2004 | RECEIPT | R001 - REST | 2005013 | 05983700 | $129.00 | D001 | R001 | Check | Y | AMG |
| 11/08/2004 | CHECK | R001 - REST | 2005014 | 00091061 | $129.00 | D001 | R001 | CHECK | | AMG |
| 12/07/2004 | RECEIPT | R001 - REST | 2005021 | 06073200 | $129.00 | D001 | R001 | Money Order | Y | DEH |
| 12/09/2004 | CHECK | R001 - REST | 2005022 | 00091951 | $129.00 | D001 | R001 | CHECK | | AMG |
| 01/06/2005 | RECEIPT | R001 - REST | 2005028 | 06136600 | $129.00 | D001 | R001 | Money Order | Y | DEH |
| 01/07/2005 | CHECK | R001 - REST | 2005029 | 00093051 | $129.00 | D001 | R001 | CHECK | | AMG |
| 02/04/2005 | RECEIPT | R001 - REST | 2005038 | 06206300 | $129.00 | D001 | R001 | Money Order | Y | DEH |
| 02/08/2005 | CHECK | R001 - REST | 2005039 | 00093971 | $129.00 | D001 | R001 | CHECK | | AMG |
| 03/04/2005 | RECEIPT | R001 - REST | 2005046 | 06307400 | $129.00 | D001 | R001 | Money Order | Y | DEH |
| 03/08/2005 | CHECK | R001 - REST | 2005047 | 00095051 | $129.00 | D001 | R001 | CHECK | | AMG |
| 04/07/2005 | RECEIPT | R001 - REST | 2005056 | 06399300 | $129.00 | D001 | R001 | Money Order | Y | AMG |
| 04/11/2005 | CHECK | R001 - REST | 2005057 | 00096271 | $129.00 | D001 | R001 | CHECK | | AMG |
| 05/05/2005 | RECEIPT | R001 - REST | 2005066 | 06478700 | $129.00 | D001 | R001 | Check | Y | AMG |
| 05/06/2005 | CHECK | R001 - REST | 2005067 | 00097211 | $129.00 | D001 | R001 | CHECK | | AMG |

| 06/03/2005 | CHECK | R001 - REST | 2005075 | 00098071 | $129.00 | D001 | R001 | CHECK | | AMG |
| 06/03/2005 | RECEIPT | R001 - REST | 2005074 | 06561400 | $129.00 | D001 | R001 | Check | Y | DEH |
| 07/19/2005 | RECEIPT | R001 - REST | 2005088 | 06686400 | $129.00 | D001 | R001 | Money Order | Y | DEH |
| 07/22/2005 | CHECK | R001 - REST | 2005089 | 00099771 | $129.00 | D001 | R001 | CHECK | | AMG |
| 08/03/2005 | RECEIPT | R001 - REST | 2005093 | 06730200 | $129.00 | D001 | R001 | Money Order | Y | DEH |
| 08/05/2005 | CHECK | R001 - REST | 2005094 | 00100531 | $129.00 | D001 | R001 | CHECK | | AMG |
| 09/06/2005 | RECEIPT | R001 - REST | 2005103 | 06819600 | $129.00 | D001 | R001 | Check | Y | AMG |
| 09/07/2005 | CHECK | R001 - REST | 2005104 | 00101651 | $129.00 | D001 | R001 | CHECK | | AMG |
| 10/06/2005 | RECEIPT | R001 - REST | 2006002 | 06915200 | $129.00 | D001 | R001 | Money Order | Y | DEH |
| 10/07/2005 | CHECK | R001 - REST | 2006003 | 00102871 | $129.00 | D001 | R001 | CHECK | | AMG |
| 11/07/2005 | RECEIPT | R001 - REST | 2006011 | 07005600 | $129.00 | D001 | R001 | Money Order | Y | AMG |
| 11/14/2005 | CHECK | R001 - REST | 2006012 | 00104081 | $129.00 | D001 | R001 | CHECK | | AMG |
| 12/07/2005 | RECEIPT | R001 - REST | 2006018 | 07094000 | $129.00 | D001 | R001 | Money Order | Y | DEH |
| 12/08/2005 | CHECK | R001 - REST | 2006019 | 00104871 | $129.00 | D001 | R001 | CHECK | | AMG |
| 01/06/2006 | RECEIPT | R001 - REST | 2006026 | 07179200 | $129.00 | D001 | R001 | Check | Y | AMG |
| 01/13/2006 | CHECK | R001 - REST | 2006027 | 00106191 | $129.00 | D001 | R001 | CHECK | | AMG |
| 02/06/2006 | RECEIPT | R001 - REST | 2006034 | 07279100 | $129.00 | D001 | R001 | Money Order | Y | AMG |
| 02/10/2006 | CHECK | R001 - REST | 2006035 | 00107281 | $129.00 | D001 | R001 | CHECK | | AMG |
| 03/06/2006 | CHECK | R001 - REST | 2006041 | 00108111 | $129.00 | D001 | R001 | CHECK | | AMG |
| 03/06/2006 | RECEIPT | R001 - REST | 2006040 | 07377900 | $129.00 | D001 | R001 | Money Order | Y | AMG |
| 04/06/2006 | RECEIPT | R001 - REST | 2006050 | 07484200 | $128.00 | D001 | R001 | Money Order | Y | DEH |
| 04/12/2006 | CHECK | R001 - REST | 2006051 | 00109671 | $129.00 | D001 | R001 | CHECK | | AMG |
| 05/15/2006 | RECEIPT | R001 - REST | 2006058 | 07591400 | $129.00 | D001 | R001 | Money Order | Y | DEH |
| 05/19/2006 | CHECK | R001 - REST | 2006059 | 00111061 | $129.00 | D001 | R001 | CHECK | | AMG |
| 06/06/2006 | RECEIPT | R001 - REST | 2006063 | 07653600 | $129.00 | D001 | R001 | Money Order | Y | AMG |
| 06/09/2006 | CHECK | R001 - REST | 2006064 | 00111981 | $129.00 | D001 | R001 | CHECK | | AMG |
| 07/06/2006 | RECEIPT | R001 - REST | 2006071 | 07742900 | $129.00 | D001 | R001 | Money Order | Y | DEH |
| 07/13/2006 | CHECK | R001 - REST | 2006072 | 00113531 | $129.00 | D001 | R001 | CHECK | | AMG |
| 08/04/2006 | RECEIPT | R001 - REST | 2006076 | 07821400 | $129.00 | D001 | R001 | Money Order | Y | DEH |
| 08/08/2006 | CHECK | R001 - REST | 2006077 | 00114431 | $129.00 | D001 | R001 | CHECK | | AMG |
| 09/08/2006 | RECEIPT | R001 - REST | 2006085 | 07920900 | $129.00 | D001 | R001 | Money Order | Y | DEH |
| 09/19/2006 | CHECK | R001 - REST | 2006086 | 00115731 | $129.00 | D001 | R001 | CHECK | | AMG |
| 10/05/2006 | RECEIPT | R001 - REST | 2007002 | 08023200 | $129.00 | D001 | R001 | Money Order | Y | AMG |
| 10/09/2006 | CHECK | R001 - REST | 2007003 | 00116571 | $129.00 | D001 | R001 | CHECK | | AMG |
| 11/06/2006 | RECEIPT | R001 - REST | 2007008 | 08131500 | $129.00 | D001 | R001 | Money Order | Y | AMG |
| 11/08/2006 | CHECK | R001 - REST | 2007009 | 00117481 | $129.00 | D001 | R001 | CHECK | | AMG |
| 12/12/2006 | RECEIPT | R001 - REST | 2007016 | 08231600 | $129.00 | D001 | R001 | Money Order | Y | DEH |
| 12/15/2006 | CHECK | R001 - REST | 2007017 | 00118661 | $129.00 | D001 | R001 | CHECK | | AMG |
| 01/09/2007 | RECEIPT | R001 - REST | 2007023 | 08310700 | $129.00 | D001 | R001 | Money Order | Y | DEH |
| 01/12/2007 | CHECK | R001 - REST | 2007024 | 00119561 | $129.00 | D001 | R001 | CHECK | | AMG |
| 04/06/2007 | RECEIPT | R001 - REST | 2007044 | 08595200 | $129.00 | D001 | R001 | Money Order | Y | DEH |
| 04/10/2007 | CHECK | R001 - REST | 2007045 | 00123161 | $129.00 | D001 | R001 | CHECK | | AMG |
| 05/17/2007 | RECEIPT | R001 - REST | 2007052 | 08712300 | $99.00 | D001 | R001 | Money Order | Y | DEH |
| 05/18/2007 | CHECK | R001 - REST | 2007053 | 00124291 | $99.00 | D001 | R001 | CHECK | | AMG |

| Date | Type | Account | Number | Ref | Amount | Code1 | Code2 | Method | | Init |
|------|------|---------|--------|-----|--------|-------|-------|--------|---|------|
| 06/11/2007 | RECEIPT | R001 - REST | 2007059 | 08777900 | $99.00 | D001 | R001 | Money Order | Y | DEH |
| 06/12/2007 | CHECK | R001 - REST | 2007060 | 00125151 | $99.00 | D001 | R001 | CHECK | | AMG |
| 07/09/2007 | RECEIPT | R001 - REST | 2007066 | 08853600 | $99.00 | D001 | R001 | Money Order | Y | DEH |
| 07/15/2007 | CHECK | R001 - REST | 2007067 | 00126021 | $99.00 | D001 | R001 | CHECK | | AMG |
| 08/08/2007 | CHECK | R001 - REST | 2007072 | 00126941 | $99.00 | D001 | R001 | CHECK | | AMG |
| 08/08/2007 | RECEIPT | R001 - REST | 2007071 | 08963400 | $99.00 | D001 | R001 | Money Order | Y | DEH |
| 09/13/2007 | RECEIPT | R001 - REST | 2007078 | 09078400 | $99.00 | D001 | R001 | Money Order | Y | DEH |
| 09/14/2007 | CHECK | R001 - REST | 2007079 | 00128031 | $99.00 | D001 | R001 | CHECK | | AMG |
| 10/09/2007 | RECEIPT | R001 - REST | 2008002 | 09183800 | $99.00 | D001 | R001 | Check | Y | AMG |
| 10/11/2007 | CHECK | R001 - REST | 2008003 | 00129011 | $99.00 | D001 | R001 | CHECK | | AMG |
| 11/06/2007 | RECEIPT | R001 - REST | 2008008 | 09273300 | $99.00 | D001 | R001 | Money Order | Y | DEH |
| 11/09/2007 | CHECK | R001 - REST | 2008009 | 00129801 | $99.00 | D001 | R001 | CHECK | | AMG |
| 12/11/2007 | RECEIPT | R001 - REST | 2008015 | 09375200 | $99.00 | D001 | R001 | Money Order | Y | DEH |
| 12/13/2007 | CHECK | R001 - REST | 2008016 | 00131071 | $99.00 | D001 | R001 | CHECK | | AMG |
| 01/08/2008 | CHECK | R001 - REST | 2008021 | 00131631 | $99.00 | D001 | R001 | CHECK | | AMG |
| 01/08/2008 | RECEIPT | R001 - REST | 2008020 | 09459200 | $99.00 | D001 | R001 | Money Order | Y | DEH |
| 02/11/2008 | RECEIPT | R001 - REST | 2008027 | 09607700 | $99.00 | D001 | R001 | Money Order | Y | DEH |
| 02/14/2008 | CHECK | R001 - REST | 2008028 | 00133151 | $99.00 | D001 | R001 | CHECK | | AMG |
| 03/12/2008 | RECEIPT | R001 - REST | 2008033 | 09730100 | $99.00 | D001 | R001 | Money Order | Y | DEH |
| 03/20/2008 | CHECK | R001 - REST | 2008034 | 00134391 | $99.00 | D001 | R001 | CHECK | | AMG |
| 04/10/2008 | CHECK | R001 - REST | 2008039 | 00135131 | $99.00 | D001 | R001 | CHECK | | AMG |
| 04/10/2008 | RECEIPT | R001 - REST | 2008038 | 09856700 | $99.00 | D001 | R001 | Money Order | Y | DEH |
| 05/14/2008 | RECEIPT | R001 - REST | 2008045 | 10009400 | $99.00 | D001 | R001 | Money Order | Y | DEH |
| 05/27/2008 | CHECK | R001 - REST | 2008046 | 00136741 | $99.00 | D001 | R001 | CHECK | | AMG |
| 06/12/2008 | RECEIPT | R001 - REST | 2008050 | 10111200 | $99.00 | D001 | R001 | Money Order | Y | DEH |
| 06/24/2008 | CHECK | R001 - REST | 2008051 | 00137851 | $99.00 | D001 | R001 | CHECK | | AMG |
| 07/10/2008 | RECEIPT | R001 - REST | 2008055 | 10288200 | $99.00 | D001 | R001 | Money Order | Y | DEH |
| 07/23/2008 | CHECK | R001 - REST | 2008056 | 00138851 | $99.00 | D001 | R001 | CHECK | | AMG |
| 08/12/2008 | RECEIPT | R001 - REST | 2008059 | 10471100 | $99.00 | D001 | R001 | Money Order | Y | DEH |
| 08/15/2008 | CHECK | R001 - REST | 2008060 | 00139551 | $99.00 | D001 | R001 | CHECK | | AMG |
| 09/11/2008 | RECEIPT | R001 - REST | 2008066 | 10590000 | $99.00 | D001 | R001 | Money Order | Y | DEH |
| 09/16/2008 | CHECK | R001 - REST | 2008067 | 00141011 | $99.00 | D001 | R001 | CHECK | | AMG |
| 10/15/2008 | RECEIPT | R001 - REST | 2009003 | 10782400 | $99.00 | D001 | R001 | Money Order | Y | AMG |
| 10/16/2008 | CHECK | R001 - REST | 2009004 | 00142321 | $99.00 | D001 | R001 | CHECK | | AMG |
| 11/13/2008 | RECEIPT | R001 - REST | 2009008 | 10931300 | $99.00 | D001 | R001 | Money Order | Y | DEH |
| 11/14/2008 | CHECK | R001 - REST | 2009009 | 00143141 | $99.00 | D001 | R001 | CHECK | | AMG |
| 12/08/2008 | RECEIPT | R001 - REST | 2009013 | 11050200 | $99.00 | D001 | R001 | Money Order | Y | DEH |
| 12/12/2008 | CHECK | R001 - REST | 2009014 | 00144291 | $99.00 | D001 | R001 | CHECK | | AMG |
| 01/14/2009 | RECEIPT | R001 - REST | 2009019 | 11203900 | $99.00 | D001 | R001 | Money Order | Y | DEH |
| 01/15/2009 | CHECK | R001 - REST | 2009020 | 00145451 | $99.00 | D001 | R001 | CHECK | | AMG |
| 02/23/2009 | RECEIPT | R001 - REST | 2009025 | 11409900 | $99.00 | D001 | R001 | Money Order | Y | DEH |
| 02/25/2009 | CHECK | R001 - REST | 2009026 | 00146551 | $99.00 | D001 | R001 | CHECK | | AMG |
| 03/17/2009 | RECEIPT | R001 - REST | 2009032 | 11535700 | $99.00 | D001 | R001 | Money Order | Y | AMG |

