FILED
2025 Oct-31  PM 01:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DISVISION

FILED

2025 OCT 31  P 12: 27

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| K.B. FORBES and CONSEJO DE LATINOS UNIDOS, INC., a Not-for-Profit Public Charity,<br><br>    Plaintiffs,<br><br>vs.<br><br>THE SOUTHERN COMPANY, a corporation, ALABAMA POWER COMPANY, a corporation, MATRIX, LLC, an Alabama Limited Liability Company, PERKINS COMMUNICATION, LLC, an Alabama Limited Liability Company, JOE PERKINS, MARK A. CROSSWHITE, JEFF PEOPLES, ZEKE SMITH, JOSHUA WHITMAN, THOMAS A. FANNING, AND JAMES Y. KERR,<br><br>    Defendants. | Case No.: 2:24-CV-1618-AMM |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION................................................................................1

LEGAL STANDARD.........................................................................3

ARGUMENT......................................................................................4

I. Plaintiffs' Complaint Is Not A Shotgun Complaint.....................4

II. Counts One and Three: Plaintiffs Should be Permitted to Amend the FAC to
Plead a Civil Claim Under 42 U.S.C. § 1985(3) in Place of 18 U.S.C. § 241.....6

    A. Latinos are a Protected Class Under § 1985(3)..................................7

    B. Defendants Southern Company and Alabama Power are Quasi-
    Governmental Agencies Participating in the Conspiracy.........................8

    C. Plausible Conspiracy...................................................................8

III. Count Two: Plaintiffs Claim Under 42 U.S.C. § 1986 is Properly Plead.........9

IV. Plaintiffs' Claims Are Not Time-Barred............................................10

V. Plaintiffs Plausibly Allege Agency Liability.......................................14

VI. Plaintiffs State Viable Alabama State Law Claims...........................15

    A. Defamation and Invasion of Privacy..............................................15

    B. Intentional Infliction of Emotional Distress.....................................17

VII. The Court Has Personal Jurisdiction Over Southern Company, Fanning
and Kerr.....................................................................................18

CONCLUSION.................................................................................19

# TABLE OF AUTHORITIES

Cases:

*American Rd. Serv. Co. v. Inmon*
    394 So.2d 361 (Ala. 1980)………………………………………….…..17

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009)……………………………………………….3,4

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007) ……………………………………………….3,4

*Boyd v. Warden, Holman Correctional Facility*
    856 F. 3d 853 (11th Cir. 2017)……….…..…………………………10

*Bristol-Myers Squibb v. Superior Ct. of CA*
    582 US 255 (2017)……………………………………………….18

*Brown v. Ga. Bd. of Pardons & Paroles*
    335 F.3d 1259 (11th Cir. 2003)……………………………………..14

*Butler v. Town of Argo*
    871 So.2d 1, 12 (Ala. 2003)…………………………………...………16

*Franza v. Royal Caribbean Cruises, Ltd.*
    772 F.3d 1225 (11th Cir. 2014)……………………………………..15

*Green Tree Acceptance, Inc. v. Standridge*
    565 So. 2d 38 (Ala 1990)……………………………………………17

*Grossman v. Nationsbank, NA*
    225 F. 3d 1228, 1231 (11th Cir. 2000). ……………………………....3

*Haines v. Kerner*
    404 U.S. 519 (1972) ………………………………………………....4

*Hiller Invs., Inc. v. Insultech Group, Inc.*
    957 So. 2d 1111 (Ala. 2006)…………………………………..………19

*Keith v. DeKalb County, Ga.*
    749 F.3d 1034 (11th Cir. 2014)……………………………………9

*Matthews v. Brookstone Stores, Inc.*
   469 F. Supp. 2d 1056 (S.D. Ala. 2007). ………………………………….…4

*Moore v. Lowe*
   591 F. Supp. 3d 1087 (N.D. Ala. 2022) …………..……………....…...…3,16

*Park v. City of Atlanta*
   120 F.3d 1157 (11th Cir. 1997)………………………………………………9

*Saint Francis College v. Al-Khazraji*
   481 U.S. 604 (1987)………………………………………………………7,8