| 03/23/2009 | CHECK | R001 - REST | 2009033 | 00147481 | $99.00 | D001 | R001 | CHECK | | AMG |
|---|---|---|---|---|---|---|---|---|---|---|
| 07/06/2009 | RECEIPT | R001 - REST | 2009052 | 12101300 | $99.00 | D001 | R001 | Money Order | Y | DEH |
| 07/08/2009 | CHECK | R001 - REST | 2009053 | 00151481 | $99.00 | D001 | R001 | CHECK | | MAB |
| 08/03/2009 | RECEIPT | R001 - REST | 2009058 | 12202700 | $99.00 | D001 | R001 | Check | Y | VIL |
| 08/12/2009 | CHECK | R001 - REST | 2009062 | 00152571 | $99.00 | D001 | R001 | CHECK | | MAB |
| 09/03/2009 | RECEIPT | R001 - REST | 2009067 | 12353400 | $99.00 | D001 | R001 | Mail | Y | VIL |
| 09/09/2009 | CHECK | R001 - REST | 2009068 | 00153821 | $99.00 | D001 | R001 | CHECK | | MAB |
| 10/05/2009 | RECEIPT | R001 - REST | 2010002 | 12494000 | $99.00 | D001 | R001 | Mail | Y | DEH |
| 10/07/2009 | CHECK | R001 - REST | 2010003 | 00154841 | $99.00 | D001 | R001 | CHECK | | MAB |
| 11/02/2009 | RECEIPT | R001 - REST | 2010006 | 12600400 | $99.00 | D001 | R001 | Mail | Y | VIL |
| 11/04/2009 | CHECK | R001 - REST | 2010008 | 00156761 | $99.00 | D001 | R001 | CHECK | | MAB |
| 12/03/2009 | RECEIPT | R001 - REST | 2010013 | 12761700 | $99.00 | D001 | R001 | Mail | Y | VIL |
| 12/09/2009 | CHECK | R001 - REST | 2010014 | 00157971 | $99.00 | D001 | R001 | CHECK | | MAB |
| 01/04/2010 | RECEIPT | R001 - REST | 2010019 | 12817400 | $99.00 | D001 | R001 | Mail | Y | DEH |
| 01/06/2010 | CHECK | R001 - REST | 2010020 | 00158651 | $99.00 | D001 | R001 | CHECK | | MAB |
| 02/04/2010 | RECEIPT | R001 - REST | 2010025 | 13002300 | $99.00 | D001 | R001 | Mail | Y | VIL |
| 02/10/2010 | CHECK | R001 - REST | 2010026 | 00160641 | $99.00 | D001 | R001 | CHECK | | MAB |
| 03/04/2010 | RECEIPT | R001 - REST | 2010032 | 13147700 | $99.00 | D001 | R001 | Mail | Y | DEH |
| 03/09/2010 | CHECK | R001 - REST | 2010033 | 00161531 | $99.00 | D001 | R001 | CHECK | | MAB |
| 04/07/2010 | RECEIPT | R001 - REST | 2010042 | 13254200 | $99.00 | D001 | R001 | Mail | Y | VIL |
| 04/13/2010 | CHECK | R001 - REST | 2010044 | 00162851 | $99.00 | D001 | R001 | CHECK | | MAB |
| 05/05/2010 | RECEIPT | R001 - REST | 2010051 | 13360400 | $99.00 | D001 | R001 | Mail | Y | DEH |
| 05/11/2010 | CHECK | R001 - REST | 2010053 | 00163831 | $99.00 | D001 | R001 | CHECK | | MAB |
| 06/09/2010 | RECEIPT | R001 - REST | 2010063 | 13533400 | $99.00 | D001 | R001 | Mail | Y | DEH |
| 06/15/2010 | CHECK | R001 - REST | 2010065 | 00164961 | $99.00 | D001 | R001 | CHECK | | MAB |
| 07/06/2010 | RECEIPT | R001 - REST | 2010072 | 13602100 | $99.00 | D001 | R001 | Mail | Y | DEH |
| 07/08/2010 | CHECK | R001 - REST | 2010073 | 00165931 | $99.00 | D001 | R001 | CHECK | | MAB |
| 08/02/2010 | RECEIPT | R001 - REST | 2010079 | 13757300 | $99.00 | D001 | R001 | Mail | Y | DEH |
| 08/03/2010 | CHECK | R001 - REST | 2010081 | 00166771 | $99.00 | D001 | R001 | CHECK | | MAB |
| 09/13/2010 | RECEIPT | R001 - REST | 2010093 | 13923200 | $99.00 | D001 | R001 | Mail | Y | DEH |
| 09/14/2010 | CHECK | R001 - REST | 2010094 | 00168271 | $99.00 | D001 | R001 | CHECK | | MAB |
| 10/08/2010 | RECEIPT | R001 - REST | 2011004 | 14040200 | $99.00 | D001 | R001 | Mail | Y | DEH |
| 10/12/2010 | CHECK | R001 - REST | 2011005 | 00169421 | $99.00 | D001 | R001 | CHECK | | MAB |
| 11/17/2010 | RECEIPT | R001 - REST | 2011016 | 14270500 | $99.00 | D001 | R001 | Mail | Y | DEH |
| 11/23/2010 | CHECK | R001 - REST | 2011018 | 00170931 | $99.00 | D001 | R001 | CHECK | | MAB |
| 12/03/2010 | RECEIPT | R001 - REST | 2011021 | 14373000 | $99.00 | D001 | R001 | Mail | Y | DEH |
| 12/07/2010 | CHECK | R001 - REST | 2011022 | 00171441 | $99.00 | D001 | R001 | CHECK | | MAB |
| 01/11/2011 | RECEIPT | R001 - REST | 2011033 | 14517500 | $99.00 | D001 | R001 | Mail | Y | DEH |
| 01/18/2011 | CHECK | R001 - REST | 2011035 | 00172721 | $99.00 | D001 | R001 | CHECK | | MAB |
| 02/07/2011 | RECEIPT | R001 - REST | 2011041 | 14663800 | $99.00 | D001 | R001 | Money Order | Y | VIL |
| 02/08/2011 | CHECK | R001 - REST | 2011042 | 00173511 | $99.00 | D001 | R001 | CHECK | | MAB |
| 03/09/2011 | RECEIPT | R001 - REST | 2011051 | 14812700 | $99.00 | D001 | R001 | Mail | Y | DEH |
| 03/15/2011 | CHECK | R001 - REST | 2011053 | 00175081 | $99.00 | D001 | R001 | CHECK | | MAB |
| 04/11/2011 | RECEIPT | R001 - REST | 2011061 | 14896800 | $99.00 | D001 | R001 | Mail | Y | DEH |
| 04/12/2011 | CHECK | R001 - REST | 2011062 | 00176281 | $99.00 | D001 | R001 | CHECK | | MAB |
| 05/12/2011 | RECEIPT | R001 - REST | 2011072 | 15093900 | $99.00 | D001 | R001 | Mail | Y | DEH |
| 05/17/2011 | CHECK | R001 - REST | 2011073 | 00177581 | $99.00 | D001 | R001 | CHECK | | MAB |
| 06/01/2011 | RECEIPT | R001 - REST | 2011077 | 15159100 | $99.00 | D001 | R001 | Mail | Y | DEH |
| 06/02/2011 | CHECK | R001 - REST | 2011079 | 00178281 | $99.00 | D001 | R001 | CHECK | | MAB |
| 07/06/2011 | RECEIPT | R001 - REST | 2011095 | 15331900 | $99.00 | D001 | R001 | Mail | Y | DEH |
| 07/12/2011 | CHECK | R001 - REST | 2011098 | 00180361 | $99.00 | D001 | R001 | CHECK | | MAB |
| 08/05/2011 | RECEIPT | R001 - REST | 2011107 | 15398600 | $99.00 | D001 | R001 | Mail | Y | VIL |
| 08/09/2011 | CHECK | R001 - REST | 2011108 | 00181981 | $99.00 | D001 | R001 | CHECK | | MAB |
| 09/07/2011 | RECEIPT | R001 - REST | 2011123 | 15529100 | $99.00 | D001 | R001 | Mail | Y | VIL |

| Date | Type | | Code | Ref | Amount | D | R | Method | Y | Loc |
|---|---|---|---|---|---|---|---|---|---|---|
| 09/13/2011 | CHECK | R001 - REST | 2011125 | 00183481 | $99.00 | D001 | R001 | CHECK | | MAB |
| 09/30/2011 | RECEIPT | R001 - REST | 2012001 | 15686300 | $99.00 | D001 | R001 | Check | Y | DOO |
| 10/04/2011 | CHECK | R001 - REST | 2012002 | 00184281 | $99.00 | D001 | R001 | CHECK | | MAB |
| 11/01/2011 | RECEIPT | R001 - REST | 2012015 | 15773900 | $99.00 | D001 | R001 | Mail | Y | VIL |
| 11/08/2011 | CHECK | R001 - REST | 2012018 | 00185771 | $99.00 | D001 | R001 | CHECK | | MAB |
| 12/05/2011 | RECEIPT | R001 - REST | 2012029 | 15895000 | $99.00 | D001 | R001 | Mail | Y | VIL |
| 12/06/2011 | CHECK | R001 - REST | 2012030 | 00187051 | $99.00 | D001 | R001 | CHECK | | MAB |
| 01/04/2012 | RECEIPT | R001 - REST | 2012043 | 15983700 | $99.00 | D001 | R001 | Mail | Y | MAB |
| 01/10/2012 | CHECK | R001 - REST | 2012045 | 00188341 | $99.00 | D001 | R001 | CHECK | | MAB |
| 02/02/2012 | RECEIPT | R001 - REST | 2012057 | 16133700 | $99.00 | D001 | R001 | Mail | Y | VIL |
| 02/07/2012 | CHECK | R001 - REST | 2012058 | 00189681 | $99.00 | D001 | R001 | CHECK | | MAB |
| 03/01/2012 | RECEIPT | R001 - REST | 2012070 | 16246800 | $99.00 | D001 | R001 | Mail | Y | VIL |
| 03/07/2012 | CHECK | R001 - REST | 2012072 | 00191491 | $99.00 | D001 | R001 | CHECK | | MAB |
| 04/03/2012 | RECEIPT | R001 - REST | 2012085 | 16404800 | $99.00 | D001 | R001 | Mail | Y | VIL |
| 04/11/2012 | CHECK | R001 - REST | 2012088 | 00193331 | $99.00 | D001 | R001 | CHECK | | MAB |
| 05/02/2012 | RECEIPT | R001 - REST | 2012097 | 16519900 | $99.00 | D001 | R001 | Mail | Y | VIL |
| 05/02/2012 | RECEIPT | R001 - REST | 2012098 | 16522700 | $801.00 | D001 | R001 | Tax Intercept | Y | VIL |
| 05/08/2012 | CHECK | R001 - REST | 2012100 | 00194801 | $900.00 | D001 | R001 | CHECK | | MAB |
| 06/05/2012 | RECEIPT | R001 - REST | 2012113 | 16622700 | $99.00 | D001 | R001 | Mail | Y | VIL |
| 06/12/2012 | CHECK | R001 - REST | 2012116 | 00198261 | $99.00 | D001 | R001 | CHECK | | MAB |
| 07/02/2012 | RECEIPT | R001 - REST | 2012124 | 16769200 | $99.00 | D001 | R001 | Mail | Y | VIL |
| 07/03/2012 | CHECK | R001 - REST | 2012127 | 00197271 | $99.00 | D001 | R001 | CHECK | | MAB |
| 08/06/2012 | RECEIPT | R001 - REST | 2012141 | 16901200 | $99.00 | D001 | R001 | Mail | Y | VIL |
| 08/07/2012 | CHECK | R001 - REST | 2012142 | 00199131 | $99.00 | D001 | R001 | CHECK | | MAB |
| 09/05/2012 | CHECK | R001 - REST | 2012156 | 00200561 | $99.00 | D001 | R001 | CHECK | | MAB |
| 09/05/2012 | RECEIPT | R001 - REST | 2012155 | 17009800 | $99.00 | D001 | R001 | Mail | Y | VIL |
| 10/02/2012 | RECEIPT | R001 - REST | 2012166 | 17125800 | $99.00 | D001 | R001 | Mail | Y | VIL |
| 10/03/2012 | CHECK | R001 - REST | 2013005 | 00202211 | $99.00 | D001 | R001 | CHECK | | MAB |
| 11/05/2012 | RECEIPT | R001 - REST | 2013019 | 17262900 | $99.00 | D001 | R001 | Mail | Y | VIL |
| 11/06/2012 | CHECK | R001 - REST | 2013020 | 00203951 | $99.00 | D001 | R001 | CHECK | | MAB |
| 12/04/2012 | RECEIPT | R001 - REST | 2013031 | 17336800 | $99.00 | D001 | R001 | Mail | Y | VIL |
| 12/11/2012 | CHECK | R001 - REST | 2013034 | 00205861 | $99.00 | D001 | R001 | CHECK | | MAB |
| 01/02/2013 | RECEIPT | R001 - REST | 2013041 | 17458400 | $99.00 | D001 | R001 | Mail | Y | VIL |
| 01/03/2013 | CHECK | R001 - REST | 2013042 | 00206331 | $99.00 | D001 | R001 | CHECK | | MAB |
| 02/04/2013 | RECEIPT | R001 - REST | 2013057 | 17591600 | $99.00 | D001 | R001 | Check | Y | CWM |
| 02/06/2013 | CHECK | R001 - REST | 2013062 | 00208381 | $99.00 | D001 | R001 | CHECK | | MAB |
| 03/04/2013 | RECEIPT | R001 - REST | 2013078 | 17746600 | $99.00 | D001 | R001 | Check | Y | DAC |
| 03/06/2013 | CHECK | R001 - REST | 2013081 | 00209831 | $99.00 | D001 | R001 | CHECK | | MAB |
| 04/02/2013 | RECEIPT | R001 - REST | 2013095 | 17896800 | $99.00 | D001 | R001 | Check | Y | DAC |
| 04/09/2013 | CHECK | R001 - REST | 2013100 | 00218161 | $99.00 | D001 | R001 | CHECK | | MAB |
| 05/07/2013 | RECEIPT | R001 - REST | 2013119 | 18044600 | $99.00 | D001 | R001 | Check | Y | DAC |
| 05/14/2013 | CHECK | R001 - REST | 2013123 | 00219621 | $99.00 | D001 | R001 | CHECK | | MAB |
| 06/04/2013 | RECEIPT | R001 - REST | 2013134 | 18148600 | $99.00 | D001 | R001 | Check | Y | DAC |
| 06/11/2013 | CHECK | R001 - REST | 2013139 | 00220811 | $99.00 | D001 | R001 | CHECK | | MAB |
| 07/01/2013 | RECEIPT | R001 - REST | 2013150 | 18250800 | $99.00 | D001 | R001 | Check | Y | DAC |
| 07/02/2013 | CHECK | R001 - REST | 2013152 | 00221821 | $99.00 | D001 | R001 | CHECK | | MAB |
| 08/02/2013 | RECEIPT | R001 - REST | 2013170 | 18377000 | $99.00 | D001 | R001 | Mail | Y | VIL |
| 08/06/2013 | CHECK | R001 - REST | 2013171 | 00223541 | $99.00 | D001 | R001 | CHECK | | MAB |
| 09/03/2013 | CHECK | R001 - REST | 2013188 | 00225051 | $99.00 | D001 | R001 | CHECK | | MAB |
| 09/03/2013 | RECEIPT | R001 - REST | 2013186 | 18475900 | $99.00 | D001 | R001 | Check | Y | DAC |
| 10/07/2013 | RECEIPT | R001 - REST | 2014004 | 18613500 | $99.00 | D001 | R001 | Check | Y | DAC |
| 10/08/2013 | CHECK | R001 - REST | 2014005 | 00226371 | $99.00 | D001 | R001 | CHECK | | MAB |
| 11/04/2013 | RECEIPT | R001 - REST | 2014020 | 18722500 | $99.00 | D001 | R001 | Check | Y | DAC |
| 11/05/2013 | CHECK | R001 - REST | 2014022 | 00227561 | $99.00 | D001 | R001 | CHECK | | MAB |

| 12/03/2013 | RECEIPT | R001 - REST | 2014035 | 18819600 | $99.00 | D001 | R001 | Cash | Y | | DAC |
| 12/10/2013 | CHECK | R001 - REST | 2014039 | 00229201 | $99.00 | D001 | R001 | CHECK | | | MAB |
| 01/02/2014 | RECEIPT | R001 - REST | 2014049 | 18905900 | $99.00 | D001 | R001 | Check | Y | | DAC |
| 01/07/2014 | CHECK | R001 - REST | 2014050 | 00230321 | $99.00 | D001 | R001 | CHECK | | | MAB |
| 02/03/2014 | RECEIPT | R001 - REST | 2014063 | 19020400 | $82.48 | D001 | R001 | Check | Y | | DAC |
| 02/03/2014 | RECEIPT | SHER - SHERIFF SVC | 2014063 | 19020401 | $16.52 | D001 | 000 | Check | N | | DAC |
| 02/05/2014 | CHECK | R001 - REST | 2014066 | 00231461 | $82.48 | D001 | R001 | CHECK | | | MAB |
| 03/03/2014 | RECEIPT | SHER - SHERIFF SVC | 2014078 | 19135300 | $100.00 | D001 | 000 | Check | N | | DAC |
| 04/03/2014 | RECEIPT | SHER - SHERIFF SVC | 2014097 | 19250600 | $100.00 | D001 | 000 | Check | N | | DAC |
| 04/10/2014 | VOID CHECK X | R001 - REST | 2014101 | 00185771 | $99.00 | D001 | R001 | VOID CHECK X | X | | MAB |
| 04/15/2014 | CHECK | R001 - REST | 2014103 | 00234611 | $99.00 | D001 | R001 | CHECK | | | MAB |
| 05/13/2014 | RECEIPT | SHER - SHERIFF SVC | 2014120 | 19398400 | $103.48 | D001 | 000 | Tax Intercept | N | | MAB |
| 05/13/2014 | RECEIPT | F001 - REFUND | 2014120 | 19398401 | $398.00 | D001 | D001 | Tax Intercept | N | | MAB |
| 05/20/2014 | CHECK | F001 - REFUND | 2014124 | 00236281 | $398.00 | D001 | D001 | CHECK | | | MAB |