*Trawinski v. United Techs.*
   313 F.3d 1295 (11th Cir. 2002)..………..……………………………….…...4

*Valle v. Secretary for the Department of Corrections, Florida Department of Corrections*
   478 F.3d 1326 (11th Cir. 2007)………………………………………………7

*Weiland v. Palm Beach County Sheriff's Office*
   792 F.3d 1313(11th Cir. 2015)………………………….……...…………….6

Statutes:

42 U.S.C. § 1985 ...............................................................................................passim
42 U.S.C. § 1986 ...............................................................................................passim

Other Authorities:

Federal Rules of Civil Procedure 8(a)(2)………………………………………...4
Federal Rules of Civil Procedure10(b) …………………………………………..4
Federal Rule of Civil Procedure 12(b)(2) ................................................................3
Federal Rule of Civil Procedure 12(b)(6) ................................................................3

COMES NOW Plaintiff K.B. FORBES ("Forbes" or "Plaintiff"), and for his Opposition to the Motion to Dismiss ("Motion") the Second Amended Complaint ("SAC ECF 36") filed by Defendants: THE SOUTHERN COMPANY ("Southern Company"); ALABAMA POWER COMPANY ("Alabama Power"); MATRIX, LLC ("Matrix"); PERKINS COMMUNICATION, LLC ("Perkins Communication"); JOE PERKINS ("Perkins"); JOSHUA WHITMAN ("Whitman"); JEFF PEOPLES ("Peoples"); MARK A. CROSSWHITE ("Crosswhite"); ZEKE SMITH ("Smith"); THOMAS A. FANNING ("Fanning"); and JAMES Y. KERR ("Kerr") (collectively "Defendants"); alleges as follows:

## INTRODUCTION

Defendants' Motion to Dismiss the SAC ECF 36 repeats the same two specious arguments contained in their previous motion, that the complaint is a "shotgun pleading" and that Plaintiff has not adequately supported the causes of action with sufficient facts. Yet these contentions are at cross-purposes because it is necessary to list the entire litany of Defendants' nefarious conduct in order to properly plead Plaintiff's claims against Defendants, and Plaintiffs have fully complied with the Court's two previous orders, to remove the shotgun allegations by filing an amended complaint without each successive cause of action incorporating the previous ones, and to remove former plaintiff Consejo De Latinos Unidos, Inc. ("CDLU") since Plaintiff Forbes continues to represent himself in pro per.

Defendants on the other hand are the ones flaunting the rules, since despite certifying that they served Plaintiff with their Reply to Plaintiff's Opposition to their first Motion to Dismiss via email and U.S. Mail on July 11, 2025 [ECF 34, P22], and their second Motion to Dismiss via email and U.S. Mail on October 8, 2025 [ECF 39, P.4], Defendants did not in fact serve Plaintiff with both pleadings via either method in an obvious attempt to thwart Plaintiff from participating in these pleading challenges in hopes Plaintiff would miss a deadline. Defendants made their prejudices against pro per representation clear in their first Motion to Dismiss [ECF 31, P9] with patronizing statements towards Plaintiff while admitting their participation in the ongoing conspiracies to destroy Plaintiff as alleged in the SAC ECF 36.

The SAC ECF 36 alleges a coordinated conspiracy by Defendants to violate Plaintiff's civil rights and inflict severe emotional and reputational harm. This ongoing conspiracy was orchestrated against Plaintiff and CDLU due to their Latino heritage and the causes they hold dear, including public advocacy against Defendants' and those associated with Defendants' unethical business practices (SAC ECF 36, ¶¶ 19–112). The SAC ECF 36 describes a campaign of intimidation, defamation and physical threats perpetrated by Defendants, including a fake protest near Forbes' home, the creation of a defamatory website (*cdluexposed.com*[1]), media smear campaigns and a .22 caliber projectile shot at Forbes' bedroom window (SAC

---

[1] The website is still active to this day, and continues to defame Plaintiffs.

ECF 36, ¶¶ 19–112), all of which must be considered as true for purposes of the Court's consideration of this Motion as discussed below.