## SJIS Witness List

| Witness # | Name | Requesting Party | Attorney | Subpoena Date Issued | Issued Type | Date Served | Service Type |
|---|---|---|---|---|---|---|---|
| R001 | PRATTVILLE HIGH SCHOOL | 000 | | | | | |
| W001 | LORI ABBOTT | 000 | | 10/17/2001 | | | |
| W002 | RENEE BULGER | 000 | | 10/09/2001 | | | |
| W003 | CHERI COOK | 000 | | 10/09/2001 | | | |
| W004 | LANELL TATUM | 000 | | 10/09/2001 | | | |
| W005 | LORI CROSBY | 000 | | 10/09/2001 | | | |
| W006 | MONA KORNEGAY | 000 | | 10/09/2001 | | | |
| W007 | CINDY CHESTER | 000 | | 10/09/2001 | | | |
| W008 | DEBORAH WOODFIN | 000 | | 10/09/2001 | | | |
| W009 | TAMMY VAN VALKENBURG | 000 | | 10/09/2001 | | | |
| W010 | SHIRLEY BRADLEY | 000 | | 10/09/2001 | | | |
| W011 | SARAH MURCHINSON | 000 | | 10/09/2001 | | | |
| W012 | PAM SMITH | 000 | | 10/09/2001 | | | |
| W013 | CINDY CANNADY | 000 | | 10/09/2001 | | | |
| W014 | CASEY CHESTER | 000 | | 10/09/2001 | | | |
| W015 | JOHANNA BRADLEY | 000 | | 10/09/2001 | | | |
| W016 | KELLI CREAMER | 000 | | 10/09/2001 | | | |
| W017 | SALLY JOINES | 000 | | 10/09/2001 | | | |
| W018 | CINDY HINES | 000 | | 10/09/2001 | | | |
| W019 | JANICE GOSNELL | 000 | | 10/09/2001 | | | |
| W020 | KATRINA MCLEOD | 000 | | 10/09/2001 | | | |
| W021 | TRACY BOOKER | 000 | | 10/09/2001 | | | |
| W022 | JENNIFER SMITH | 000 | | 10/09/2001 | | | |
| W023 | CHIP CLEVELAND | 000 | | 10/09/2001 | | | |
| W024 | JOANN MULLIGAN | 000 | | 10/09/2001 | | | |
| W025 | RUBY BEAVERS | 000 | | 10/09/2001 | | | |
| W026 | MARY STOUDEMIRE | 000 | | 10/09/2001 | | | |
| W027 | KAY HINES | 000 | | 10/09/2001 | | | |
| W028 | LYNN CROMWELL | 000 | | 10/09/2001 | | | |
| W029 | STEPHANIE WILLIAMS | 000 | | 10/09/2001 | | | |

| | | | |
|---|---|---|---|
| W030 | MICHELLE LAW | 000 | 10/09/2001 |
| W031 | KIMBERLY BURKHALTER | 000 | 10/09/2001 |
| W032 | LEAH JOHNSTON | 000 | 10/09/2001 |
| W033 | AARON NELSON | 000 | 10/09/2001 |
| W034 | SANDRA MILTON | 000 | 10/09/2001 |
| W035 | GLYNN LOTT | 000 | 10/09/2001 |
| W036 | DENE CLEVELAND | 000 | 10/09/2001 |
| W037 | WILLIAM LONG | 000 | 10/09/2001 |
| W038 | LOIS FINDLAY | 000 | 10/09/2001 |
| W039 | SUSAN LAWRENCE | 000 | 10/09/2001 |
| W040 | RONALD JONES, CHIEF EXAMINER | 000 | 10/09/2001 |
| W041 | EMMETT WHITE | 000 | 10/09/2001 |
| W042 | ROY JOHNSON | 000 | 10/09/2001 |
| W043 | LARRY BUTLER | 000 | 10/09/2001 |
| W044 | REX MCCORD | 000 | 10/11/2001 |
| W045 | DELOIS JACKSON | 000 | 10/11/2001 |
| W046 | TONITA ROMERO | 000 | 10/11/2001 |
| W047 | SHELLY WAINWRIGHT | 000 | 10/11/2001 |
| W048 | CHRISTINE MICHELLE ROLAND | 000 | 10/11/2001 |
| W049 | BARBARA HAMMETT | 000 | 10/11/2001 |
| W050 | JUDY VINSON | 000 | 10/11/2001 |
| W051 | KIM SAFFOLD | 000 | 10/11/2001 |
| W052 | KIM MCKINLEY | 000 | 10/11/2001 |

## Case Action Summary

| Date | Time | Code | Comments | Operator |
|---|---|---|---|---|
| 8/4/2000 | 10:23 AM | TEXT | INDICTMENT, CAPIAS, BOND, ALABAMA UNIFORM ARREST | DEM |
| 8/4/2000 | 10:23 AM | TEXT | REPORT | DEM |
| 8/9/2000 | 10:23 AM | TEXT | NOTICE OF APPEARANCE BY THE AG'S OFFICE | DEM |
| 8/25/2000 | 2:16 PM | CASU | CASE ACTION SUMMARY PRINTED        (AR08) | DEM |
| 8/25/2000 | 2:37 PM | FESH | FEE SHEET PRINTED            (AR08) | DEM |
| 8/25/2000 | 2:46 PM | ATTH | CAS ATTACHMENT PRINTED        (AR08) | DEM |
| 8/31/2000 | 10:23 AM | TEXT | PLEA OF NOT GUILTY & WAIVER OF ARRAIGNMENT FILED | DEM |
| 8/31/2000 | 10:23 AM | TEXT | ORDER AT ARRAIGNMENT FILED | DEM |
| 9/7/2000 | 10:11 AM | ATY1 | ATTORNEY FOR DEFENDANT: JACKSON MICHEAL S  (AR10) | DEM |
| 9/14/2000 | 10:23 AM | TEXT | MOTION TO DISMISS FILED | DEM |
| 9/20/2000 | 10:23 AM | TEXT | HEARING ON DEFTS MOTION TO DISMISS SET SEPT 29, | DEM |
| 9/20/2000 | 10:23 AM | TEXT | 2000 AT 11:00 A.M.    JBB | DEM |
| 9/21/2000 | 10:23 AM | TEXT | COPY TO JACKSON & BILLINGSLEA | DEM |
| 9/27/2000 | 10:23 AM | TEXT | JOINT MOTION TO CONTINUE HEARING ON MOTION TO | DEM |
| 9/27/2000 | 10:23 AM | TEXT | DISMISS INDICTMENT FILED | DEM |
| 9/29/2000 | 10:23 AM | TEXT | HEARING ON MOTION TO DISMISS RESET FOR NOV. 3, | DEM |
| 9/29/2000 | 10:23 AM | TEXT | 2000 AT 10:00 A.M.    JBB | DEM |
| 9/29/2000 | 10:38 AM | TEXT | COPIES TO ATTORNEYS WHILE WE WERE IN COURTROOM  DM | DEM |
| 9/29/2000 | 10:38 AM | TEXT | MOTION TO SUPPRESS FILED | DEM |
| 10/11/2000 | 10:38 AM | TEXT | HEARING ON MOTION TO SUPPRESS SET NOV. 3, 2000 | DEM |
| 10/11/2000 | 10:38 AM | TEXT | AT 10:00 A.M.   JBB  (DM) | DEM |
| 10/12/2000 | 10:38 AM | TEXT | COPY TO AG & JACKSON | DEM |
| 10/16/2000 | 10:38 AM | TEXT | MOTION TO CONTINUE TRIAL FILED | DEM |
| 11/1/2000 | 10:38 AM | TEXT | STATE'S OPPOSITION TO DEFENDANT'S MOTION TO | DEM |
| 11/1/2000 | 10:38 AM | TEXT | SUPPRESS FILED | DEM |
| 11/1/2000 | 10:36 AM | TEXT | STATE'S OPPOSITION TO DEFENDANT'S MOTION TO | DEM |
| 11/1/2000 | 10:38 AM | TEXT | DISMISS FILED | DEM |

| | | | | | |
|---|---|---|---|---|---|
| 11/3/2000 | 10:38 AM | TEXT | ORDER FILED - MOTION TO DISMISS INDICTMENT DENIED | | DEM |
| 11/3/2000 | 10:38 AM | TEXT | ORDER FILED - MOTION TO SUPPRESS DENIED | | DEM |
| 11/3/2000 | 10:38 AM | TEXT | ORDER FILED - MOTION TO CONTINUE GRANTED, CASE IS | | DEM |
| 11/3/2000 | 10:44 AM | TEXT | CONTINUED AND RESET FOR THE NEXT TERM OF COURT | | DEM |
| 11/3/2000 | 10:44 AM | TEXT | PLEA DAY 4/25/01 9:00 A.M.  TRIALS 5/14/01 AT | | DEM |
| 11/3/2000 | 10:44 AM | TEXT | 8:30 A.M. | | DEM |
| 12/5/2000 | 10:44 AM | TEXT | COPY TO BILLINGSLEA & JACKSON | | DEM |
| 4/17/2001 | 10:44 AM | TEXT | RENEWED MOTION TO SUPPRESS FILED | | DEM |
| 4/17/2001 | 10:44 AM | TEXT | RENEWED MOTION TO DISMISS FILED | | DEM |
| 4/17/2001 | 10:44 AM | TEXT | MOTION TO CONTINUE TRIAL FILED | | DEM |
| 4/18/2001 | 10:44 AM | TEXT | STATE'S RENEWED OPPOSITION TO DEFENDANT'S RENEWED | | DEM |
| 4/18/2001 | 10:44 AM | TEXT | MOTION TO SUPPRESS FILED | | DEM |
| 4/18/2001 | 10:44 AM | TEXT | STATE'S RENEWED OPPOSITION TO DEFENDANT'S RENEWED | | DEM |
| 4/18/2001 | 10:44 AM | TEXT | MOTION TO DISMISS FILED | | DEM |
| 4/18/2001 | 10:44 AM | TEXT | STATE'S OPPOSITION TO DEFENDANT'S MOTION TO | | DEM |
| 4/18/2001 | 10:44 AM | TEXT | CONTINUE FILED | | DEM |
| 4/24/2001 | 11:02 AM | TEXT | MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS | | DEM |
| 4/24/2001 | 11:02 AM | TEXT | MOTION TO SUPPRESS FILED | | DEM |
| 4/24/2001 | 11:02 AM | TEXT | EVIDENTIARY SUBMITTAL IN SUPPORT OF MOTION TO | | DEM |
| 4/24/2001 | 11:02 AM | TEXT | SUPPRESS AND MOTION FO DISMISS FILED | | DEM |
| 4/24/2001 | 12:35 PM | ATY2 | ATTORNEY FOR DEFENDANT: PATTY WILLIAM F   (AR10) | | DEM |
| 4/25/2001 | 11:02 AM | TEXT | COUNSEL PRESENT, HEARING ON RENEWED MOTION TO | | DEM |
| 4/25/2001 | 11:02 AM | TEXT | SUPPRESS/DISMISS TAKEN UNDER ADVISEMENT. THE STATE | | DEM |
| 4/25/2001 | 11:02 AM | TEXT | HAS FAILED TO FILE ANYTHING OF A SUBSTANTIVE | | DEM |
| 4/25/2001 | 11:02 AM | TEXT | NATURE REGARDING THE CLAIMS OF THE DEFT & THERE- | | DEM |
| 4/25/2001 | 11:02 AM | TEXT | FORE IT APPEARS INCUMBENT ON THE COURT TO PERFORM | | DEM |
| 4/25/2001 | 11:02 AM | TEXT | ITS OWN RESEARCH IN AN EFFORT TO ACCURATELY ANSWER | | DEM |
| 4/25/2001 | 11:02 AM | TEXT | THE ISSUES RAISED BY THE DEFENSE.  CASE | | DEM |
| 4/25/2001 | 11:02 AM | TEXT | CONTINUED.   JBB | | DEM |
| 4/26/2001 | 11:02 AM | TEXT | STATE'S MOTION FOR DISCOVERY FILED | | DEM |
| 5/2/2001 | 1:13 AM | TEXT | RENEWED MOTION TO DISMISS FILED | | DEM |
| 5/2/2001 | 1:13 AM | TEXT | STATE'S SUPPLEMENTAL RESPONSE TO DEFENDANT'S | | DEM |
| 5/2/2001 | 1:13 AM | TEXT | RENEWED MOTION TO SUPPRESS FILED | | DEM |
| 5/2/2001 | 11:02 AM | TEXT | STATE'S SUPPLEMENTAL RESPONSE TO DEFENDANT'S | | DEM |
| 5/3/2001 | 8:30 AM | PRTY | PARTY ADDED  W001  LORI ABBOTT       (AW21) | | DEM |
| 5/3/2001 | 8:30 AM | PRTY | PARTY ADDED  W002  RENEE BULGER       (AW21) | | DEM |
| 5/3/2001 | 8:31 AM | PRTY | PARTY ADDED  W003  CHERI COOK       (AW21) | | DEM |
| 5/3/2001 | 8:32 AM | PRTY | PARTY ADDED  W004  LANELL TATUM       (AW21) | | DEM |
| 5/3/2001 | 8:32 AM | PRTY | PARTY ADDED  W005  LORI CROSBY       (AW21) | | DEM |
| 5/3/2001 | 8:33 AM | PRTY | PARTY ADDED  W006  MONA KORNEGAY       (AW21) | | DEM |
| 5/3/2001 | 8:33 AM | PRTY | PARTY ADDED  W007  CINDY CHESTER       (AW21) | | DEM |
| 5/3/2001 | 8:33 AM | PRTY | PARTY ADDED  W008  DEBORAH WOODFIN       (AW21) | | DEM |
| 5/3/2001 | 8:33 AM | PRTY | PARTY ADDED  W009  TAMMY VAN VALKENBURG   (AW21) | | DEM |
| 5/3/2001 | 8:33 AM | PRTY | PARTY ADDED  W010  SHIRLEY BRADLEY       (AW21) | | DEM |
| 5/3/2001 | 8:34 AM | PRTY | PARTY ADDED  W011  SARAH MURCHINSON       (AW21) | | DEM |
| 5/3/2001 | 8:34 AM | PRTY | PARTY ADDED  W012  PAM SMITH       (AW21) | | DEM |
| 5/3/2001 | 8:34 AM | PRTY | PARTY ADDED  W013  CINDY CANNADY       (AW21) | | DEM |
| 5/3/2001 | 8:35 AM | PRTY | PARTY ADDED  W014  CASEY CHESTER       (AW21) | | DEM |
| 5/3/2001 | 8:35 AM | PRTY | PARTY ADDED  W015  JOHANNA BRADLEY       (AW21) | | DEM |
| 5/3/2001 | 8:35 AM | PRTY | PARTY ADDED  W016  KELLI CREAMER       (AW21) | | DEM |
| 5/3/2001 | 8:35 AM | PRTY | PARTY ADDED  W017  SALLY JOINES       (AW21) | | DEM |
| 5/3/2001 | 8:35 AM | PRTY | PARTY ADDED  W018  CINDY HINES       (AW21) | | DEM |
| 5/3/2001 | 8:36 AM | PRTY | PARTY ADDED  W019  JANICE GOSNELL       (AW21) | | DEM |