The SAC ECF 36 more-than sufficiently pleads plausible claims to survive dismissal, and this Motion should be denied in its entirety. In the alternative, as Defendants have acknowledged that Plaintiff is unrepresented in this case, should the Court be inclined to dismiss any or all of Plaintiff's Counts, Plaintiff respectfully requests this be done *without prejudice* so Plaintiff can have at least one opportunity to cure the Court's concerns by filing a Third Amended Complaint (the Second Amended Complaint not being the result of a hearing on the merits but rather an extension graciously granted by this Court and the Order to remove the "shotgun" allegations).

## **LEGAL STANDARD**

The Court must deny a Rule 12(b)(6) motion if a complaint provides "a short and plain statement of the claim showing that the pleader is entitled to relief," with factual allegations raising a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts accept well-pleaded facts as true, draw reasonable inferences in the plaintiff's favor and assess facial plausibility. *Moore v. Lowe*, 591 F. Supp. 3d 1087, 1097 (N.D. Ala. 2022) and all exhibits attached to the complaint may also be considered. *Grossman v. Nationsbank, NA*, 225 F. 3d 1236, 1231 (11th Cir. 2000). For Rule 12(b)(2) motions, Plaintiff must simply establish jurisdiction, with allegations taken

as true unless contradicted by evidence, and reasonable inferences resolved in their favor. *Matthews v. Brookstone Stores, Inc.*, 469 F. Supp. 2d 1056, 1060 (S.D. Ala. 2007).

In reviewing Plaintiff's SAC ECF 36, the Court must also take an extra step towards Plaintiff by considering that *pro se* complaints are held "to less stringent standards than formal pleadings drafted by lawyers," even if they are inartfully pleaded. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Federal district courts must ensure that pro se litigants are given "fair and meaningful consideration." *Trawinski v. United Techs.*, 313 F.3d 1295, 1297 (11th Cir. 2002). Although Plaintiff was graciously permitted by the Court to file a Second Amended Complaint, this is the only opportunity Plaintiff has had thus far to be heard in opposition to the Motion, so in the event the Court is moved by any of Defendants' arguments, Plaintiff should have leave of court to submit a Third Amended Complaint in order to have their day in court.

## **ARGUMENT**

### I. Plaintiff's Complaint Is Not A Shotgun Complaint.

Plaintiff's Complaint easily satisfies the pleading requirements of Federal Rules of Civil Procedure 8(a)(2) and 10(b). Consistent with Rule 8(a)(2), Plaintiff's Complaint supplies "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp.*, 550 U.S. at 570. Consistent with Rule 10(b), Plaintiff's Complaint "state[s] its claims

in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).

Here, Plaintiff's Complaint clearly delineates six widely understood federal and state statutory and constitutional causes of action into six separate counts. SAC ECF 36 ¶¶ 113-173. Each claim stems from the same ongoing coordinated conspiracy by Defendants to violate Plaintiff's civil rights and inflict severe emotional and reputational harm, which the SAC ECF 36 describes in a common set of factual allegations in a unified facts section, subdivided by clear topical subheadings. Each count incorporates the factual allegations of the SAC ECF 36 and makes additional specific allegations tailored to address the specific counts asserted against which Defendants. The SAC ECF 36 also explains each Plaintiff's standing to sue and the reasoning for naming each Defendant along with their particular jurisdictional allegations. Id. ¶¶ 2-18.

Defendants appear to base their argument on the sheer numerosity of the factual allegations, which while extensive, speaks more to the despicable conduct of Defendants giving rise to the lawsuit, rather than the manner in which they are asserted. It is clear from the SAC ECF 36 that Defendants' conduct gives rise to each of the claims in Plaintiff's Complaint. As the Eleventh Circuit has explained of similar complaints: "[T]his is not a situation where a failure to more precisely parcel out and identify the facts relevant to each claim materially increased the burden of

understanding the factual allegations underlying each count." *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1324 (11th Cir. 2015).

As in *Weiland*, Defendants "did not move for a more definite statement under [Rule] 12(e)," nor do they plausibly assert that they do not understand the theory of liability underlying the Complaint. The SAC ECF 36 is far from a shotgun pleading as it provides a detailed narrative, identifying each Defendant's role (SAC ECF 36, ¶¶ 4–18), describing specific acts (e.g., the July 4, 2020 fake protest, *cdluexposed.com* creation, media attacks; and the September 2023 projectile incident) (SAC ECF 36, ¶¶ 19–112), and tying these acts to a conspiracy to violate Plaintiff' civil rights. *Weiland*, 792 F.3d at 1324-5.