| | | | | |
|---|---|---|---|---|
| 5/3/2001 | 8:36 AM | PRTY | PARTY ADDED W020 KATRINA MCLEOD          (AW21) | DEM |
| 5/3/2001 | 8:36 AM | PRTY | PARTY ADDED W021 TRACY BOOKER          (AW21) | DEM |
| 5/3/2001 | 8:37 AM | PRTY | PARTY ADDED W022 JENNIFER SMITH          (AW21) | DEM |
| 5/3/2001 | 8:37 AM | PRTY | PARTY ADDED W023 CHIP CLEVELAND          (AW21) | DEM |
| 5/3/2001 | 8:37 AM | PRTY | PARTY ADDED W024 JOANN MULLIGAN          (AW21) | DEM |
| 5/3/2001 | 8:37 AM | PRTY | PARTY ADDED W025 RUBY BEAVERS          (AW21) | DEM |
| 5/3/2001 | 8:38 AM | PRTY | PARTY ADDED W026 MARY STOUDEMIRE          (AW21) | DEM |
| 5/3/2001 | 8:38 AM | PRTY | PARTY ADDED W027 KAY HINES          (AW21) | DEM |
| 5/3/2001 | 8:39 AM | PRTY | PARTY ADDED W028 LYNN CROMWELL          (AW21) | DEM |
| 5/3/2001 | 8:39 AM | PRTY | PARTY ADDED W029 STEPHANIE WILLIAMS          (AW21) | DEM |
| 5/3/2001 | 8:39 AM | PRTY | PARTY ADDED W030 MICHELLE LAW          (AW21) | DEM |
| 5/3/2001 | 8:40 AM | PRTY | PARTY ADDED W031 KIMBELRY BURKHALTER          (AW21) | DEM |
| 5/3/2001 | 8:40 AM | PRTY | PARTY ADDED W032 LEAH JOHNSTON          (AW21) | DEM |
| 5/3/2001 | 8:41 AM | PRTY | PARTY ADDED W033 AARON NELSON          (AW21) | DEM |
| 5/3/2001 | 8:41 AM | PRTY | PARTY ADDED W034 SANDRA MILTON          (AW21) | DEM |
| 5/3/2001 | 8:41 AM | PRTY | PARTY ADDED W035 GLYNN LOTT          (AW21) | DEM |
| 5/3/2001 | 8:42 AM | PRTY | PARTY ADDED W036 DENE CLEVELAND          (AW21) | DEM |
| 5/3/2001 | 8:42 AM | PRTY | PARTY ADDED W037 WILLIAM LONG          (AW21) | DEM |
| 5/3/2001 | 8:42 AM | PRTY | PARTY ADDED W038 LOIS FINDLAY          (AW21) | DEM |
| 5/3/2001 | 8:44 AM | PRTY | PARTY ADDED W039 SUSAN LAWRENCE          (AW21) | DEM |
| 5/3/2001 | 8:44 AM | PRTY | PARTY ADDED W040 RONALD JONES, CHIEF EXAMINER | DEM |
| 5/3/2001 | 8:44 AM | PRTY | PARTY ADDED W041 EMMETT WHITE          (AW21) | DEM |
| 5/3/2001 | 8:45 AM | PRTY | PARTY ADDED W042 ROY JOHNSON          (AW21) | DEM |
| 5/3/2001 | 8:45 AM | PRTY | PARTY ADDED W043 LARRY BUTLER          (AW21) | DEM |
| 5/3/2001 | 8:54 AM | PNME | PARTY W031 NAME CHANGED FROM: KIMBELRY BURKHALTER | DEM |
| 7/30/2001 | 10:36 AM | ATTH | CAS ATTACHMENT PRINTED          (AR08) | DEM |
| 7/30/2001 | 10:51 AM | ATTH | CAS ATTACHMENT PRINTED          (AR08) | CWM |
| 8/29/2001 | 10:40 AM | DAT1 | SET FOR: PLEA DOCKET ON 09/28/2001 AT 0900A (AR10) | DEM |
| 10/4/2001 | 3:56 PM | DAT2 | SET FOR: JURY TRIAL ON 10/22/2001 AT 0830A  (AR10) | DEM |
| 10/9/2001 | 4:39 PM | SUBP | WITNESS SUBPOENA ISSUED | DEM |
| 10/11/2001 | 11:32 AM | PRTY | PARTY ADDED W044 REX MCCORD          (AW21) | DEM |
| 10/11/2001 | 11:32 AM | ISSD | PARTY W044 ISSUED DATE: 10092001 TYPE:  (AW21) | DEM |
| 10/11/2001 | 11:32 AM | PRTY | PARTY ADDED W045 DELOIS JACKSON          (AW21) | DEM |
| 10/11/2001 | 11:33 AM | PRTY | PARTY ADDED W046 TONITA ROMERO          (AW21) | DEM |
| 10/11/2001 | 11:33 AM | PRTY | PARTY ADDED W047 SHELLY WAINWRIGHT          (AW21) | DEM |
| 10/11/2001 | 11:33 AM | PRTY | PARTY ADDED W048 CHRISTINE MICHELLE ROLAND(AW21) | DEM |
| 10/11/2001 | 11:34 AM | PRTY | PARTY ADDED W049 BARBARA HAMMETT          (AW21) | DEM |
| 10/11/2001 | 11:34 AM | PRTY | PARTY ADDED W050 JUDY VINSON          (AW21) | DEM |
| 10/11/2001 | 11:34 AM | PRTY | PARTY ADDED W051 KIM SAFFOLD          (AW21) | DEM |
| 10/11/2001 | 11:35 AM | PRTY | PARTY ADDED W052 KIM MCKINLEY          (AW21) | DEM |
| 10/11/2001 | 11:35 AM | SUBP | WITNESS SUBPOENA ISSUED TO W044 REX MCCORD  (AW21) | DEM |
| 10/11/2001 | 11:35 AM | SUBP | WITNESS SUBPOENA ISSUED TO W045 DELOIS JACKSON | DEM |
| 10/11/2001 | 11:35 AM | SUBP | WITNESS SUBPOENA ISSUED TO W046 TONITA ROMERO | DEM |
| 10/11/2001 | 11:35 AM | SUBP | WITNESS SUBPOENA ISSUED TO W047 SHELLY WAINWRIGHT | DEM |
| 10/11/2001 | 11:35 AM | SUBP | WITNESS SUBPOENA ISSUED TO W048 CHRISTINE MICHELLE | DEM |
| 10/11/2001 | 11:35 AM | SUBP | WITNESS SUBPOENA ISSUED TO W049 BARBARA HAMMETT | DEM |
| 10/11/2001 | 11:36 AM | SUBP | WITNESS SUBPOENA ISSUED TO W050 JUDY VINSON (AW21) | DEM |
| 10/11/2001 | 11:36 AM | SUBP | WITNESS SUBPOENA ISSUED TO W051 KIM SAFFOLD (AW21) | DEM |
| 10/11/2001 | 11:36 AM | SUBP | WITNESS SUBPOENA ISSUED TO W052 KIM MCKINLEY(AW21) | DEM |
| 10/17/2001 | 8:48 AM | PAD1 | PARTY W001 ADD1 CHANGED FROM: 907 TROTTER TRAIL | DEM |
| 10/17/2001 | 8:48 AM | PZCS | PARTY W001 ZCS CHANGED FROM: 36066 0000 PRATTVILLE | DEM |
| 10/17/2001 | 8:48 AM | SUBP | WITNESS SUBPOENA ISSUED TO W001 LORI ABBOTT (AW21) | DEM |
| 10/24/2001 | 10:03 AM | DJID | DISPOSITION JUDGE ID CHANGED FROM:    TO: JBB | DEM |

| | | | | |
|---|---|---|---|---|
| 10/24/2001 | 10:03 AM | DISP | CHARGE 01: USE POSITION-PERSON/#CNTS: 001  (AR10) | DEM |
| 10/24/2001 | 10:03 AM | DISP | CHARGE 02 DISPOSED BY: DISMISSED ON: 10/24/2001 | DEM |
| 10/24/2001 | 10:03 AM | DAT3 | SET FOR: SENTENCING DKT/HE ON 12/14/2001 AT 0900A | DEM |
| 10/24/2001 | 10:03 AM | DISP | CHARGE 02: THEFT OF PROP 1ST/#CNTS: 001  (AR01) | DEM |
| 10/24/2001 | 10:03 AM | DISP | CHARGE 01 DISPOSED BY: GUILTY PLEA ON: 10/24/2001 | DEM |
| 11/1/2001 | 2:21 AM | FELN | CONVICTION REPORT TO BOARD OF REGISTRARS | DEM |
| 12/17/2001 | 1:45 PM | ATTH | CAS ATTACHMENT PRINTED  (AR08) | DEM |
| 12/17/2001 | 2:13 PM | CH01 | DEFENDANT SENTENCED ON: 12/14/2001  (AR05) | DEM |
| 12/17/2001 | 2:13 PM | CH01 | SPLIT SENTENCE PROVISION ORDERED BY THE COURT | DEM |
| 12/17/2001 | 2:13 PM | CH01 | SENTENCE TO BEGIN ON: 12/14/2001  (AR05) | DEM |
| 12/17/2001 | 2:13 PM | CH01 | IMPOSED CONFINEMENT: 030 DAYS  (AR05) | DEM |
| 12/17/2001 | 2:13 PM | CH01 | SUSPENDED CONFINEMENT: 04 YEARS, 11 MONTHS  (AR05) | DEM |
| 12/17/2001 | 2:13 PM | CH01 | 3CVC PROVISION ORDERED BY THE COURT  (AR05) | DEM |
| 12/17/2001 | 2:13 PM | CH01 | 3CVC AMOUNT ORDERED: $50.00  (AR05) | DEM |
| 12/17/2001 | 2:13 PM | CH01 | HISTORY FEE PROVISION ORDERED BY THE COURT (AR05) | DEM |
| 12/17/2001 | 2:13 PM | CH01 | CVCC PROVISION ORDERED BY THE COURT  (AR05) | DEM |
| 12/17/2001 | 2:13 PM | CH01 | SUBPOENA FEE PROVISION ORDERED BY THE COURT (AR05) | DEM |
| 12/17/2001 | 2:13 PM | CH01 | JAIL CREDIT: 001 DAYS  (AR05) | DEM |
| 12/17/2001 | 2:13 PM | CH01 | PROBATION OF: 03 YEARS  (AR05) | DEM |
| 12/17/2001 | 2:13 PM | CH01 | JAIL CONFINEMENT ORDERED BY THE COURT  (AR05) | DEM |
| 12/17/2001 | 2:13 PM | CH01 | COST PROVISION ORDERED BY THE COURT  (AR05) | DEM |
| 12/17/2001 | 2:13 PM | CH01 | TOTAL CONFINEMENT: 04 YR, 11 MO, 030 DAYS  (AR05) | DEM |
| 12/17/2001 | 2:32 PM | CH01 | RESTITUTION FOR R001 ORDERED BY THE COURT  (AR05) | DEM |
| 12/17/2001 | 2:32 PM | CH01 | R001 REST AMOUNT ORDERED: $14929.48  (AR05) | DEM |
| 12/17/2001 | 2:35 PM | D001 | ENFORCEMENT STATUS SET TO: "J"  (FE52) | DEM |
| 12/17/2001 | 2:35 PM | D001 | FREQUENCY AMOUNT SET TO: $50.00  (FE52) | DEM |
| 12/17/2001 | 2:35 PM | D001 | PAYMENT FREQUENCY SET TO: "M"  (FE52) | DEM |
| 12/17/2001 | 2:38 PM | TRSC | TRANSCRIPT OF RECORD ISSUED: 12/17/2001  (AR08) | DEM |
| 2/1/2002 | 11:14 AM | D001 | PAYMENT DUE DATE SET TO: 03/15/2002  (FE52) | SAL |
| 3/1/2002 | 11:55 AM | D001 | PAYMENT DUE DATE SET TO: 05/13/2002  (FE52) | DEM |
| 4/2/2002 | 3:59 PM | D001 | PAYMENT DUE DATE SET TO: 07/11/2002  (FE52) | DEM |
| 5/3/2002 | 11:48 AM | D001 | PAYMENT DUE DATE SET TO: 09/08/2002  (FE52) | SAL |
| 6/6/2002 | 10:34 AM | D001 | PAYMENT DUE DATE SET TO: 11/06/2002  (FE52) | DEM |
| 6/11/2002 | 1:34 PM | JFEL | JUROR FELONY FLAG SET ON FOR INDIVIDUAL  (AR10) | DEM |
| 6/11/2002 | 1:34 PM | DAT4 | SET FOR: NIGHT COURT ON 06/12/2002 AT 0600P (AR10) | DEM |
| 7/16/2002 | 4:30 PM | D001 | PAYMENT DUE DATE SET TO: 01/04/2003  (FE52) | DEM |
| 8/5/2002 | 4:35 PM | D001 | PAYMENT DUE DATE SET TO: 03/04/2003  (FE52) | DEM |
| 9/6/2002 | 10:55 AM | D001 | PAYMENT DUE DATE SET TO: 05/02/2003  (FE52) | DEM |
| 10/4/2002 | 2:30 PM | D001 | PAYMENT DUE DATE SET TO: 05/31/2003  (FE52) | DEM |
| 11/12/2002 | 1:33 PM | D001 | PAYMENT DUE DATE SET TO: 07/29/2003  (FE52) | DEM |
| 11/12/2002 | 3:41 PM | DAT4 | SET FOR: NIGHT COURT ON 12/02/2002 AT 0600P (AR10) | DEM |
| 12/12/2002 | 1:56 PM | D001 | PAYMENT DUE DATE SET TO: 09/26/2003  (FE52) | DEM |
| 1/6/2003 | 8:18 AM | D001 | PAYMENT DUE DATE SET TO: 11/24/2003  (FE52) | SAL |
| 2/7/2003 | 1:45 PM | D001 | PAYMENT DUE DATE SET TO: 01/22/2004  (FE52) | DEM |
| 2/7/2003 | 1:49 PM | PRTY | PARTY ADDED  R001  PRATTVILL HIGH SCHOOL  (AW21) | DEM |
| 2/7/2003 | 1:59 PM | PZCS | PARTY R001 ZCS CHANGED FROM: 00000 0000  (AW21) | DEM |
| 2/7/2003 | 1:59 PM | PNME | PARTY R001 NAME CHANGED FROM: PRATTVILL HIGH SCHOO | DEM |
| 2/7/2003 | 1:59 PM | PNME | PARTY R001 NAME CHANGED FROM: PREATTVILLE HIGH SCH | DEM |
| 3/5/2003 | 3:01 PM | D001 | PAYMENT DUE DATE SET TO: 03/21/2004  (FE52) | SAL |
| 5/1/2003 | 4:35 PM | D001 | PAYMENT DUE DATE SET TO: 05/19/2004  (FE52) | DEM |
| 5/8/2003 | 2:35 PM | D001 | PAYMENT DUE DATE SET TO: 07/17/2004  (FE52) | DEM |
| 6/11/2003 | 2:42 PM | JFEL | JUROR FELONY FLAG SET ON FOR INDIVIDUAL  (AR10) | DEM |
| 6/11/2003 | 2:42 PM | DAT4 | SET FOR: NIGHT COURT ON 08/19/2003 AT 0600P (AR10) | DEM |