Since Plaintiff complied with this Court's Order by removing each set of Counts from the next Count and so on, while reconfiguring and editing the fact pattern, the Court should reject this argument and deny dismissal or otherwise permit Plaintiff to file a Third Amended Complaint to cure any errors, just as the *Weiland* court had allowed prior to the Motion at issue in the opinion.

## II. Count One for a Civil Claim Under 42 U.S.C. § 1985(3) is Properly Plead

Plaintiff amended Count One of the SAC to properly assert his civil claim under 42 U.S.C. § 1985(3), which provides a private right of action for conspiracies to deprive persons of equal protection or privileges and immunities under the law. The SAC ECF 36 details specific conspiratorial acts, including a fake protest staged near Plaintiff Forbes' home on July 4, 2020, the creation of the defamatory website

*cdluexposed.com* which claims that Forbes "defends accused rapist, Burt Newsome" and is "involved in an extortion attempt against another law firm", media smear campaigns and a physical threat involving a .22 caliber projectile shot at Plaintiff Forbes' bedroom window in September 2023 (SAC ECF 36, ¶¶ 19–123).

The Motion admits that the SAC properly alleges "that Defendants conspired to interfere with [Forbes'] civil rights and discriminated against him due to his Latino heritage and support for underprivileged and marginalized Latinos, and the Defendants harbor a hatred of Latinos." SAC ¶¶ 115, 117, 131, 141 & 143. While the Motion tries to write these allegations off as "perfunctory" and "stray" they must nevertheless be accepted as true for the purposes of adjudicating this Motion, and nothing in the Motion refutes them. Accordingly, these acts, which are attributed to all Defendants through their ongoing conspiracy against Plaintiff and CDLU specifically due to their Latino heritage and the causes they hold dear, including public advocacy against Defendants' and those associated with Defendants' unethical business practices, including the Balch & Bingham law firm, satisfy the pleading requirements for Count One, and the Motion should be dismissed.

### A. *Latinos are a Protected Class Under § 1985(3)*

It is settled that "the law has evolved to the point that Latin Americans are now a cognizable class for due process and equal protection purposes." *Valle v. Secretary for the Department of Corrections, Florida Department of Corrections*, 478 F.3d 1326, 1336 (11th Cir. 2007); *See also: Saint Francis College v. Al-*

*Khazraji*, 481 U.S. 604 (1987) (Hispanic is a race for purposes of Section 1981).

Accordingly, since the SAC alleges that Plaintiff is Latino and runs a Latino

charity who were targeted for their advocacy on behalf of Latino communities, and

that Defendants conspired against Forbes' civil rights and discriminated against him

due to his Latino heritage and support for underprivileged and marginalized Latinos,

and that Defendants harbor a hatred of Latinos, [SAC ¶¶ 115, 117, 131, 141 & 143],

Plaintiff is afforded the protections of § 1985(3).

### B. Defendants Southern Company and Alabama Power are Quasi-Governmental Agencies Participating in the Conspiracy

Plaintiff is protected under § 1985(3) against the conspiracies alleged in the

SAC ECF 36 because two of the Defendants at the heart of the conspiracies,

Alabama Power and Southern Company, are utilities functioning in the State of

Alabama as quasi-governmental agencies according to their websites. The inclusion

of private actors in the conspiracies cannot insulate them all from exposure to a §

1985(3) claim when the entire nefarious conduct was conducted at the behest of

quasi-governmental energy utilities; the CEO of Southern Company called Plaintiff

Forbes personally to discuss Plaintiff's allegations against its law firm (SAC ECF

36, ¶ 37).