| | | | | | | |
|---|---|---|---|---|---|---|
| 7/3/2003 | 11:26 AM | D001 | PAYMENT DUE DATE SET TO: 09/14/2004 | (FE52) | | DEM |
| 7/20/2003 | 6:23 PM | D001 | PAYMENT DUE DATE SET TO: 11/12/2004 | (FE52) | | DEM |
| 8/7/2003 | 1:25 PM | D001 | PAYMENT DUE DATE SET TO: 01/10/2005 | (FE52) | | DEM |
| 9/5/2003 | 3:36 PM | D001 | PAYMENT DUE DATE SET TO: 03/10/2005 | (FE52) | | DEM |
| 10/10/2003 | 1:46 PM | D001 | PAYMENT DUE DATE SET TO: 05/08/2005 | (FE52) | | DEH |
| 11/5/2003 | 1:26 PM | D001 | PAYMENT DUE DATE SET TO: 07/06/2005 | (FE52) | | DEH |
| 11/21/2003 | 9:48 AM | DAT4 | SET FOR: NIGHT COURT ON 12/01/2003 AT 0600P (AR10) | | | DEH |
| 12/4/2003 | 1:41 PM | D001 | PAYMENT DUE DATE SET TO: 10/03/2005 | (FE52) | | DEH |
| 1/6/2004 | 1:03 PM | D001 | PAYMENT DUE DATE SET TO: 12/01/2005 | (FE52) | | DEH |
| 2/6/2004 | 1:57 PM | D001 | PAYMENT DUE DATE SET TO: 02/28/2006 | (FE52) | | DEH |
| 3/5/2004 | 8:07 AM | D001 | PAYMENT DUE DATE SET TO: 05/28/2006 | (FE52) | | DEH |
| 4/8/2004 | 1:19 PM | D001 | PAYMENT DUE DATE SET TO: 07/26/2006 | (FE52) | | AMG |
| 5/6/2004 | 3:54 PM | D001 | PAYMENT DUE DATE SET TO: 10/23/2006 | (FE52) | | AMG |
| 6/8/2004 | 4:27 PM | D001 | PAYMENT DUE DATE SET TO: 12/21/2006 | (FE52) | | DEH |
| 7/9/2004 | 1:05 PM | D001 | PAYMENT DUE DATE SET TO: 03/20/2007 | (FE52) | | DEH |
| 8/5/2004 | 11:08 AM | D001 | PAYMENT DUE DATE SET TO: 05/18/2007 | (FE52) | | DEH |
| 9/7/2004 | 10:56 AM | D001 | PAYMENT DUE DATE SET TO: 08/15/2007 | (FE52) | | AMG |
| 10/7/2004 | 1:45 PM | D001 | PAYMENT DUE DATE SET TO: 11/12/2007 | (FE52) | | DEH |
| 11/4/2004 | 2:45 PM | D001 | PAYMENT DUE DATE SET TO: 01/10/2008 | (FE52) | | AMG |
| 12/7/2004 | 3:43 PM | D001 | PAYMENT DUE DATE SET TO: 04/08/2008 | (FE52) | | DEH |
| 1/6/2005 | 11:43 AM | D001 | PAYMENT DUE DATE SET TO: 06/06/2008 | (FE52) | | DEH |
| 2/4/2005 | 11:38 AM | D001 | PAYMENT DUE DATE SET TO: 09/03/2008 | (FE52) | | DEH |
| 3/4/2005 | 1:43 PM | D001 | PAYMENT DUE DATE SET TO: 12/01/2008 | (FE52) | | DEH |
| 4/7/2005 | 12:41 PM | D001 | PAYMENT DUE DATE SET TO: 01/29/2009 | (FE52) | | AMG |
| 5/5/2005 | 3:59 PM | D001 | PAYMENT DUE DATE SET TO: 04/28/2009 | (FE52) | | AMG |
| 6/3/2005 | 10:58 AM | D001 | PAYMENT DUE DATE SET TO: 06/26/2009 | (FE52) | | DEH |
| 7/19/2005 | 8:01 AM | D001 | PAYMENT DUE DATE SET TO: 09/23/2009 | (FE52) | | DEH |
| 8/3/2005 | 1:39 PM | D001 | PAYMENT DUE DATE SET TO: 11/21/2009 | (FE52) | | DEH |
| 9/8/2005 | 8:06 AM | D001 | PAYMENT DUE DATE SET TO: 02/18/2010 | (FE52) | | AMG |
| 10/6/2005 | 4:24 PM | D001 | PAYMENT DUE DATE SET TO: 05/18/2010 | (FE52) | | DEH |
| 11/7/2005 | 9:21 AM | D001 | PAYMENT DUE DATE SET TO: 07/16/2010 | (FE52) | | AMG |
| 12/7/2005 | 11:39 AM | D001 | PAYMENT DUE DATE SET TO: 10/13/2010 | (FE52) | | DEH |
| 1/6/2006 | 1:18 PM | D001 | PAYMENT DUE DATE SET TO: 12/11/2010 | (FE52) | | AMG |
| 2/6/2006 | 8:52 AM | D001 | PAYMENT DUE DATE SET TO: 03/10/2011 | (FE52) | | AMG |
| 3/6/2006 | 7:49 AM | D001 | PAYMENT DUE DATE SET TO: 05/08/2011 | (FE52) | | AMG |
| 4/6/2006 | 2:19 PM | D001 | PAYMENT DUE DATE SET TO: 08/05/2011 | (FE52) | | DEH |
| 5/15/2006 | 12:44 PM | D001 | PAYMENT DUE DATE SET TO: 11/02/2011 | (FE52) | | DEH |
| 6/6/2006 | 2:37 PM | D001 | PAYMENT DUE DATE SET TO: 12/31/2011 | (FE52) | | AMG |
| 7/6/2006 | 2:59 PM | D001 | PAYMENT DUE DATE SET TO: 03/29/2012 | (FE52) | | DEH |
| 8/4/2006 | 11:24 AM | D001 | PAYMENT DUE DATE SET TO: 05/27/2012 | (FE52) | | DEH |
| 9/8/2006 | 11:08 AM | D001 | PAYMENT DUE DATE SET TO: 08/24/2012 | (FE52) | | DEH |
| 10/5/2006 | 2:23 PM | D001 | PAYMENT DUE DATE SET TO: 11/21/2012 | (FE52) | | AMG |
| 11/6/2006 | 3:30 PM | D001 | PAYMENT DUE DATE SET TO: 01/19/2013 | (FE52) | | AMG |
| 12/12/2006 | 12:51 PM | D001 | PAYMENT DUE DATE SET TO: 04/18/2013 | (FE52) | | DEH |
| 1/9/2007 | 12:08 PM | D001 | PAYMENT DUE DATE SET TO: 06/16/2013 | (FE52) | | DEH |
| 4/6/2007 | 2:26 PM | D001 | PAYMENT DUE DATE SET TO: 09/13/2013 | (FE52) | | DEH |
| 5/17/2007 | 4:31 PM | D001 | PAYMENT DUE DATE SET TO: 11/11/2013 | (FE52) | | DEH |
| 6/11/2007 | 1:59 PM | D001 | PAYMENT DUE DATE SET TO: 01/09/2014 | (FE52) | | DEH |
| 7/9/2007 | 1:05 PM | D001 | PAYMENT DUE DATE SET TO: 03/09/2014 | (FE52) | | DEH |
| 8/8/2007 | 10:52 AM | D001 | PAYMENT DUE DATE SET TO: 05/07/2014 | (FE52) | | DEH |
| 9/13/2007 | 3:32 PM | D001 | PAYMENT DUE DATE SET TO: 07/05/2014 | (FE52) | | DEH |
| 10/9/2007 | 10:43 AM | D001 | PAYMENT DUE DATE SET TO: 09/02/2014 | (FE52) | | AMG |
| 11/6/2007 | 1:31 PM | D001 | PAYMENT DUE DATE SET TO: 10/31/2014 | (FE52) | | DEH |

| | | | | | |
|---|---|---|---|---|---|
| 12/11/2007 | 12:30 PM | D001 | PAYMENT DUE DATE SET TO: 12/29/2014 | (FE52) | DEH |
| 1/8/2008 | 3:31 PM | D001 | PAYMENT DUE DATE SET TO: 02/26/2015 | (FE52) | DEH |
| 2/11/2008 | 10:56 AM | D001 | PAYMENT DUE DATE SET TO: 04/26/2015 | (FE52) | DEH |
| 3/12/2008 | 12:21 PM | D001 | PAYMENT DUE DATE SET TO: 06/24/2015 | (FE52) | DEH |
| 4/10/2008 | 8:17 AM | D001 | PAYMENT DUE DATE SET TO: 08/22/2015 | (FE52) | DEH |
| 5/14/2008 | 1:14 PM | D001 | PAYMENT DUE DATE SET TO: 10/20/2015 | (FE52) | DEH |
| 6/12/2008 | 4:40 PM | D001 | PAYMENT DUE DATE SET TO: 12/18/2015 | (FE52) | DEH |
| 7/10/2008 | 2:19 PM | D001 | PAYMENT DUE DATE SET TO: 02/15/2016 | (FE52) | DEH |
| 8/12/2008 | 10:19 AM | D001 | PAYMENT DUE DATE SET TO: 04/14/2016 | (FE52) | DEH |
| 9/11/2008 | 2:39 PM | D001 | PAYMENT DUE DATE SET TO: 06/12/2016 | (FE52) | DEH |
| 10/15/2008 | 2:27 PM | D001 | PAYMENT DUE SET TO: 07/11/2016 | (FE52) | AMG |
| 11/13/2008 | 4:29 PM | D001 | PAYMENT DUE DATE SET TO: 09/08/2016 | (FE52) | DEH |
| 12/8/2008 | 2:03 PM | D001 | PAYMENT DUE DATE SET TO: 11/06/2016 | (FE52) | DEH |
| 1/14/2009 | 3:17 PM | D001 | PAYMENT DUE DATE SET TO: 01/04/2017 | (FE52) | DEH |
| 2/23/2009 | 6:04 PM | D001 | PAYMENT DUE DATE SET TO: 03/04/2017 | (FE52) | DEH |
| 3/17/2009 | 2:40 PM | D001 | PAYMENT DUE DATE SET TO: 05/02/2017 | (FE52) | AMG |
| 7/6/2009 | 1:21 PM | D001 | PAYMENT DUE DATE SET TO: 06/30/2017 | (FE52) | DEH |
| 8/3/2009 | 11:22 AM | D001 | PAYMENT DUE DATE SET TO: 08/28/2017 | (FE52) | VIL |
| 9/3/2009 | 1:49 PM | D001 | PAYMENT DUE DATE SET TO: 10/26/2017 | (FE52) | VIL |
| 10/5/2009 | 3:02 PM | D001 | PAYMENT DUE DATE SET TO: 12/24/2017 | (FE52) | DEH |
| 11/2/2009 | 3:15 PM | D001 | PAYMENT DUE DATE SET TO: 02/21/2018 | (FE52) | VIL |
| 12/3/2009 | 11:38 AM | D001 | PAYMENT DUE DATE SET TO: 04/21/2018 | (FE52) | VIL |
| 1/4/2010 | 2:54 PM | D001 | PAYMENT DUE DATE SET TO: 06/19/2018 | (FE52) | DEH |
| 2/4/2010 | 1:19 PM | D001 | PAYMENT DUE DATE SET TO: 08/17/2018 | (FE52) | VIL |
| 3/4/2010 | 4:31 PM | D001 | PAYMENT DUE DATE SET TO: 10/15/2018 | (FE52) | DEH |
| 4/7/2010 | 9:09 AM | D001 | PAYMENT DUE DATE SET TO: 12/13/2018 | (FE52) | VIL |
| 5/5/2010 | 11:53 AM | D001 | PAYMENT DUE DATE SET TO: 02/10/2019 | (FE52) | DEH |
| 6/8/2010 | 1:30 PM | D001 | PAYMENT DUE DATE SET TO: 04/10/2019 | (FE52) | DEH |
| 7/6/2010 | 3:20 PM | D001 | PAYMENT DUE DATE SET TO: 06/08/2019 | (FE52) | DEH |
| 8/2/2010 | 3:27 PM | D001 | PAYMENT DUE DATE SET TO: 08/06/2019 | (FE52) | DEH |
| 9/13/2010 | 9:49 AM | D001 | PAYMENT DUE DATE SET TO: 10/04/2019 | (FE52) | DEH |
| 10/8/2010 | 3:34 PM | D001 | PAYMENT DUE DATE SET TO: 12/02/2019 | (FE52) | DEH |
| 11/17/2010 | 3:26 PM | D001 | PAYMENT DUE DATE SET TO: 01/30/2020 | (FE52) | DEH |
| 12/3/2010 | 3:09 PM | D001 | PAYMENT DUE DATE SET TO: 03/29/2020 | (FE52) | DEH |
| 1/11/2011 | 10:51 AM | D001 | PAYMENT DUE DATE SET TO: 05/27/2020 | (FE52) | DEH |
| 2/7/2011 | 7:38 AM | D001 | PAYMENT DUE DATE SET TO: 07/25/2020 | (FE52) | VIL |
| 3/9/2011 | 1:44 PM | D001 | PAYMENT DUE DATE SET TO: 09/22/2020 | (FE52) | DEH |
| 4/11/2011 | 10:55 AM | D001 | PAYMENT DUE DATE SET TO: 11/20/2020 | (FE52) | DEH |
| 5/12/2011 | 3:45 PM | D001 | PAYMENT DUE DATE SET TO: 01/18/2021 | (FE52) | DEH |
| 6/1/2011 | 10:20 AM | D001 | PAYMENT DUE DATE SET TO: 03/18/2021 | (FE52) | DEH |
| 7/6/2011 | 8:30 AM | D001 | PAYMENT DUE DATE SET TO: 05/16/2021 | (FE52) | DEH |
| 8/5/2011 | 3:54 PM | D001 | PAYMENT DUE DATE SET TO: 07/14/2021 | (FE52) | VIL |
| 9/7/2011 | 8:29 AM | D001 | PAYMENT DUE DATE SET TO: 09/11/2021 | (FE52) | VIL |
| 9/30/2011 | 1:45 PM | D001 | PAYMENT DUE DATE SET TO: 11/09/2021 | (FE52) | DOO |
| 11/1/2011 | 3:45 PM | D001 | PAYMENT DUE DATE SET TO: 01/07/2022 | (FE52) | VIL |
| 12/5/2011 | 1:55 PM | D001 | PAYMENT DUE DATE SET TO: 03/07/2022 | (FE52) | VIL |
| 1/4/2012 | 11:52 AM | D001 | PAYMENT DUE DATE SET TO: 05/05/2022 | (FE52) | MAB |
| 2/2/2012 | 2:30 PM | D001 | PAYMENT DUE DATE SET TO: 07/03/2022 | (FE52) | VIL |
| 3/1/2012 | 4:25 PM | D001 | PAYMENT DUE DATE SET TO: 08/31/2022 | (FE52) | VIL |
| 4/3/2012 | 4:41 PM | D001 | PAYMENT DUE DATE SET TO: 10/29/2022 | (FE52) | VIL |
| 5/2/2012 | 8:19 AM | D001 | PAYMENT DUE DATE SET TO: 12/27/2022 | (FE52) | VIL |
| 5/2/2012 | 4:38 PM | D001 | PAYMENT DUE DATE SET TO: 04/19/2024 | (FE52) | VIL |
| 5/5/2012 | 9:28 AM | D001 | PAYMENT DUE DATE SET TO: 06/17/2024 | (FE52) | VIL |