### C. Plausible Conspiracy

The entire fact pattern of the (SAC ECF 36, ¶¶ 19–112) establishes the

connections and "meeting of the minds" between the individual Defendants who

worked for the quasi-governmental Defendants and their other co-conspirators,

easily satisfy the conspiracy element of § 1985(3). Although the SAC ECF 36 is very specific and sufficient to plead a conspiracy at this stage, the coordinated acts can also be established through drawing a causal connection based on the parties' history. *Keith v. DeKalb County, Ga.*, 749 F.3d 1034, 1047–48 (11th Cir. 2014) particularly early in civil rights cases where direct evidence is often unavailable.

The ECF SAC 36 details a pattern of coordinated acts: a fake protest near Forbes' home on July 4, 2020, orchestrated by Brenda Paige Ward; defamatory Facebook videos by Carlos Chaverst, Jr.; paid media attacks by Bill Britt and Josh Moon; the creation of the defamatory website *cdluexposed.com;* media smear campaigns and a physical threat involving a .22 caliber projectile shot at Plaintiff Forbes' bedroom window in September 2023 (SAC ECF 36, ¶¶ 51–123). These acts, temporally and thematically linked to Plaintiff' advocacy against Balch & Bingham, plausibly suggest an agreement among all Defendants to retaliate.

### III. Count Two: Plaintiff's Claim Under 42 U.S.C. § 1986 is Properly Plead

"Section 1986 provides a cause of action against anyone who has 'knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having the power to prevent or aid in preventing the commission of the same, neglects or refuses so to do.'" *Park v. City of Atlanta* 120 F.3d 1157, 1160 (11th Cir. 1997) citing 42 U.S.C. § 1986. This means that as long as the complaint adequately pleads the existence of a § 1985 conspiracy (which the SAC ECF 36 does) the § 1986, which is derivative of § 1985, cannot be

dismissed. The Park court even went as far as to write that "it does not follow that individuals liable under § 1986 must be involved in the § 1985 conspiracy." In fact, Section 1986 requires only that Defendants knew of a § 1985 conspiracy and, having the power to prevent or aid in preventing the implementation of the conspiracy, neglected to do so. *Id.*

Since Plaintiff has demonstrated that the § 1985 claim is viable, the § 1986 claim, which is derivative of the § 1985 claim, is properly plead and likewise survives Defendants' Motion.

## IV. Plaintiff's Claims Are Not Time-Barred

The statute of limitations is an affirmative defense, so a Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred. *Boyd v. Warden, Holman Correctional facility*, 856 F. 3d 853, 872 (11th Cir. 2017) (quotation omitted). Here, the SAC ECF 36 alleges a continuing conspiracy, with the most recent act occurring within two years of the initial complaint filed on November 22, 2024 (ECF 1) on October 3, 2023, when Defendant Southern Company's outside counsel sent Plaintiff Forbes an email asserting that while they found the claims he raised to be meritless, Southern Company nevertheless did not dispute the validity or authenticity of the documents or refute the campaign of fear and intimidation waged against the CDLU and Forbes. SAC ECF 36 ¶ 112.

In fact, the SAC ECF 36 ¶¶ 105–112 contains numerous allegations that prove the conspiracy between all Defendants only became apparent to Plaintiff within two years of the filing of ECF 1 when emissaries began reaching out to Plaintiff Forbes directly; the existence of all of the Defendants' nefarious acts towards Plaintiff does mean that Plaintiff automatically would put together that everything was related and constituted an actual conspiracy:

105.   On December 13, 2022, Forbes sent an email to Thomas A. Fanning, the then-Chairman and CEO of Southern Company, writing, "In the rough and tumble of advocacy work seeking inherent goodness, there sometimes are harsh criticisms and angry responses to our work. However, in 2020 the lines were crossed. We recently received documents anonymously showing that Alabama Power paid Matrix to terrorize my family. When my then-eight-year-old daughter cried out of fear, I vowed to get to the bottom of it. The FBI, usually stoic and tight-lipped, was compassionate. Alabama Power had no right to terrorize my wife, traumatize my child, and cause us to flee from our home for our own safety …. Regardless of the ongoing internal investigation or the 'retirement' of Mark A. Crosswhite, this is wrong. Very wrong." Forbes sent Fanning a photo of his family.