| | | | | | |
|---|---|---|---|---|---|
| 7/2/2012 | 3:05 PM | D001 | PAYMENT DUE DATE SET TO: 08/15/2024 | (FE52) | VIL |
| 8/6/2012 | 10:50 AM | D001 | PAYMENT DUE DATE SET TO: 10/13/2024 | (FE52) | VIL |
| 9/5/2012 | 8:29 AM | D001 | PAYMENT DUE DATE SET TO: 12/11/2024 | (FE52) | VIL |
| 10/2/2012 | 7:28 AM | D001 | PAYMENT DUE DATE SET TO: 02/08/2025 | (FE52) | VIL |
| 11/5/2012 | 11:53 AM | D001 | PAYMENT DUE DATE SET TO: 04/08/2025 | (FE52) | VIL |
| 12/4/2012 | 3:55 PM | D001 | PAYMENT DUE DATE SET TO: 06/06/2025 | (FE52) | VIL |
| 1/2/2013 | 10:47 AM | D001 | PAYMENT DUE DATE SET TO: 08/04/2025 | (FE52) | VIL |
| 2/4/2013 | 11:05 AM | D001 | PAYMENT DUE DATE SET TO: 10/02/2025 | (FE52) | CWM |
| 3/4/2013 | 1:03 PM | D001 | PAYMENT DUE DATE SET TO: 11/30/2025 | (FE52) | DAC |
| 4/2/2013 | 1:09 PM | D001 | PAYMENT DUE DATE SET TO: 12/29/2025 | (FE52) | DAC |
| 5/7/2013 | 9:37 AM | D001 | PAYMENT DUE DATE SET TO: 02/26/2026 | (FE52) | DAC |
| 6/4/2013 | 2:34 PM | D001 | PAYMENT DUE DATE SET TO: 04/26/2026 | (FE52) | DAC |
| 7/1/2013 | 3:22 PM | D001 | PAYMENT DUE DATE SET TO: 06/24/2026 | (FE52) | DAC |
| 8/2/2013 | 3:26 PM | D001 | PAYMENT DUE DATE SET TO: 08/22/2026 | (FE52) | VIL |
| 9/3/2013 | 8:06 AM | D001 | PAYMENT DUE DATE SET TO: 10/20/2026 | (FE52) | DAC |
| 10/7/2013 | 1:49 PM | D001 | PAYMENT DUE DATE SET TO: 12/18/2026 | (FE52) | DAC |
| 11/4/2013 | 2:05 PM | D001 | PAYMENT DUE DATE SET TO: 02/15/2027 | (FE52) | DAC |
| 12/3/2013 | 1:06 PM | D001 | PAYMENT DUE DATE SET TO: 04/15/2027 | (FE52) | DAC |
| 12/18/2013 | 10:43 AM | ESCAN | SCAN - FILED 12/18/2013 - MISC | | VIL |
| 1/2/2014 | 12:58 PM | D001 | PAYMENT DUE DATE SET TO: 06/13/2027 | (FE52) | DAC |
| 1/15/2014 | 7:51 AM | ESCAN | SCAN - FILED 1/14/2014 - MISC | | VIL |
| 2/3/2014 | 1:50 PM | D001 | PAYMENT DUE DATE SET TO: 08/11/2027 | (FE52) | DAC |
| 3/3/2014 | 1:28 PM | D001 | PAYMENT DUE DATE SET TO: 10/09/2027 | (FE52) | DAC |
| 4/3/2014 | 1:16 PM | D001 | PAYMENT DUE DATE SET TO: 12/07/2027 | (FE52) | DAC |
| 5/13/2014 | 11:52 AM | D001 | PAID IN FULL; ENF STATUS IS *S* | (FE52) | MAB |
| 6/10/2014 | 11:34 AM | ESCAN | SCAN - FILED 6/10/2014 - MISC | | DAC |
| 7/22/2022 | 10:52 AM | ESCAN | SCAN - FILED 7/22/2022 - COMPLETE FILE | | CAH |
| 7/22/2022 | 10:52 AM | ESCAN | SCAN - FILED 7/22/2022 - COMPLETE FILE | | CAH |
| 7/22/2022 | 11:29 AM | ESCAN | SCAN - FILED 7/22/2022 - COMPLETE FILE | | CAH |
| 7/22/2022 | 11:44 AM | ESCAN | SCAN - FILED 7/22/2022 - COMPLETE FILE | | CAH |
| 7/22/2022 | 11:49 AM | ESCAN | SCAN - FILED 7/22/2022 - PRESENTENCE INVESTIGATION (PSI) REPORT | | CAH |
| 9/15/2022 | 10:32 AM | ESCAN | SCAN - FILED 9/15/2022 - NOTICE | | MAB |
| 5/9/2023 | 10:43 AM | SCAN | CASE SCANNED STATUS SET TO: Y | (AR10) | BEP |

## Images

| Dates | Doc# | Title | Description | Pages |
|---|---|---|---|---|
| 12/18/2013 10:43:05 AM | 1 | MISC | RECEIPT OF PAYMENT TO SCHOOL | 1 |
| 1/14/2014 12:00:02 AM | 2 | MISC | PAYMENT | 1 |
| 6/10/2014 11:34:21 AM | 3 | MISC | LETTER REG. RETURN OF PAYMENT-BALANCE ZERO | 1 |
| 7/22/2022 10:52:25 AM | 5 | COMPLETE FILE | REDACTED - | 100 |
| 7/22/2022 11:29:43 AM | 6 | COMPLETE FILE | | 85 |
| 7/22/2022 11:44:49 AM | 7 | COMPLETE FILE | | 86 |
| 9/15/2022 10:32:23 AM | 9 | NOTICE | ADDRESS | 1 |

**END OF THE REPORT**

# EXHIBIT

# "E"

DOCUMENT 463

ELECTRONICALLY FILED
1/15/2025 1:06 PM
01-CV-2024-901173.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
JACQUELINE ANDERSON SMITH, CLERK

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
## BIRMINGHAM DIVISION

| | | |
|---|---|---|
| **BURT NEWSOME, and** | § | |
| **NEWSOME LAW, LLC,** | § | |
| **an   Alabama   Limited   Liability** | § | |
| **Company,** | § | |
| | § | |
| **Plaintiffs,** | § | **Case No.: 01-CV-2024-901173.00** |
| | § | |
| **vs.** | § | |
| | § | |
| | § | |
| **MATRIX,   LLC,   an   Alabama** | § | |
| **Limited Liability Company, ET AL,** | | |
| **Defendants.** | | |

---

### NOTICE OF DOCUMENTS RECEIVED IN RESPONSE TO FILING OF THIRD PARTY SUBPOENA PURSUANT TO ARCP 45

Come now the Plaintiffs in the above styled-case and for Notice of Documents Received in Response to Filing of Third Party Subpoena states as follows:

1.    Pursuant to *ARCP 45,* attached are documents received from Godaddy in response to the third party subpoena of the Plaintiffs.

Respectfully submitted this the 15th day of January, 2025.


*/s/ Burt W. Newsome*
Burt W. Newsome (NEW047)
Attorney for Plaintiffs

**OF COUNSEL:**
Newsome Law, LLC
194 Narrows Drive, Suite 103
P.O. Box 382753 (35238)
Birmingham, AL 35242
Ph. (205) 747-1970
Fax (205) 747-1971
E-Mail: burt@newsomelawllc.com

1

## CERTIFICATE OF SERVICE

This is to certify that I have this day electronically filed and served the following with a copy of the foregoing, by placing same in an envelope, properly addressed, and depositing it in the United States Mail, with adequate postage prepaid thereon:

Cason M. Kirby
Brant J. Biddle
Attorneys for Matrix, LLC, Perkins Communication LLC, Joe Perkins, Joshua Whitman, Tommy Kirkland, Summer Patterson, Kim Hines
HOLLAND &KNIGHT LLP
1901 Sixth Avenue North Suite 1400
Birmingham, AL 35203

Darrin R. Marlow
Jeffrey W. Salyer
Attorney for Jennifer Lee, Randall Lee, Bristyn Lee, and Georgia Horne
Marlow and Salyer, LLC
1111 17th Ave.
Calera, AL  35040

Kelvin W. Howard
Attorney for Jeff Pitts
OFFICE OF KELVIN W. HOWARD, LLC
420 20th Street North, Suite 2200
Birmingham, AL 35203

Hycall Brooks, III
Attorney for Plaintiffs
P.O. Box 3413
Hueytown, AL 35023

Lee M. Hollis
Mary Parrish McCracken
Attorneys for Alabama Power Company
LIGHTFOOT, FRANKLIN & WHITE, L.L.C.
The Clark Building
400 North 20th Street
Birmingham, AL 35203

2

John W. Scott
Kimberly W. Geisler
Alexander P. Quick
Attorneys for Mark Crosswhite, Jeff Peoples, Zeke Smith, and Quentin Riggins
SCOTT DUKES & GEISLER, P.C.
211 22nd Street North
Birmingham, AL 35203

Robert R. Baugh
Attorney for Defendants, The Southern Company, Tom Fanning and Jim Kerr
DENTONS SIROTE PC
2311 Highland Avenue South
Birmingham, AL 35255

David L. Balser
Brandon R. Keel
Attorney for Defendants, The Southern Company, Tom Fanning and Jim Kerr
KING & SPALDING LLP
1180 Peachtree St NE
Atlanta, GA 30309

Hon. Melanie B. Holliman, Special Master
melanie@hollimanlegal.com

This the 15th day of January, 2025.


                                    /s/ Burt W. Newsome
                                    Burt W. Newsome (NEW047)
                                    Of Counsel

3

# Domain List for Shopper ID 37865889

| Domain Name | Status | | Created | Expires | Order ID |
|---|---|---|---|---|---|
| cdluexposed.com | 0 Active | DOCUMENT 463 | 7/17/2020 | 7/17/2024 | 1718830020 |



100 S. Mill Ave., Suite 1600, Tempe, AZ 85281

DOCUMENT 463

May 16, 2024

Burt W. Newsome
Newsome Law, LLC
194 Narrows Drive, Suite 103
Birmingham, AL 35242

Re:   *cdluexposed.com*
      GDG Ref No. 24-75564

Dear Mr. Newsome:

Please consider this GoDaddy.com, LLC's official response to the Subpoena issued by the
Jefferson County, Alabama Circuit Court. In response to that Subpoena, we are herewith
producing approximately twenty-nine (29) pages of documents which have been Bates labeled as
GD 000001 through GD 000029. These documents contain confidential, proprietary, trade
secret, and/or private information that warrants special protection from public disclosure and
from use for any purpose other than prosecuting or defending the action in which the subpoena is
served. It is imperative that any documents designated "CONFIDENTIAL" receive confidential
treatment. Confidential treatment includes: (1) limiting access to these documents to the parties
in this litigation, their agents, and the court and its personnel; (2) taking the procedural steps
necessary to file under seal any portion of any submission to the court that refers to or
incorporates these documents; and (3) destroying all CONFIDENTIAL documents included in
this production, including copies thereof, within 60 days after the final disposition of the action
in which the subpoena is served. More information can be found in GoDaddy's Subpoena
Policy/Attorney Tips, available on our Legal page. You should assume that if categories of
documents called for in the subpoena are not included in the produced documents,
GoDaddy.com has no responsive documents for such categories.

We have also enclosed an executed Certificate of Authenticity.

If this case involves a domain name dispute, please provide courtdisputes@godaddy.com with a
file copy of the complaint so that they may place the domain name on registrar lock pending the
outcome of the case.

May 16. 2024
Page 2 of 2

DOCUMENT 463

Please remit your check in the amount of $37.50 to cover the cost of production.

Copying, printing and reproduction

    .5 Hour x $75.00 per Hour          $37.50

TOTAL                               $37.50

If we can assist further, please do not hesitate to contact me via email at
compliancemgr@godaddy.com.

                            Very truly yours,

                            GODADDY.COM, LLC

                            Reanna R. Diehl
                            Paralegal

Enclosure

CERTIFICATE OF AUTHENTICITY
OF
BUSINESS RECORDS

I, Reanna McCarty, declare that I am employed by GoDaddy.com, LLC, and that my office title or position is Legal-Admin II. I further declare that I am a custodian of records of said business and that each of the records attached hereto is the original or a duplicate (exact photocopy) of an original record in the custody of GoDaddy.com, LLC.

I further state that:

1.    Such records were made, at or near the times of the occurrence of the matters set forth by (or from information transmitting by) a person with knowledge of those matters;

2.    such records are kept in the course of a regularly conducted business activity;

3.    the business activity made such records as a regular practice; and

4.    if such records are not the originals, such records are duplicates of the originals.

I declare under penalty of perjury the forgoing is true and correct.

Dated this 16th day of May 2024.

Reanna R. Diehl, Paralegal
GoDaddy.com, LLC.
100 S. Mill Ave., Suite 1600
Tempe, AZ 85281

DOCUMENT 62

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
BIRMINGHAM DIVISION

BURT NEWSOME,                          )
                                       )
          *Plaintiff,*                 )
                                       )
vs.                                    )        **CASE NO. CV-2024-901173.00**
                                       )
MATRIX, LLC,                           )
                                       )
          *Defendant.*                 )

### CIVIL SUBPOENA FOR PRODUCTION OF DOCUMENTS

TO:   GODADDY.COM, LLC
      c/o Corporation Service Company, its Registered Agent
      251 Little Falls Drive
      Wilmington, DE 19808

You are hereby commanded to do the following acts at the instance of the Plaintiff within fifteen (15) days after service of this Subpoena:

The Plaintiff requests that you produce the following documents for inspection and copying at the office of NEWSOME LAW, LLC Attn: Burton W. Newsome 194 Narrows Drive, Suite 103, Birmingham, AL 35242, during regular business hours before the expiration of fifteen (15) days from the date of service of this request:

Certified copies of any and all records touching or concerning www.cdluexposed.com, including but not limited to the following:
- All Financial Records specifically including but not limited to date(s) of payment(s), form(s) of payment(s), copy of cleared check(s), credit card information
- Website Contact and Administrative Personnel provided, including but not limited to name(s), mailing address(es), email address(es), phone number(s)
- Digital Records including but not limited to dates, times, and ip addresses that created, accessed, modified and/or uploaded the website and its contents since the website's inception
- Any and all communication of whatsoever dealing with the contents of the website and/or drafts of the contents of the website and/or communication with third-party companies used in developing the website
- Any and all user or administrative login records since the website's inception
- Any and all emails sent or received concerning the website since its inception

The Plaintiff will pay all ordinary, reasonable and necessary expenses incurred by the nonparty in connection with such production.