106.   The next morning, December 14, 2022, Carmen Hadgraft, Fanning's Executive Assistant called Forbes from her cell phone and

stated that Mr. Fanning had read Forbes' email, but could not see the attachments. He was traveling on an airplane and would have James Y. Kerr, the Chief Compliance Officer and General Counsel of Southern Company, call Forbes in the next 24 hours. Hadgraft spoke with Forbes for a few minutes and reiterated that Fanning was an honorable and inherently good person who would resolve the situation. Forbes then sent Hadgraft a PDF version of the family photograph.

107.   On the evening of December 15, 2022, Kerr called Forbes and had a 15-minute conversation outlining the internal probe at Southern Company being handled by an independent law firm. Kerr asked Forbes to have CDLU's legal counsel send a formal letter to him and that with the holidays approaching, he would review the matter in January. On December 27, 2022, CDLU legal counsel sent Kerr a detailed letter about the Smoking Gun documents and defendants' misconduct. The following month, January of 2023, CDLU legal counsel sent Southern Company lawyers the actual Smoking Gun documents. At no point did Southern Company dispute the validity or authenticity of those documents.

108.   On June 28, 2023, *The Wall Street Journal* published a report about Southern Company's clandestine surveillance operations.

Southern Company claimed in the article "it has no idea who ordered the operation or why." No one believed them.

109.  In September of 2023, CDLU and Forbes' legal counsel met with Southern Company's outside counsel in Atlanta. At no point whatsoever did Southern Company or its attorneys dispute the validity of the documents nor did it make any efforts to cease Alabama Power Company from funding Matrix's activities and/or bring closure to this type of behavior.

110.  On September 19, 2023, CDLU published a post on its blog about how Southern Company paid for the surveillance of U.S. Attorney Jay E. Town, and that the jaw-dropping photos the CDLU published in 2020 of Town and Alabama Power CEO Mark A. Crosswhite inappropriately having cocktails were paid for by Southern Company.

111.  On September 21, 2023, a .22 caliber projectile was shot at Forbes' bedroom window in retaliation for that published report.

112.  On October 3, 2023, Southern Company's outside counsel sent Forbes an email stating, "Southern Company has investigated the claims you have raised, finds them to be meritless, and does not believe a meeting would be productive." At no point did Southern Company

dispute the validity or authenticity of the documents or refute the
campaign of fear and intimidation waged against the CDLU and Forbes.
*Brown v. Ga. Bd. of Pardons & Paroles*, 335 F.3d 1259, 1261 (11th Cir. 2003), holds
that the limitations period begins when facts supporting the cause of action are
apparent or should be apparent to a reasonably prudent person.

For the § 1986 claim, the one-year limit is met because the SAC ECF 36
alleges ongoing neglect to prevent the conspiracy, culminating in the September
2023 projectile incident and Southern Company's attempts to deny their
involvement (SAC ECF 36, ¶¶ 111–112). The SAC's allegations of Defendants'
failure to intervene, despite knowledge of the conspiracy (ECF 36, ¶¶ 83, 114–116),
render the claim timely. The initial complaint's filing within two years of the 2023
incident satisfies the limitations period for § 1985 and state law claims, and the SAC
ECF 36, filed on September 24, 2025, relates back to the original filing. The Court
should deny dismissal of the SAC as these timeliness grounds are unfounded.

**V. Plaintiff Plausibly Alleges Agency Liability**

The SAC ECF 36 alleges all Defendants acted as agents of one another and
sets forth a hierarchical agency structure: individual Defendants (Fanning, Kerr,
Crosswhite, Peoples, Smith) acted as agents of quasi-governmental Defendants
(Southern Company, Alabama Power), directing acts such as the creation of
*cdluexposed.com*, media coordination and harassment, while Matrix, LLC, and

Perkins Communication, LLC, executed these acts under corporate authority (ECF 36, ¶¶ 6–15, 61, 83, 114–116).

Defendants curiously cite *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225 (11th Cir. 2014) for the proposition that the SAC ECF 36 inadequately pleads Defendants agency liability with sufficient particularity to defeat a Motion to Dismiss. However, *Franza* is a case decided under Maritime law involving injuries to seamen arising under the Jones Act. *Id.* at 1236, and yet even this case makes it clear that the existence of an agency relationship is a question of fact. *Id.* The Court should deny dismissal, as the agency allegations are sufficiently pleaded.