# Domain Information for Shopper ID 37865889

Shopper ID:                          37865889

Domain Name:                         cdluexposed.com

Registrar:                           GoDaddy.com, LLC     DOCUMENT 463

Registration Period:                 1

Create Date:                         7/17/2020 9:10:25 AM

Expiration Date:                     7/17/2024 9:10:25 AM

Update Date:                         7/18/2023 11:05:13 AM

Transfer Away Eligibility Date:

Status:                              0 Active

Is Certified Domain:                 False

Gaining Registrar Name:              GoDaddy.com, LLC

Transferred Away Date:

Last Modified:                       7/18/2023 9:05:13 AM

Custom DNS:                          No

Name Servers:                        ns1.a2hosting.com
                                     ns2.a2hosting.com
                                     ns3.a2hosting.com
                                     ns4.a2hosting.com

Auto Renew:                          Yes

Renew Period:                        0

# Shopper Info for Shopper ID 37865889

| | |
|---|---|
| Shopper ID: | 37865889 |
| Private Label ID: | 1 |
| Login Name: | matrixweb |
| First Name: | Summer |
| Last Name: | Patterson |
| Company: | Matrix, LLC |
| Address1: | 644 South Perry Street |
| Address2: | |
| City: | Montgomery |
| State/Prov: | AL |
| Postal Code: | 36104 |
| Country: | US |
| Phone Work: | +1.3342949683 |
| Phone Home: | |
| Mobile: | |
| Fax: | |
| Email: | summer@matrixllc.com |
| Date Created: | 8/2/2010 2:39:07 PM |
| Last Changed By Date: | 4/29/2024 6:34:21 AM |
| Fraud: | Verified by Fraud Dept – Customer OK |
| Twitter Handle: | |

DOCUMENT 463

# Domain Information for Shopper ID 37865889

## Registrant Contact

| | |
|---|---|
| Name: | Registration Private |
| Company: | Domains By Proxy, LLC |
| Email: | cdluexposed.com@domainsbyproxy.com |
| Address 1: | DomainsByProxy.com |
| Address 2: | 2155 E Warner Rd |
| City: | Tempe |
| State/Province: | Arizona |
| Postal Code: | 85284 |
| Country: | United States |
| Phone: | +1.4806242599 |
| Fax: | |
| Modify Time: | 7/17/2020 7:10:19 AM |

DOCUMENT 463

## Technical Contact

| | |
|---|---|
| Name: | Registration Private |
| Company: | Domains By Proxy, LLC |
| Email: | cdluexposed.com@domainsbyproxy.com |
| Address 1: | DomainsByProxy.com |
| Address 2: | 2155 E Warner Rd |
| City: | Tempe |
| State/Province: | Arizona |
| Postal Code: | 85284 |
| Country: | United States |
| Phone: | +1.4806242599 |
| Fax: | |
| Modify Time: | 7/17/2020 7:10:19 AM |

## Administrative Contact

| | |
|---|---|
| Name: | Registration Private |
| Company: | Domains By Proxy, LLC |
| Email: | cdluexposed.com@domainsbyproxy.com |
| Address 1: | DomainsByProxy.com |
| Address 2: | 2155 E Warner Rd |
| City: | Tempe |
| State/Province: | Arizona |
| Postal Code: | 85284 |
| Country: | United States |
| Phone: | +1.4806242599 |
| Fax: | |
| Modify Time: | 7/17/2020 7:10:19 AM |

## Billing Contact

| | |
|---|---|
| Name: | Registration Private |
| Company: | Domains By Proxy, LLC |
| Email: | cdluexposed.com@domainsbyproxy.com |
| Address 1: | DomainsByProxy.com |
| Address 2: | 2155 E Warner Rd |
| City: | Tempe |
| State/Province: | Arizona |
| Postal Code: | 85284 |
| Country: | United States |
| Phone: | +1.4806242599 |
| Fax: | |
| Modify Time: | 7/17/2020 7:10:19 AM |

# Contact Audit History
## cdluexposed.com

| Modified | Origin | Note |
|---|---|---|
| 6/5/2023 8:14:10 AM | set dbpAddressID_CON EX 2024/00:25:23 | Registrant: Registration\|Private\|Domains By Proxy, LLC\| DBP@domainsbyproxy.com\| DomainsByProxy.com\|2155 E Warner Rd\|\| Tempe\|Arizona\|85284\|United States\| +1.4806242599\|\| |
| 6/5/2023 8:14:10 AM | set dbpAddressID - 09/11/2021 00:25:23 | Technical: Registration\|Private\|Domains By Proxy, LLC\| DBP@domainsbyproxy.com\| DomainsByProxy.com\|2155 E Warner Rd\|\| Tempe\|Arizona\|85284\|United States\| +1.4806242599\|\| |
| 6/5/2023 8:14:10 AM | set dbpAddressID - 09/11/2021 00:25:23 | Administrative: Registration\|Private\|Domains By Proxy, LLC\| DBP@domainsbyproxy.com\| DomainsByProxy.com\|2155 E Warner Rd\|\| Tempe\|Arizona\|85284\|United States\| +1.4806242599\|\| |
| 6/5/2023 8:14:10 AM | set dbpAddressID - 09/11/2021 00:25:23 | Billing: Registration\|Private\|Domains By Proxy, LLC\| DBP@domainsbyproxy.com\|. DomainsByProxy.com\|2155 E Warner Rd\|\| Tempe\|Arizona\|85284\|United States\| +1.4806242599\|\| |
| 9/11/2021 12:25:23 AM | set dbpAddressID - 09/11/2021 00:25:23 | Registrant: Registration\|Private\|Domains By Proxy, LLC\| DBP@domainsbyproxy.com\| DomainsByProxy.com\|2155 E Warner Rd\|\| Tempe\|Arizona\|85284\|United States\| +1.4806242599\|+1.4806242598\| |
| 9/11/2021 12:25:23 AM | set dbpAddressID - 09/11/2021 00:25:23 | Technical: Registration\|Private\|Domains By Proxy, LLC\| DBP@domainsbyproxy.com\| DomainsByProxy.com\|2155 E Warner Rd\|\| Tempe\|Arizona\|85284\|United States\| +1.4806242599\|+1.4806242598\| |
| 9/11/2021 12:25:23 AM | set dbpAddressID - 09/11/2021 00:25:23 | Administrative: Registration\|Private\|Domains By Proxy, LLC\| DBP@domainsbyproxy.com\| DomainsByProxy.com\|2155 E Warner Rd\|\| Tempe\|Arizona\|85284\|United States\| +1.4806242599\|+1.4806242598\| |
| 9/11/2021 12:25:23 AM | set dbpAddressID - 09/11/2021 00:25:23 | Billing: Registration\|Private\|Domains By Proxy, LLC\| DBP@domainsbyproxy.com\| DomainsByProxy.com\|2155 E Warner Rd\|\| Tempe\|Arizona\|85284\|United States\| +1.4806242599\|+1.4806242598\| |
| 7/2/2021 12:19:31 AM | dbp address change | Registrant: Registration\|Private\|Domains By Proxy, LLC\| DBP@domainsbyproxy.com\| DomainsByProxy.com\|2155 E Warner Rd\|\| Tempe\|Arizona\|85284\|United States\| +1.4806242599\|+1.4806242598\| |

# Contact Audit History

## cdluexposed.com

| Modified | Origin | Note |
|---|---|---|
| | DOCUMENT 463 | DBP@domainsbyproxy.com\| DomainsByProxy.com\|2155 E Warner Rd\|\| Tempe\|Arizona\|85284\|United States\| +1.4806242599\|+1.4806242598\| |
| 7/2/2021 12:19:31 AM | dbp address change | Billing: Registration\|Private\|Domains By Proxy, LLC\| DBP@domainsbyproxy.com\| DomainsByProxy.com\|2155 E Warner Rd\|\| Tempe\|Arizona\|85284\|United States\| +1.4806242599\|+1.4806242598\| |
| 6/14/2021 11:19:43 AM | Domain Registration - Contact. : Updated by:ppp_writeDomainRegistration_ sp;REQUESTEDBY:1718830020 fulfillment;IP:P3PWGDCOMM008 | Registrant: Registration\|Private\|Domains By Proxy, LLC\| DBP@domainsbyproxy.com\| DomainsByProxy.com\|2155 E Warner Rd\|\| Tempe\|Arizona\|85284\|United States\| +1.4806242599\|+1.4806242598\| |
| 6/14/2021 11:19:43 AM | Domain Registration - Contact. : Updated by:ppp_writeDomainRegistration_ sp;REQUESTEDBY:1718830020 fulfillment;IP:P3PWGDCOMM008 | Technical: Registration\|Private\|Domains By Proxy, LLC\| DBP@domainsbyproxy.com\| DomainsByProxy.com\|2155 E Warner Rd\|\| Tempe\|Arizona\|85284\|United States\| +1.4806242599\|+1.4806242598\| |
| 6/14/2021 11:19:43 AM | Domain Registration - Contact. : Updated by:ppp_writeDomainRegistration_ sp;REQUESTEDBY:1718830020 fulfillment;IP:P3PWGDCOMM008 | Administrative: Registration\|Private\|Domains By Proxy, LLC\| DBP@domainsbyproxy.com\| DomainsByProxy.com\|2155 E Warner Rd\|\| Tempe\|Arizona\|85284\|United States\| +1.4806242599\|+1.4806242598\| |
| 6/14/2021 11:19:43 AM | Domain Registration - Contact. : Updated by:ppp_writeDomainRegistration_ sp;REQUESTEDBY:1718830020 fulfillment;IP:P3PWGDCOMM008 | Billing: Registration\|Private\|Domains By Proxy, LLC\| DBP@domainsbyproxy.com\| DomainsByProxy.com\|2155 E Warner Rd\|\| Tempe\|Arizona\|85284\|United States\| +1.4806242599\|+1.4806242598\| |
| 7/17/2020 7:10:19 AM | Domain Registration - Contact. : Updated by:ppp_writeDomainRegistration_ sp;REQUESTEDBY:1718830020 fulfillment;IP:P3PWGDCOMM008 | Registrant: Registration\|Private\|Domains By Proxy, LLC\| DBP@domainsbyproxy.com\| DomainsByProxy.com\|14455 N. Hayden Road\|\| Scottsdale\|Arizona\|85260\|United States\| +1.4806242599\|+1.4806242598\| |
| 7/17/2020 7:10:19 AM | Domain Registration - Contact. : Updated by:ppp_writeDomainRegistration_ sp;REQUESTEDBY:1718830020 fulfillment;IP:P3PWGDCOMM008 | Technical: Registration\|Private\|Domains By Proxy, LLC\| DBP@domainsbyproxy.com\| DomainsByProxy.com\|14455 N. Hayden Road\|\| Scottsdale\|Arizona\|85260\|United States\| +1.4806242599\|+1.4806242598\| |
| 7/17/2020 7:10:19 AM | Domain Registration - Contact. : Updated by:ppp_writeDomainRegistration_ sp;REQUESTEDBY:1718830020 fulfillment;IP:P3PWGDCOMM008 | Administrative: Registration\|Private\|Domains By Proxy, LLC\| DBP@domainsbyproxy.com\| DomainsByProxy.com\|14455 N. Hayden Road\|\| Scottsdale\|Arizona\|85260\|United States\| +1.4806242599\|+1.4806242598\| |
| 7/17/2020 7:10:19 AM | Domain Registration - Contact. : Updated | Billing: |

# Notes for Shopper ID 37865889
## 8/1/2010 to 5/8/2024

| Entered Date / By | Note |
|---|---|
| | DOCUMENT 463 |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| 8/30/2023 9:39:16 AM / WorkspaceProvisioning / Client IP: GoDaddy Internal | request submitted to remove mailbox with email address: info@cdluexposed.com from account: d3a82027-d362-11ea-81df-3417ebe72601 by |
| | |
| | |
| | |

## Notes for Shopper ID 37865889
### 8/1/2010 to 5/8/2024

| Entered Date / By | Note |
|---|---|
| | DOCUMENT 463 |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

## Notes for Shopper ID 37865889
## 8/1/2010 to 5/8/2024

| Entered Date / By | Note |
|---|---|
| | DOCUMENT 463 |
| | |
| 2/16/2023 2:11:46 PM / WorkspaceProvisioning / Client IP: GoDaddy Internal | request submitted to update Office365 password for email address: info@cdluexposed.com |
| | |
| | |
| | |
| | |
| | |

## Notes for Shopper ID 37865889
## 8/1/2010 to 5/8/2024

| Entered Date / By | Note |
|---|---|
| | DOCUMENT 463 |
| | |
| | |
| | |
| | |
| 7/18/2022 5:35:25 AM / RegAgentSvc / Client IP: GoDaddy Internal | Domain name cdluexposed.com renewed - minus 1 year(s) - by RegAgentSvc on 07/18/2022 05:35:25 |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

# Notes for Shopper ID 37865889
## 8/1/2010 to 5/8/2024

| Entered Date / By | Note |
|---|---|
| | DOCUMENT 463 |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| 11/30/2021 8:49:51 AM / 37865889 / Client IP: | Billing:322627558-Profile Update |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

## Notes for Shopper ID 37865889
## 8/1/2010 to 5/8/2024

| Entered Date /By | Note |
|---|---|
| | DOCUMENT 463 |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

# Notes for Shopper ID 37865889
## 8/1/2010 to 5/8/2024

| Entered Date / By | Note |
|---|---|
| 7/31/2021 6:22:55 AM / BillingAgent / Client IP: GoDaddy Internal | Failed Billing Notification (Email): 1. Next Attempt Date: Aug 7 202 Reason: Payment request was declined. Account: Billing for 07/31/2021. info@cdluexposed.com |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| 7/29/2021 1:09:08 PM / RegAgentSvc / Client IP: GoDaddy Internal | Domain name cdluexposed.com renewed by RegAgentSvc on 07/29/2021 13:09:08 |
| | |
| | |
| | |
| | |
| 7/29/2021 11:04:58 AM / RegAgentSvc / Client IP: GoDaddy Internal | A DomainProtectionExpProtectInvoked E-mail with messageId 82ef86e6-d64c-4397-8087-23243ef83866 has been sent to shopperId 37865889 for domain cdluexposed.com. |
| | |
| | |
| | |
| | |
| 7/29/2021 11:04:24 AM / RegAgentSvc / | Domain name cdluexposed.com renewed - minus 1 year(s) - by RegAgentSvc on 07/29/2021 |

# Notes for Shopper ID 37865889
## 8/1/2010 to 5/8/2024

| Entered Date / By | Note |
|---|---|
| | Product Name DOCUMENT 463  Next Billing Date Qty    Price |
| | .COM Domain Name Renewal - 1 Year (recurring)      PROTECTED  1     $8.47 <br> CDLUEXPOSED.COM <br> Full Domain Privacy and Protection - Renewal      CANCELLED  1     $9.99 <br> CDLUEXPOSED.COM |
| | |
| | |
| 7/29/2021 11:04:19 AM / BillingAgent / Client IP: GoDaddy Internal | Failed Billing Attempt: 3. Invoking ownership protection. Reason: Payment request was declined. Domain: CDLUEXPOSED.COM |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

# Notes for Shopper ID 37865889
## 8/1/2010 to 5/8/2024

| Entered Date / By | Note |
|---|---|
| | DOCUMENT 463 |
| | |
| | |
| | |
| | |
| | |
| | |
| 7/22/2021 8:02:27 AM / gdBAEmail.Email / Client IP: GoDaddy Internal | Failure Email sent to: summer@matrixllc.com for<br>Product Name            Next Billing Date Qty   Price<br>------------<br>.COM Domain Name Renewal - 1 Year (recurring)    07/29/2021  1   $8.47<br>CDLUEXPOSED.COM<br>Full Domain Privacy and Protection - Renewal        1   $9.99<br>CDLUEXPOSED.COM |
| 7/22/2021 8:02:27 AM / BillingAgent / Client IP: GoDaddy Internal | Failed Billing Attempt (domain): 2. Parking Domain. Next Attempt Date: 07/29/2021  Reason: Payment request was declined. Domain: CDLUEXPOSED.COM |
| | |
| | |
| | |
| | |
| | |