## VI. Plaintiff States Viable Alabama State Law Claims

Defendants challenge the SAC's Alabama state law claims for defamation, invasion of privacy (false light) and intentional infliction of emotional distress, arguing that they lack factual support or are based on true statements (ECF 31, P. 26–31).

### A. Defamation and Invasion of Privacy

Defendants argue that the *cdluexposed.com* statements—that Forbes "defends accused rapist, Burt Newsome" and is "involved in an extortion attempt against another law firm" (SAC ECF 36, ¶¶ 91 - 99)—are true or non-defamatory, and they further contend that search engine optimization (SEO) tactics are not actionable (Motion ECF 31, P. 35). The SAC ECF 36 alleges that the statements falsely portray

Plaintiff Forbes as defending a rapist and engaging in criminal extortion, damaging his reputation and CDLU's credibility (ECF 36, ¶¶ 90–103).

To state an ordinary claim for defamation under Alabama law, the plaintiff must plausibly allege: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication of that statement to a third party; (3) fault amounting at least to negligence on the part of the defendant; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication of the statement. *Moore,* 591 F. Supp. 3d at 1103-4. In *Moore*, the Northern District of Alabama held that falsity is a question of fact if statements are misleading in context, as the SAC ECF 36 alleges by asserting that the statements exaggerate and misrepresent Forbes' actions (ECF 36, ¶¶ 94, 99).

For invasion of privacy based on false light, Alabama law requires publicity placing the plaintiff in a false light that is highly offensive to a reasonable person, with knowledge or reckless disregard of falsity. *Butler v. Town of Argo*, 871 So.2d 1, 12 (Ala. 2003). "Alabama has long recognized that a wrongful intrusion into one's private activities constitutes the tort of invasion of privacy. This Court defines the tort of invasion of privacy as the intentional wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." *Id*. (*citations omitted*).

"It is generally accepted that invasion of privacy consists of four limited and distinct wrongs: (1) intruding into the plaintiff's physical solitude or seclusion; (2)

giving publicity to private information about the plaintiff that violates ordinary decency; (3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; or (4) appropriating some element of the plaintiff's personality for a commercial use." *Id.* (*citations omitted*).

The SAC ECF 36 alleges that Defendants' website and SEO tactics created a false narrative portraying Forbes as a criminal associate, causing reputational harm (ECF 36, ¶¶ 90–103). The SAC ECF 36's allegations of deliberate dissemination through SEO tactics to amplify the false narrative (SAC ECF 36, ¶¶ 101–103) further bolsters the claim. While Defendants argue that SEO is not actionable, the modern methods of amplifying defamatory content can enhance tort liability if they increase harm, as alleged here. The Court should deny dismissal, as the SAC ECF 36's allegations create factual issues warranting discovery.

### B. Intentional Infliction of Emotional Distress

Under Alabama law, to recover for IIED, the plaintiff must establish that the conduct (1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it. *Green Tree Acceptance, Inc. v. Standridge*, 565 So. 2d 38, 44 (Ala. 1990). Whether conduct is outrageous is generally for the trier of fact to determine. *American Rd. Serv. Co. v. Inmon*, 394 So. 2d 361, 365 (Ala. 1980).

The SAC ECF 36 alleges a relentless campaign of harassment, including a fake protest near Plaintiff Forbes' home, defamatory media attacks, attempts to

access Plaintiff Forbes' banking information and a .22 caliber projectile shot at his bedroom window in September 2023 (ECF 36, ¶¶ 51–65, 110–116). The projectile incident, linked to a blog post criticizing Southern Company, constitutes particularly egregious conduct threatening personal safety.

Since Plaintiff has alleged severe, ongoing harassment causing significant emotional distress over a multi-year campaign culminating in a physical threat, the threshold is easily met, especially at the pleading stage. Defendants' argument that only one incident occurred within the last two years ignores the continuing nature of the conspiracy and all of the incidents and the linkage between all Defendants, which must be accepted as true for purposes of determining the outcome of this Motion. The Court must therefore deny dismissal, as the SAC ECF 36's allegations establish a plausible IIED claim.