# Notes for Shopper ID 37865889
## 8/1/2010 to 5/8/2024

| Entered Date / By | Note |
|---|---|
| | DOCUMENT 463 |
| 7/18/2021 7:56:35 AM / BillingAgent / Client IP: GoDaddy Internal | Failed Billing Attempt (domain): 1. Domain still active. Next Attempt Date: 07/22/2021 Reason: Payment request was declined. Domain: CDLUEXPOSED.COM |
| | |
| | |
| 7/18/2021 7:56:35 AM / gdBAEmail.Email / Client IP: GoDaddy Internal | Failure Email sent to: summer@matrixllc.com for<br>Product Name          Next Billing Date  Qty      Price<br>.COM Domain Name Renewal – 1 Year (recurring)      07/22/2021   1      $8.47<br>CDLUEXPOSED.COM<br>Full Domain Privacy and Protection - Renewal          1      $9.99<br>CDLUEXPOSED.COM |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

# Notes for Shopper ID 37865889
## 8/1/2010 to 5/8/2024

| Entered Date /By | Note |
|---|---|
| | DOCUMENT 463 |
| | |
| | |
| | |
| | |
| | |
| | |
| 7/31/2020 1:09:40 PM / service-RegMarc / Client IP: GoDaddy Internal | Setting AutoRenew = 1: .COM Domain Name Registration - 1 Year (recurring) OrderID: 1718830020 RowID: 0 Namespace:domain ResourceID: 322627558 |
| 7/31/2020 1:09:34 PM / Customer / Client IP: 192.168.9.54 | DCC domain nameserver update requested cdluexposed.com (ID=322627558) |
| 7/31/2020 12:24:25 PM / WorkspaceProvisioning / Client IP: GoDaddy Internal | request submitted to create mailbox with email address: &lt;pii&gt;info@ cdluexposed.com&lt;/pii&gt; from account: d3a82027-d362-11ea-81df-3417ebe72601 by (37865889) |
| | |
| | |
| | |
| | |

# Notes for Shopper ID 37865889
## 8/1/2010 to 5/8/2024

| Entered Date / By | Note |
|---|---|
|  | DOCUMENT 463 |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

# Notes for Shopper ID 37865889
## 8/1/2010 to 5/8/2024

| Entered Date / By | Note |
|---|---|
| | DOCUMENT 463 |
| | |
| | |
| 7/17/2020 7:10:28 AM / service-RegMarc / Client IP: GoDaddy Internal | Setting AutoRenew = 1: .COM Domain Name Registration - 1 Year (recurring) OrderID: 1718830020 RowID: 0 Namespace:domain ResourceID: 322627558 |
| | |
| | |
| | |
| 7/17/2020 7:10:25 AM / RegAgentSvc / Client IP: GoDaddy Internal | Domain name cdluexposed.com registered |
| | |
| | |
| | |
| 7/17/2020 7:10:18 AM / Post Purchase Processing / Client IP: GoDaddy Internal | Domain CDLUEXPOSED.COM privacy set up.  DBP customer number is 291243425. |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

# Office365 ShopperId 37865889

DOCUMENT 463

# Account Details for AccountID: 21112520

| | |
|---|---|
| Account Status: | Deleted |
| Orion Account Status: | removed |
| Country Code for Billing: | US |
| Created Date (UTC): | 7/31/2020 12:20:04 PM |
| Last Modified Date (UTC): | 8/30/2023 2:23:02 PM |
| Subscription: | EE |
| Description: | Microsoft 365 Email Essentials |

# Mailboxes for AccountID: 21112520

| Email Address | Mailbox Status | Display Name | First/Last Name | Country Code | Create Date (UTC) | Last Modified Date (UTC) |
|---|---|---|---|---|---|---|
| info@cdluexposed.com | Deleted | info cdluexposed | info cdluexposed | USA | 7/31/2020 12:24:25 PM | 8/30/2023 9:41:34 AM |

# Shopper Contact Audit for Shopper ID 37865889

| Change Date | Requested By | IP Address | Value Changed | Previous Value | Changed To |
|---|---|---|---|---|---|
| 11/16/2022 1:02:33 PM | Shopper | 96.27.160.62 | phone1 | DOCUMENT3825478 | +1.3342949683 |
| 5/26/2020 6:36:10 AM | Shopper | browser | country | us | US |
| 5/26/2020 6:36:10 AM | Shopper | browser | first_name | Sarah | Summer |
| 5/26/2020 6:36:10 AM | Shopper | browser | last_name | Churchman | Patterson |
| 5/26/2020 6:35:34 AM | Shopper | 68.185.159.131 | email | sarah@matrixllc.com | summer@matrixllc.com |
| 2/6/2014 7:27:19 PM | BackfillShopperPhones | M1PWSBEAPP001 | phone1 | 3342625478 | +1.3342625478 |
| 8/2/2010 2:39:08 PM | Cust-37865889 | 66.191.154.49 | city | | Montgomery |
| 8/2/2010 2:39:08 PM | Cust-37865889 | 66.191.154.49 | company | | Matrix, LLC |
| 8/2/2010 2:39:08 PM | Cust-37865889 | 66.191.154.49 | country | | us |
| 8/2/2010 2:39:08 PM | Cust-37865889 | 66.191.154.49 | email | 37865889 | sarah@matrixllc.com |
| 8/2/2010 2:39:08 PM | Cust-37865889 | 66.191.154.49 | first_name | | Sarah |
| 8/2/2010 2:39:08 PM | Cust-37865889 | 66.191.154.49 | last_name | | Churchman |
| 8/2/2010 2:39:08 PM | Cust-37865889 | 66.191.154.49 | phone1 | | 3342625478 |
| 8/2/2010 2:39:08 PM | Cust-37865889 | 66.191.154.49 | state | | AL |
| 8/2/2010 2:39:08 PM | Cust-37865889 | 66.191.154.49 | street1 | | 644 South Perry Street |
| 8/2/2010 2:39:08 PM | Cust-37865889 | 66.191.154.49 | zip | | 36104 |

# Legal Receipt for Shopper ID 37865889

| | |
|---|---|
| Shopper ID: | 37865889 |
| Receipt ID: | 2651884036 |
| ProgId: | GoDaddy    DOCUMENT 463 |
| SiteUrl: | http://registrar.godaddy.com |
| Date (Local AZ): | 7/18/2023 9:05:09 AM |
| Source Code: | ROHB from_app: wse_dr |

## Shipping Information

Summer Patterson

Matrix, LLC

644 South Perry Street

Montgomery, AL 36104 US

Daytime Phone: +1.3342949683

summer@matrixllc.com

## Billing Information

Summer Patterson

Matrix, LLC

644 South Perry Street

Montgomery, AL 36104 US

Daytime Phone: +1.3342949683

summer@matrixllc.com

**Transaction Occurred as: United States Dollar (USD)**

*Payment 1: $94.10*

| | |
|---|---|
| Paid: | Credit Card |
| Processor: | FirstData-GD |
| AVS Code: | Y |
| Name: | Summer Patterson |
| Creditcard Number: | 5528740039763282 |
| Creditcard Information: | MasterCard Exp. 10/2026 |

Our Charges will appear on their credit card statement in the name "GODADDY.COM"

# Legal Receipt for Shopper ID 37865889

| Row | Label | Name | Unit Price | Today's Price | ICAN N Fee | Qty | Extra Disc. | Total Price |
|---|---|---|---|---|---|---|---|---|
| 1 | 10101-1 | .COM DomainNGGABMENJ 463 Year (recurring) Length: 1 Year(s) Domain: cdluexposed.com | $9.45 | $9.45 | $0.18 | 1 | $0.00 | $9.63 |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| 5 | 1307405-1 | Full Domain Privacy and Protection - Renewal Length: 1 Year(s) Domain: cdluexposed.com | $9.99 | $9.99 | $0.00 | 1 | $0.00 | $9.99 |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

| Subtotal | Shipping & Handling | Tax | Total |
|---|---|---|---|
| $94.10 | $0.00 | $0.00 | $94.10 |

# Legal Receipt for Shopper ID 37865889

| | | |
|---|---|---|
| Shopper ID: | 37865889 | |
| Receipt ID: | 2263985612 | |
| ProgId: | GoDaddy | DOCUMENT 463 |
| SiteUrl: | http://registrar.godaddy.com | |
| Date (Local AZ): | 7/18/2022 5:35:19 AM | |
| Source Code: | ROHB from_app: wso_dr | |

## Shipping Information

Summer Patterson

Matrix, LLC

644 South Perry Street

Montgomery, AL 36104 US

Daytime Phone: +1.3342625478

summer@matrixllc.com

## Billing Information

Summer Patterson

Matrix, LLC

644 South Perry Street

Montgomery, AL 36104 US

Daytime Phone: +1.3342625478

summer@matrixllc.com

**Transaction Occurred as: United States Dollar (USD)**

*Payment 1: $90.50*

| | |
|---|---|
| Paid: | Credit Card |
| Processor: | Litle-GD |
| AVS Code: | Y |
| Name: | Summer Patterson |
| Creditcard Number: | 5528740039763308 |
| Creditcard Information: | MasterCard Exp. 10/2026 |

Our Charges will appear on their credit card statement in the name "GODADDY.COM"

# Legal Receipt for Shopper ID 37865889

| Row | Label | Name | Unit Price | Today's Price | ICANN Fee | Qty | Extra Disc. | Total Price |
|---|---|---|---|---|---|---|---|---|
| 1 | 10101-1 | .COM Domain Name Renewal 1 Year (recurring) Length: 1 Year(s) Domain: cdluexposed.com | $8.85 | $8.85 | $0.18 | 1 | $0.00 | $9.03 |
| 2 | 1307405-1 | Full Domain Privacy and Protection - Renewal Length: 1 Year(s) Domain: cdluexposed.com | $9.99 | $9.99 | $0.00 | 1 | $0.00 | $9.99 |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

| Subtotal | Shipping & Handling | Tax | Total |
|---|---|---|---|
| $90.50 | $0.00 | $0.00 | $90.50 |

# Legal Receipt for Shopper ID 37865889

| | |
|---|---|
| Shopper ID: | 37865889 |
| Receipt ID: | 1910473139 |
| ProgId: | GoDaddy          DOCUMENT 463 |
| SiteUrl: | http://registrar.godaddy.com |
| Date (Local AZ): | 7/29/2021 1:09:03 PM |
| Source Code: | RPSMF35DOM |

## Shipping Information

Summer Patterson
Matrix, LLC
644 South Perry Street
Montgomery, AL 36104 US
Daytime Phone: +1.3342625478
summer@matrixllc.com
IP:    75.76.245.63::https://cart.godaddy.com/payapi

## Billing Information

Summer Patterson
Matrix, LLC
644 South Perry Street
Montgomery, AL 36104 US
Daytime Phone: +1.3342625478
summer@matrixllc.com

**Transaction Occurred as: United States Dollar (USD)**

*Payment 1: $88.94*

| | |
|---|---|
| Paid: | Credit Card |
| Processor: | FirstData-GD |
| AVS Code: | Y |
| Name: | Jeff Pitts |
| Creditcard Number: | 4791627000018593 |
| Creditcard Information: | Visa Exp. 02/2024 |

Our Charges will appear on their credit card statement in the name "GODADDY.COM"

# Legal Receipt for Shopper ID 37865889

| Row | Label | Name | Unit Price | Today's Price | ICANN'Fee | Qty | Extra Disc | Total Price |
|-----|-------|------|-----------|--------------|-----------|-----|-----------|------------|
| 1 | 10101-1 | .COM Domain DOCUMENT 463 Year (recurring) Length: 1 Year(s) Domain: cdluexposed.com This is a service item. | $8.29 | $8.29 | $0.18 | 1 | $0.00 | $8.47 |
| 2 | 1307405-1 | Full Domain Privacy and Protection - Renewal Length: 1 Year(s) Domain: cdluexposed.com This is a service item. | $9.99 | $9.99 | $0.00 | 1 | $0.00 | $9.99 |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

| Subtotal | Shipping & Handling | Tax | Total |
|----------|---------------------|-----|-------|
| $88.94 | $0.00 | $0.00 | $88.94 |

# Legal Receipt for Shopper ID 37865889

| | |
|---|---|
| Shopper ID: | 37865889 |
| Receipt ID: | 1718830020 |
| ProgId: | GoDaddy        DOCUMENT 463 |
| SiteUrl: | http://registrar.godaddy.com |
| Date (Local AZ): | 7/17/2020 7:10:14 AM |
| Source Code: | ??? |

## Shipping Information

Summer Patterson

Matrix, LLC

644 South Perry Street

Montgomery, AL 36104 US

Daytime Phone: +1.3342625478

summer@matrixllc.com

## Billing Information

Sarah Churchman

Matrix, LLC

644 South Perry Street

Montgomery, AL 36104 US

Daytime Phone: +1.3342625478

Evening Phone: +1.3342625478

sarah@matrixllc.com

IP:        75.76.246.238::https://payment.api.godaddy.com/payapi

**Transaction Occurred as: United States Dollar (USD)**

*Payment 1: $72.94*

| | |
|---|---|
| Paid: | Credit Card |
| Processor: | Litle-GD |
| AVS Code: | Y |
| Name: | Joe Perkins |
| Creditcard Number: | 4791628000477995 |
| Creditcard Information: | Visa Exp. 02/2024 |

Our Charges will appear on their credit card statement in the name "GODADDY.COM"

# Legal Receipt for Shopper ID 37865889

| Row | Label | Name | Unit Price | Today's Price | ICANN Fee | Qty | Extra Disc | Total Price |
|---|---|---|---|---|---|---|---|---|
| 1 | 101-1 | .COM Domain Registration- 1 Year (recurring) Length: 1 Year(s) Domain: cdluexposed.com This is a service item. | $8.29 | $8.29 | $0.18 | 1 | $0.00 | $8.47 |
| 2 | 1307404-1 | Full Domain Privacy and Protection Length: 1 Year(s) Domain: cdluexposed.com This is a service item. | $9.99 | $9.99 | $0.00 | 1 | $0.00 | $9.99 |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

| Subtotal | Shipping & Handling | Tax | Total |
|---|---|---|---|
| $72.94 | $0.00 | $0.00 | $72.94 |

CERTIFICATE OF SERVICE

I KB Forbes hereby certify that, on September 24, 2025, I hand-filed the foregoing

with the Clerk of the Court and that I served all counsel of record listed below via

EMAIL and U.S. MAIL:

Lee M. Hollis, Esq.
Mary Parrish McCracken, Esq.
LIGHTFOOT, FRANKLIN &
WHITE LLC
400 20th Street North
Birmingham, Alabama 35203
205-581-0700
lhollis@lightfootlaw.com
mmccracken@lightfootlaw.com
Counsel for Alabama Power Company

John W. Scott, Esq.
Kimberly W. Geisler, Esq.
SCOTT, DUKES & GEISLER, P.C.
211 Twenty Second Street North
Birmingham, Alabama 35203
205-251-2300
jscott@scottdukeslaw.com
kgeisler@scottdukeslaw
Counsel for Mark Crosswhite, Jeff
Peoples and Zeke Smith

Robert Baugh, Esq.
DENTONS SIROTE
2311 Highland Avenue South
Birmingham, Alabama 35205
205-930-5100
robert.baugh@dentons.com
Counsel for The Southern Company,
Tom Fanning, and Jim Kerr

David L. Balser, Esq.
Brandon R. Keel, Esq.
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309
404-572-4600
dbalser@kslaw.com
bkeel@kslaw.com
Counsel for The Southern Company,
Tom Fanning, and Jim Kerr

Cason M. Kirby, Esq.
Brant J. Biddle, Esq.
HOLLAND & KNIGHT LLP
1901 Sixth Avenue North
Suite 1400
Birmingham, Alabama 35203
205-226-5706
cason.kirby@hklaw.com
brant.biddle@hklaw.com
Counsel for Matrix, LLC, Perkins
Communication, LLC, Joe Perkins
and Joshua Whitman



K.B. Forbes
Plaintiff, appearing Pro Se