## VII. The Court Has Personal Jurisdiction Over Southern Company, Fanning and Kerr.

The Court can easily dispense with this argument in the Motion to Dismiss. For a court to exercise specific jurisdiction over a claim there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State. *Bristol-Myers Squibb v. Superior Ct. of CA*, 582 US 255 (2017). Here, the SAC ECF 36 ¶17 alleges that "this Court has specific personal jurisdiction over Defendants because the acts giving rise to Plaintiff claims took place in the State of Alabama, and because several of the

Defendants are domiciled in the State of Alabama and/or regularly transact business in the State of Alabama."

Moreover, The SAC. ECF 36 describes a vast ongoing conspiracy and campaign of intimidation, defamation and physical threats perpetrated by *all* Defendants, including a fake protest near Forbes' home, funding and orchestrating the creation of a defamatory website (*cdluexposed.com*), media smear campaigns and a .22 caliber projectile shot at Forbes' bedroom window (SAC ECF 36, ¶¶ 19–112), all of which must be considered as true for purposes of the Court's consideration of this Motion as discussed below. All of these actions were directed at the forum, causing harm to Forbes, a resident Plaintiff.

Defendants' reliance on *Hiller Invs., Inc. v. Insultech Group, Inc.*, 957 So. 2d 1111, 1115 (Ala. 2006) is misplaced, as it only addresses general jurisdiction, whereas the SAC ECF 36 relies on specific jurisdiction based on targeted acts. The Court should deny dismissal since this Court cannot decline to exercise personal jurisdiction over the Defendants. It is not a close call.

## CONCLUSION

Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss in its entirety. In the alternative, since Plaintiff is unrepresented in this case, should the Court be inclined to dismiss any or all of Plaintiff' Counts, Plaintiff respectfully requests this be done *without prejudice* so Plaintiff can have at least one opportunity to cure the Court's concerns by filing a Third Amended Complaint (the

Second Amended Complaint not having been the result of a Court hearing on the merits but rather an extension graciously granted by this Court and the Order to remove the "shotgun" allegations).

Dated: October 31, 2025

K.B. Forbes
P.O. Box 381984
Birmingham, Alabama 35238-1984
(323) 264-5889
kb@cdlu.org
Plaintiff, appearing Pro Se

CERTIFICATE OF SERVICE

I KB Forbes hereby certify that, on October 31, 2025, I hand-filed the foregoing with

the Clerk of the Court and that I served all counsel of record listed below via EMAIL

and U.S. MAIL:

Lee M. Hollis, Esq.
Mary Parrish McCracken, Esq.
LIGHTFOOT, FRANKLIN &
WHITE LLC
400 20th Street North
Birmingham, Alabama 35203
205-581-0700
lhollis@lightfootlaw.com
mmccracken@lightfootlaw.com
Counsel for Alabama Power Company

Robert Baugh, Esq.
DENTONS SIROTE
2311 Highland Avenue South
Birmingham, Alabama 35205
205-930-5100
robert.baugh@dentons.com
Counsel for The Southern Company,
Tom Fanning, and Jim Kerr

Cason M. Kirby, Esq.
Brant J. Biddle, Esq.
HOLLAND & KNIGHT LLP
1901 Sixth Avenue North
Suite 1400
Birmingham, Alabama 35203
205-226-5706
cason.kirby@hklaw.com
brant.biddle@hklaw.com
Counsel for Matrix, LLC, Perkins
Communication, LLC, Joe Perkins
and Joshua Whitman

John W. Scott, Esq.
Kimberly W. Geisler, Esq.
SCOTT, DUKES & GEISLER, P.C.
211 Twenty Second Street North
Birmingham, Alabama 35203
205-251-2300
jscott@scottdukeslaw.com
kgeisler@scottdukeslaw
Counsel for Mark Crosswhite, Jeff
Peoples and Zeke Smith

David L. Balser, Esq.
Brandon R. Keel, Esq.
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309
404-572-4600
dbalser@kslaw.com
bkeel@kslaw.com
Counsel for The Southern Company,
Tom Fanning, and Jim Kerr



---

K.B. Forbes
Plaintiff, appearing Pro Se